Jeffrey C. Matura, State Bar No. 019893
Amanda J. Taylor, State Bar No. 024006
**BARRETT & MATURA, P.C.**
8925 East Pima Center Parkway, Suite 100
Scottsdale, Arizona 85258
Telephone: 602-792-5705
Fax: 602-792-5710
E-mail:       jmatura@barrettmatura.com
              ataylor@barrettmatura.com

Attorneys for Defendants The United States Life
Insurance Company In The City of New York and
American General Life Insurance Company

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Cheney, an individual,<br><br>Plaintiff,<br><br>v.<br><br>The United States Life Insurance Company In The City of New York, a foreign insurance company; American General Life Insurance Company, doing business as AIG Benefit Solutions Connecticut Claim Center, a foreign business entity; Does 1-10; Roes 1-10,<br><br>Defendants. | Case No. 2:17-cv-00004-DGC<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendants The United States Life Insurance Company in the City of New York ("US Life") and American General Life Insurance Company ("American General") move for summary judgment on Plaintiff Cynthia Cheney's breach of contract and bad faith claims.  US Life and American General also move for summary judgment on Cheney's request for punitive damages.  Summary judgment is proper for the following reason:

- • Cheney did not qualify as having a "total disability" under terms of her disability policy because she could perform some of the "material duties" of her "regular job" as a trial lawyer, including her specialty as a medical malpractice defense lawyer.
- • US Life acted in good faith and reasonably concluded that

Cheney could perform some of the "material duties" of her job after her claimed date of disability.

- No contract exists between Cheney and American General; therefore, American General did not breach any contract and does not owe any duty of good faith and fair dealing.

- Cheney cannot meet the heightened standard required to support punitive damages.

This motion is brought pursuant to Federal Civil Procedure Rule 56 and is supported by the following memorandum of points and authorities and a Separate Statement of Facts.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

The questions presented are whether the information provided during Cheney's claim process supported US Life's decision that Cheney did not qualify as having a "total disability" under her long-term disability policy and whether US Life had a reasonable basis for its decision. The answer to both is "yes" because the information establishes that Cheney did not have a "complete inability" to perform the "material duties" of her "regular job."

**I.    FACTUAL BACKGROUND.**

**A.    Cheney's Disability Insurance Policy.**

US Life issued an association disability insurance policy to the American Bar Endowment ("ABE") under policy number G-164,156 ("the Policy"). *See* Defendants' Separate Statement of Facts ("SOF") at ¶ 1. As a member of the ABE, Cheney obtained disability insurance under the Policy. Cheney's specific coverage benefits and any selected options under the Policy issued to ABE are set forth in an individualized coverage certification form. *See* SOF at ¶ 2.

The Policy only pays benefits if the insured has a "total disability." *See* SOF at ¶ 3. The Policy defines "total disability" as follows:

2

TOTAL DISABILITY means:

For members

- during the waiting period [90 days] and next sixty months, the <u>complete inability</u> of the member to perform the <u>material duties</u> of his <u>regular job</u> to include his specialty in the practice of law; "specialty in the practice of law" means the specialty in the practice of law which the member was performing on the day before total disability began.

- after such 60 months, the complete inability of the member to perform the material duties of any gainful job for which he is reasonably fit by training, education or experience

The total disability must be a result of an injury or sickness.  To be considered totally disabled, the member must also be under the regular care of a physician.

*See* SOF at ¶ 4.

The Policy defines "regular job" as "that which he was performing on the day before total disability began."  *See* SOF at ¶ 5.  At all relevant times, Cheney asserted that her "regular job" was a trial lawyer and that her specialty was a medical malpractice defense lawyer.  *See* SOF at ¶ 6.  If the insured qualifies as having a "total disability," benefits are payable at $3,250 per month.  *See* SOF at ¶ 7.

The Policy also provides "Partial Disability" benefits, which apply when the insured "is not able to perform the material duties of his regular job to include the specialty in the practice of law but he is able to perform: at least one of these duties on a part-time basis, or at least one but not all, of these duties on a full-time basis."  *See* SOF at ¶ 8.  Any partial disability "must be a result of the injury or sickness that caused the total disability."  *See* SOF at ¶ 9.

**B.    Cheney's Claim For Total Disability Benefits.**

On January 17, 2014, Cheney submitted a claim for "total disability" benefits to ABE, which was forwarded to US Life.  *See* SOF at ¶ 10.  She informed US Life that she

3

had been unable to work as a trial lawyer since her last trial in December 2006[1] due to uncontrolled diabetes and other health problems. *See* SOF at ¶ 11. Cheney included an Attending Physician's Statement from a nurse practitioner, which stated that Cheney's condition had improved since her first date of treatment in 2011 and that Cheney has a moderate limitation of her functional capacity such that she is capable of sedentary work; yet, the nurse practitioner concluded that Cheney was unable to work because of her disability as of July 1, 2012. *See* SOF at ¶ 14.

On February 11, 2014, Michael LaRosa, who was the initial case manager from US Life, sent a letter to Cheney to acknowledge her claim and request certain documents and information, including monthly billable hours, medical records, a specific date of disability and medical documentation to support the selected date, personal and business tax returns, a profit and loss statement, a statement regarding any pension or profit sharing contributions, a completed fraud statement, and an explanation for the delay in filing her claim. *See* SOF at ¶ 15. In March 2014, the claim was transferred to case manager Kate Milheiro. *See* SOF at ¶ 16. Having received nothing from Cheney thus far, Milheiro sent another letter to Cheney on March 25, 2014 to request the same information that LaRosa had requested. *See* SOF at ¶ 17.

On April 9, 2014, Cheney provided the tax information and also identified December 15, 2006 as her specific date of disability, after which she claimed "her health afflictions made it impossible for her to try cases." *See* SOF at ¶ 18. Milheiro acknowledged the information on April 25, 2014, and reiterated the prior requests for monthly billing records and other documents. *See* SOF at ¶ 19. Milheiro followed-up again on May 23, 2014, to request monthly billing records and to notify Cheney that an in-person interview was scheduled with one of US Life's vendors, Coventry Healthcare ("Coventry"). *See* SOF at ¶ 20. On June 17, 2014, Jacinta Riggs from Coventry met with

---

[1] US Life learned during an interview in connection with Cheney's claim that her last trial was not in December 2006, but rather was in October 2005, which Cheney's former law partner, Gary Fadell, verified. However, Cheney is not asserting an earlier date of disability in this litigation. *See* SOF at ¶ 12-13.

Cheney and her counsel.  *See* SOF at ¶ 21.  Milheiro attended the meeting telephonically. *Id.*  During the meeting, Cheney stated that she worked as a medical malpractice defense attorney from 1990 to 2009, that she began conducting mediations in 2008, that her work duties "includes pleadings, arguments, research, defending depositions from expert witnesses," and that she was not under any formal work restrictions.  *See* SOF at ¶ 22. Cheney also described her present work situation as modified, but that she was still conducting depositions and mediations.  *See* SOF at ¶ 23.

On June 23, 2014, Milheiro sent another letter to Cheney to remind her that she still had not provided monthly billable hours, a profit and loss statement, a statement regarding any pension or profit-sharing contributions, or transcripts for her tax returns. *See* SOF at ¶ 24.  Milheiro also told Cheney that US Life was unable to proceed with its review of Cheney's claim without this information.  *See* SOF at ¶ 25.  Milheiro therefore requested the information by July 7, 2014 and told Cheney that, if it was not received, US Life "will be forced to close" its handling of the claim until the information was received. *See* SOF at ¶ 26.  Cheney did not provide the supporting documents.  *See* SOF at ¶ 27. Therefore, on July 14, 2014, Milheiro sent another letter to Cheney to notify her that US Life was closing the claim until it received the requested information, at which time US Life would continue to review the claim.  *See* SOF at ¶ 28.

On March 17, 2015, Cheney sent a letter to Milheiro to provide, among other items, a new date of disability of January 1, 2007 and to state that she had wound down her litigation activities by January 2008.  *See* SOF at ¶ 29. On June 4, 2015, Cheney provided a spreadsheet "reflecting [Cheney's] litigation billings" for July 2006 through June 2007.  *See* SOF at ¶ 30.  These records confirmed that Cheney continued to bill time as an attorney between July 2006 and June 2007 and showed the following monthly billing totals:

| Month | Hours billed |
|---|---|
| July 2006 | 7.6 |
| August 2006 | 24.7 |
| September 2006 | 32.3 |

| October 2006 | 27.7 |
|---|---|
| November 2006 | 78.1 |
| December 2006 | 23.6 |
| January 2007 | 46.8 |
| February 2007 | 32.8 |
| March 2007 | 12 |
| April 2007 | 43.9 |
| May 2007 | 39.6 |
| June 2007 | 41.2 |

*See* SOF at ¶ 31.  Per the billing records, Cheney continued to work (albeit on a part-time basis) from mid-2006 through mid-2007.  These records are also consistent with Cheney's Claimant's Statement to US Life and application to the Social Security Administration, in which she stated that she began litigating on a part-time basis in 2005.  *See* SOF at ¶ 32.

Upon receipt of the additional information, Milheiro reopened Cheney's claim and obtained an opinion from a board certified endocrinologist, Dr. Soodini, who opined that the medical records did not show that Cheney had severe limitations to support a restriction from work since 2007.  *See* SOF at ¶ 33.  Milheiro also asked Cheney to fill out a trial attorney questionnaire to cover the timeframe between January 2006 (one year before Cheney's claimed date of disability) and January 2015.  Cheney responded that she had not conducted any trials or spent any days in trial from 2006 to 2015.  *See* SOF at ¶ 34.

On July 22, 2015, Milheiro sent Cheney a letter to inform her that her claim for disability benefits was denied because "there is insufficient information to support that Ms. Cheney was Totally Disabled through and beyond her policy's 90-day Waiting Period."  *See* SOF at ¶ 35.  Milheiro identified the information she relied upon, including: the policy language; occupational information identifying that Cheney was continuing to assist her partner, Gary Fadell, with his cases; Cheney's interview wherein she indicated she was performing depositions and mediations; litigation billing spreadsheets showing Cheney's continued litigation-related work during her claimed disability period; medical information, including Cheney's treating records and the medical review conducted by Dr. Soodini, and other items.  *See* SOF at ¶ 36.  Milheiro also stated that insufficient

information existed to document Cheney's occupational duties before her claimed date of disability and that Cheney's medical records did not support her "complete inability" to work.  *See* SOF at ¶ 37.

Cheney appealed the claim denial on January 15, 2016.  *See* SOF at ¶ 38. Laura Beck, an Appeals Specialist for US Life, evaluated Cheney's appeal and reaffirmed the denial on May 24, 2016.  *See* SOF at ¶ 39.  Cheney asserts that she never received an appeal decision.  *See* SOF at ¶ 40. In 2017, Cheney filed this lawsuit against US Life and American General for breach of contract and bad faith.  *See* SOF at ¶ 41.

**C.    "Material Duties" of Cheney's "Regular Job."**

Cheney worked as an attorney from 1985 until 1990, and then as a trial attorney from 1990 through 2007 (or 2009 as conveyed to Coventry).  *See* SOF at ¶ 42.  Cheney admits that her "material duties" as a medical malpractice trial lawyer include: managing complex litigation from inception through trial and appeals, travel, conducting written discovery, depositions, researching, drafting motions and other legal documents, courtroom hearings, oral arguments, and being involved in all aspects of trial preparation and execution.  *See* SOF at ¶ 43.

In addition to her billable hour reports that show continued work in 2006 and 2007, US Life obtained during this litigation additional information to show that Cheney continued to perform some of her "material duties" in the years thereafter, including the following:

| Date | Material Duties Completed | Hours |
|---|---|---|
| 1/17/13 | Preparation for deposition of Plaintiff's expert, Colin Haggerty, M.D. including review of medical records and Plaintiff's disclosure statements and preparation of outline of deposition questions | 2.8 |
| 2/4/13 | Prepare deposition summary of Plaintiff's expert, Colin Haggerty, M.D. | 1.0 |
| 2/28/13 | Review of deposition transcript of Fred Holmes, M.D. in preparation for trial preparation conference with Dr. Holmes to discuss his testimony at trial; conduct trial preparation conference with Fred Holmes, M.D. regarding maximizing credibility at trial | 2.5 |

| 3/19/13 | Review medical records chronology, various disclosure statements, mediation memoranda, deposition of Frederick Holmes, M.D. and depositions of experts C. Roger Bird, M.D. and Barry Pressman, M.D. in preparation for meeting with Dr. Holmes to prepare him for trial direct and cross examinations | 3.5 |
|---|---|---|
| 7/11/13 | Conduct deposition of Mr. Bryant's [plaintiff] treating physician, Alan Kazan, M.D. | 1.7 |
| 4/14/14 | Prepare mock direct examination for CVRMC's nursing expert, Theresa Paschal, R.N. in preparation for trial testimony | 1.8 |
| 1/12/15 | Review and analyze YRMC Emergency Department patient records regarding patients recommended by YRMC staff for involuntary detention | 3.0 |
| 8/15/15 | Prepare initial draft of response letter to Arizona Medical Board | 4.5 |
| 3/7/17 | Conduct mock cross examination of Dr. Kallmeyer with post-cross critique of answers | 1.2 |
| 10/2/17 | Travel from New York City to Mineola, New York for deposition of Jan Goodman, R.N.; Conduct deposition of Jan Goodman, R.N.; Return travel from Minneola, New York to New York City following deposition of Jan Goodman, R.N.; One way return travel New York to Phoenix | 9.4 |

*See* SOF at ¶ 44.  These time entries show that Cheney did <u>not</u> have a "complete inability . . . to perform the material duties of [her] regular job."

Cheney argues that her only "material duty" is to conduct trials.  Not only is this argument contrary to the information that Cheney provided to US Life, but she has also only participated in 7 trials since 1997 from the hundreds of cases she has handled.  *See* SOF at ¶ 45.  The majority of her work involved other tasks typical of a trial attorney, including reviewing documents, drafting pleadings, taking and defending deposition, drafting motions, etc.  *See* SOF at ¶ 46.  The people who hired Cheney did so because she had the unique ability to settle difficult cases, not because every case went to trial.  *See* SOF at ¶ 47.  Cheney also handled a large number of non-litigation matters, such as directing health institutions' investigation of precautionary matters and settling incidents with clear liability before suit was ever filed.  *See* SOF at ¶ 48.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON CHENEY'S BREACH OF CONTRACT CLAIM.

US Life and American General are entitled to summary judgment on Cheney's breach of contract claim.   The reasons that support summary judgment for each are discussed below.

## A.   US Life Correctly Determined That Cheney Did Not Meet The Definition Of "Total Disability."

Contractual breach is "a failure, without legal excuse, to perform any promise which forms the whole or part of a contract."   *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 730 P.2d 204, 210 (1986).   The threshold issue here is contract interpretation: whether Cheney is qualified as having a "total disability," as that term is defined within the Policy, which is a question of law.   *Held v. RiverSource Life Ins. Co.*, 2013 WL 4543891 at *6 (D.Ariz. Aug. 28, 2013).   When the contract language is clear and unambiguous, the Court must give the contract the "effect as it is written."   *Id.*; *see also Desert Mountain Prop. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 263 P.3d 421, 427 (Ariz.App. 2010) (Courts interpret insurance policies according to their plain and ordinary meaning).

The Policy is an own occupation policy.   "Own occupation policies provide benefits to the insured when she is unable to perform 'the material duties of her chosen profession.'"   *Held*, 2013 WL 4543891 at *6.   To determine an insured's material job duties, the insurer may look to the claimant's description of her duties and the Department of Labor's Dictionary of Occupational Titles ("DOT") job descriptions.   *Id.* at *7.   The Policy also defines "regular job" as "that which he was performing on the day before total disability began."   *See* SOF at ¶ 5.

Cheney stated that her regular job was a trial lawyer and claimed that her total disability began in January 2007.   *See* SOF at ¶ 6. Because no specific description for "trial lawyer" exists, US Life relied upon the DOT job description for a "Lawyer/Attorney," which lists such items as gathering evidence, formulating defense, conducting research, interviewing clients and witnesses, preparing and filing legal briefs, developing strategies, representing clients in court, and interpreting laws and rulings as the material duties.   *See* SOF at ¶ 49.   The "material duties" that Cheney described to US

1    Life during the claim process are consistent with the DOT job description.  Cheney also

2    stated that her last trial was in October 2005.  *See* SOF at ¶ 50.  Therefore, she was not in

3    trial the day before she alleges her total disability began.  As a result, US Life evaluated

4    the information presented, compared it to the DOT job description, analyzed Cheney's

5    claimed date of disability, and correctly concluded that Cheney did not qualify as having a

6    "total disability" because she did not have a "complete inability" to perform the "material

7    duties" of her "regular job."

8        Cheney's argument that her inability to conduct trials (despite being able to

9    complete other material duties of a trial lawyer) qualifies her as "totally disabled" is

10   contrary to Arizona law.  A persuasive case is *Held v. RiverSource Life Ins. Co.*, 2013 WL

11   5453891 (D.Ariz. Aug. 28, 2013), in which the Court analyzed an own occupation

12   disability policy and concluded that the insured's ability "to perform <u>one</u> <u>or</u> <u>more</u> of the

13   substantial, material duties of her occupation" disqualified the insured from receiving

14   "total disability" benefits.  *Id.* at *9 (emphasis added).  Held's policy defined "total

15   disability" as the inability "to perform the important duties of your regular occupation."

16   *Id.* at *1.  Held sustained a back injury that she alleged prevented her from performing the

17   material duties of her job as a self-employed computer software trainer who held in-class

18   training sessions at her clients' locations.  After paying disability benefits for 21 years, the

19   insurance company terminated Held's benefits because it concluded that Held could

20   perform (and was performing) some of the material duties of her regular occupation,

21   including learning new software and teaching others.  *Id.* at *4.  When analyzing the

22   insurance company's motion for summary judgment, the Court concluded that the

23   insurance company's "determination that Mrs. Held was not totally disabled was both

24   subjectively and objectively reasonable" and was not a breach of the insurance policy

25   because Held could "perform one or more of the substantial, material duties of her

26   occupation . . . ."  *Id.* at *9.

27       The same analysis applies here.  The undisputed evidence shows that Cheney

28   performed litigation tasks as a trial attorney in 2006, 2007, and beyond.  *See* SOF at ¶¶ 44

1    and 51.  This work included attending Court hearings, preparing witnesses for depositions

2    and trials, conferring with clients regarding disclosure issues, preparing pleadings,

3    traveling for discovery, conducting and defending expert and fact witness depositions, and

4    other litigation tasks.  *See* SOF at ¶ 44.  The fact that Cheney's workload decreased or that

5    she began working part-time is immaterial because the volume of work completed is not

6    an element within the definition of "total disability" – the question is whether Cheney had

7    a "complete inability" to perform the "material duties" of her "regular job."  The evidence

8    shows that she did not.  And the reason why Cheney began working part-time in 2005 is

9    because her primary care physician, Dr. Rollingher, recommended that she reduce her

10   workload.  *See* SOF at ¶ 52. Cheney followed that advice and later told Dr. Rollingher that

11   she was still working part-time as of October 2008.  *See* SOF at ¶ 53.  If Cheney can

12   complete her "material duties" on a part-time basis, she does not have a "complete

13   inability" to perform her "material duties."  *See also Dym v. Provident Life and Acc. Ins.

14   Co.*, 19 F.Supp.2d 1147, 1150 (S.D.Cal. 1998) ("the phrase 'you are not able to perform

15   the substantial and material duties of your occupation' as used in the 'total disability'

16   definition cannot reasonably be read as 'you are not able to perform one or more of the

17   substantial and material duties of your occupation,' because if such a reading was

18   intended, the language 'one or more' would have been used, as it is in the 'residual

19   disability' definition.").

20        Two additional facts also supported US Life's decision.  First, Cheney's medical

21   providers did not recommend that she stop working as a trial lawyer in 2006 or 2007.

22   Rather, her primary care physician testified that having a patient stop working is not

23   helpful because a job helps a patient deal with their concomitant disease process.  *See*

24   SOF at ¶ 54.  Second, Cheney's business and personal tax returns show increased income

25   in 2006 ($263,878), 2007 ($135,151), and 2008 ($128,231) as opposed to 2003 ($19,206),

26   2004 ($33,469), and 2005 (-$92,705).  *See* SOF at ¶ 55.  Using Cheney's claimed date of

27   disability of January 2007, her average after-disability income is significantly higher than

28   her average pre-disability income.

The evidence shows that Cheney continued to perform some of the "material duties" of her "regular job" after her claimed date of disability.  US Life therefore correctly concluded that Cheney did not qualify as having a "total disability" under the Policy.  Summary judgment on Cheney's breach of contract claim is therefore proper.

### B.    American General Did Not Have A Contract With Cheney.

Cheney also alleges her breach of contract claim against American General, which is a separate legal entity from US Life.  *See* SOF at ¶ 56.  Both entities are subsidiaries of American International Group, Inc., but US Life and American General are not one in the same.  *See* SOF at ¶ 57.  No dispute exists that US Life issued the Policy, not American General, and that no other contract exists between Cheney and American General.  All correspondence to Cheney regarding the Policy, her claim, and the denial of her claim was also from US Life.  Without any contract, Cheney's breach of contract claim against American General fails as a matter of law.

### III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON CHENEY'S BAD FAITH CLAIM.

US Life and American General are also entitled to summary judgment on Cheney's bad faith claim.

### A.    US Life Made The Correct Decision, Or At Least Had A Reasonable Basis For Its Decision.

To prevail on a bad faith claim against an insurance company, the insured "must prove that the insurer intentionally denied, or failed to process or pay a claim without a reasonable basis." *Zilish v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (Ariz. 2000).   To survive summary judgment, the insured "must present some evidence both that [the insurance company] acted unreasonably, and that it knew it was doing so and proceeded accordingly." *Id.*  Therefore, "[w]here an insurer acts reasonably, there can be no bad faith." *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 153 Ariz. 95, 735 P.2d 125, 134 (Ariz. Ct. App. 1986).  The Court should therefore evaluate whether US Life acted reasonably in denying Cheney's claim.  If it did, Cheney's bad faith claim fails

as a matter of law.  If not, Cheney's bad faith claim still fails as a matter of law unless US Life "dealt unfairly or dishonestly with [Cheney's] claim or failed to give fair and equal consideration to [her] interests."  *Prieto v. Paul Revere Life Ins. Co.*, 254 F.3d 1005, 1010 (9th Cir. 2004).

As set forth above, US Life reasonably denied Cheney's claim based upon the information provided, which showed that Cheney did not qualify as having a "total disability" under the Policy.  *See also Held v. RiverSource Life Ins. Co.*, 2013 WL 5453891 (D.Ariz. Aug. 28, 2013) (where an insurer correctly determines that its insured "can perform many of the important duties of her regular occupation," the insurer has acted reasonably and in good faith).  Similarly, no evidence exists that US Life dealt unfairly or dishonestly with Cheney or failed to give her interest fair and equal consideration.

A bad faith claim also fails as a matter of law if a reasonable basis exists for the claim decision or if the claim is "fairly debatable."  *Aetna Cas. & Sur. Co. v. Super. Ct.,* 161 Ariz. 437, 778 P.2d 1333, 1336 (Ariz.App. 1989).  US Life conducted an adequate and appropriate investigation of Cheney's claim.  For example, Milheiro requested information to establish Cheney's material occupational duties before and after her claimed date of disability (a date that Cheney kept changing), Cheney's financial records, and Cheney's medical records; retained a vendor to interview Cheney, a meeting which Milheiro attended telephonically; evaluated and considered Cheney's description of her "material duties" as a medical malpractice trial attorney; reviewed the applicable DOT job description; and obtained an opinion from an independent and board certified endocrinologist to evaluate whether Cheney's medical records supported her claimed total disability.  All this information provided a reasonable basis for Milheiro to conclude that Cheney did not qualify as having a "total disability" under the Policy.  At a very minimum, the question was fairly debatable.  Either way, US Life is entitled to summary judgment.

Cheney cannot establish any of the required elements to support her bad faith claim against US Life.  The Court should therefore enter summary judgment in US Life's favor on that claim.

**B.    Because American General Did Not Have Any Contract With Cheney, It Is Entitled To Summary Judgment On Cheney's Bad Faith Claim.**

The existence of a contract is a necessary prerequisite to a bad faith claim.  Under Arizona law, "a covenant of good faith and fair dealing is implied in every contract." *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 214 P.3d 415, 421 (Ariz.App. 2009).  The purpose of the covenant is to ensure that "neither party act to impair the right of the other to receive the benefits that flow from their agreement or contractual relationship."  *Kuehn v. Stanley*, 208 Ariz. 124, 91 P.3d 346, 354 (Ariz.App. 2004).  The relevant inquiry will therefore always focus on the contract to determine the parties' agreements.  *Id*.  Thus, a bad faith claim is inherently predicated on the existence of a valid contract.  *Id.*  In this case, and as discussed above, no contract exists between American General and Cheney.  Without a contract, American General cannot commit bad faith against Cheney.  Summary judgment is therefore proper in American General's favor.

**III.    THE FACTS DO NOT SUPPORT CHENEY'S REQUEST FOR PUNITIVE DAMAGES.**

If the Court grants US Life or American General summary judgment on Cheney's bad faith claim, it must also deny her request for punitive damages.  *See Prieto*, 254 F.3d at 1011 (when a court grants summary judgment on a plaintiff's bad faith claim, the plaintiff is no longer eligible to recover punitive damages).  However, even if the Court does not grant summary judgment on the bad faith claim, it should still dismiss Cheney's request for punitive damages because the facts do not support such a request.

To recover punitive damages, Cheney must show "something more" than bad faith. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 465, 478 (1986).  She must prove by clear and convincing evidence that US Life's conduct "was guided by evil motives" or that it

acted with an "evil hand" guided by an "evil mind." *Id.*, *see also Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675, 680 (1986). Cheney must also establish that US Life intended to cause her harm, or consciously pursued a course of conduct knowing that a substantial risk of harm to her existed. *Rawlings*, 151 Ariz. at 162. Punitive damages are therefore "recoverable in bad faith tort actions when, *and only when*, the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent." *Id.* (emphasis in original).

No evidence exists that US Life's conduct rises to the level to entitle Cheney to seek punitive damages. To suggest otherwise ignores US Life's repeated interactions with Cheney, its efforts to obtain additional information from Cheney, its evaluation of her claim, and the reasonableness of its coverage decision. Cheney's request for punitive damages therefore fails as a matter of law.

**IV.   CONCLUSION.**

Cheney did not qualify as having a "total disability" under the Policy because she continued to perform some of the "material duties" of her "regular job" after her claimed date of disability. US Life was therefore legally and factually justified in denying Cheney's disability claim; as a result, US Life is entitled to summary judgment on Cheney's breach of contract claim. US Life also had a reasonable basis for its decision on an issue that was fairly debatable. Cheney's bad faith claim therefore also fails as a matter of law.

American General is similarly entitled to summary judgment because no contract exists between it and Cheney. And without any contract, American General cannot be liable for breach of contract or bad faith.

For these reasons, US Life and American General request that the Court grant summary judgment in their favor on Cheney's breach of contract and bad faith claims. US Life and American General also request judgment on Cheney's request for punitive damages.

Dated on September 14, 2018.

BARRETT & MATURA, P.C.

By:   /s/ Amanda J. Taylor
Jeffrey C. Matura
Amanda J. Taylor
8925 E. Pima Center Parkway, Suite 100
Scottsdale, AZ 85258
Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

Steven J. German
A Law Firm
11201 N. Tatum Blvd., Ste. 110
Phoenix, Arizona 85028
Attorneys for Plaintiff

Steven C. Dawson
Anita Rosenthal
Sander R. Dawson
Dawson & Rosenthal, PC
25 Schnebly Hill Road
Sedona, Arizona 86336-4233
Attorneys for Plaintiff

/s/ Carolyn Harrington
Carolyn Harrington