# EXHIBIT 1

**T.  UNITED STATES LIFE** Insura    Company In the City of New York

*(Called United States Life)*

United States Life will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

**Group policy no.:**     G-164,156

**Policyholder:**     AMERICAN BAR ENDOWMENT

## PREMIUM PAYMENTS

This policy is issued in return for the payment by the Policyholder of required premiums. Premiums are payable at the home office of United States Life or to its authorized agent. The first premium is due on the effective date of this policy. Later premiums are due in advance on the first day of:

• Annually, each November;
• Semi-annually, each November and May;
• Quarterly, each November, February, May, August;
• Monthly, each month.

These dates are the premium due dates.

## EFFECTIVE DATE

This policy will take effect on May 1, 1998. This policy replaces Group Policy No. G-164,156, which was issued by United States Life and took effect as of November 1, 1994.

## POLICY ANNIVERSARIES

Policy anniversaries will be November 1, 1998 and each subsequent November 1.

## APPLICABLE LAW

This policy is issued in and governed by the laws of Illinois.

Signed on the effective date, at United States Life's home office at 125 Maiden Lane, New York, New York 10038.

*Marie Cirligore*

_____
Registrar

*Chairman of the Board*

Signed by: _____
(A licensed resident agent where required by law)

GROUP ACCIDENT AND HEALTH INSURANCE POLICY

**G-19000**
**FP**

## POLICY INDEX

Each page in this policy has a 2 line code at the bottom left of the page. The code "G-19000" means that the page belongs to the policy series. The letter or letters below the policy code represents a phonetic description of the particular section (FP = Face page; E = Eligibility). If a section requires more than one page, the descriptive letter is followed by a number indicating its order in the section (SCH-2 is the second page in the Schedule of Benefits section).

This index refers you to the phonetic codes.

| SECTION | PAGE(S) |
|---|---|
| Face Page | FP |
| Schedule of Benefits | SCH |
| Definitions | DEF |
| **Eligibility** | |
| Eligible Classes | E-1 |
| Date Persons Are Eligible For Insurance | E-1 |
| Date Insurance Takes Effect | E-1 |
| Actively At Work Requirement | E-1 |
| Date Insurance Ends | E-2 |
| Long Term Disability Benefits | LTD |
| Pregnancy Benefits | P |
| Special Provisions For Groups Taken Over From a Prior Plan | TOG |
| Premiums | PLAH |
| End Of Insurance Provided By This Policy | END |
| **General Provisions** | |
| The Contract | GP-1 |
| Limit On Agent's Authority | GP-1 |
| Incontestability | GP-1 |
| Certificates | GP-1 |
| Misstatements | GP-1 |
| Data Needed | GP-1 |
| Payment To A Minor Or Incompetent | GP-1 |
| Assignment | GP-1 |
| Policy Non-Participating | GP-2 |
| Agency | GP-2 |
| New Entrants | GP-2 |
| Compliance With Law | GP-2 |
| Gender | GP-2 |
| **General Provisions For Accident And Health Insurance** | |
| Filing A Claim | GPAH |
| Payment of Claims | GPAH |
| Physical Exams | GPAH |
| Time Limit On Legal Actions | GPAH |

Am Gen (Cheney) 001119

## SCHEDULE OF BENEFITS

### LONG TERM DISABILITY BENEFITS

| Waiting period during disability | Plan I | Plan II | Plan III | Plan IV | Plan V |
|---|---|---|---|---|---|
| | 30 days | 60 days | 90 days | 180 days | 365 days |

**Note:** the 30 day and 60 day waiting periods are not available for a spouse.

Benefit per month of disability:

• maximum for total disability: *

- for members

$100 to $9,500, in $100 increments, OR the amount in effect on April 30, 1998, but not to exceed:

• for benefit amounts between $100 through $7,500, 66 2/3% of the member's basic monthly pay

• for benefit amounts greater than $7,500, 60% of the member's basic monthly pay.

- for spouses

$100 to $5,000, in $100 increments, but not to exceed:

• 66 2/3% of the spouse's basic monthly pay; and
• 9 times the member's monthly benefit in effect under this policy

• maximum for partial disability

A percentage of the monthly benefit paid to the member during total disability, as follows:

• if Partial Disability Earnings are between 1% and 10% of Pre-Disability earnings; 100%:

• if Partial Disability Earnings are between 11% and 50% of Pre-Disability earnings, 50%:

• if Partial Disability Earnings are between 51% and 70% of Pre-Disability earnings, 25%.

Note. Amounts which do not fall within the percentages stated above for pre-disability earnings will be rounded to the nearest percentage.

• increased benefit during hospital confinement

the benefit amount otherwise payable, increased by 50%

Maximum benefit period for each injury or sickness:

• for total disability:

- if total disability begins prior to age 63

to age 65, **except** as stated below

**Exception:** for total disability due to mental, nervous or emotional disorders

see page LTD-2

- if total disability begins on or after age 63

24 months

• for partial disability

until the earliest of:

• the end of the maximum benefit period described above for total disability. or

• the end of a period of 2 years

• for increased benefits during hospital confinement

3 months

## SCHEDULE OF BENEFITS (Continu)

\* a.) The elected amount, when adding the monthly benefit being applied for with the monthly benefit of all other disability income insurance, whether issued for or applied for, may not exceed:

• for benefit amounts between $100 through $7,500, 66 2/3% of the member's basic monthly pay

• for benefit amounts between $100 through $5,000, 66 2/3% of the spouse's basic monthly pay, not to exceed 9 times the member's monthly benefit amount in effect under this policy

• for benefit amounts greater than $7,500, 60% of the member's basic monthly pay.

b.) A member may apply for a benefit under more than one Plan, not to exceed a combined total of two\*\* Plans available under group policy no.s G-164,155 and G-164,156. A spouse cannot apply for a benefit under more than one plan. (\*\* a person who was insured under 3 or 4 plans under this policy on April 30, 1998 will remain insured under all such plans.)

c.) The combined total limit of coverage for each insured member under group policy nos. G-164,155 and G-164,156 is $9,500.

d.) The total limit of coverage for each insured spouse is $5,000.

### Change In Amount Of A Person's Insurance

#### For a decrease

If insurance is to decrease, such change will take effect on the first day of the month coinciding with or next following the date of request for a decrease.

#### For an increase

An increase in an insured person's amount of insurance will take effect on the first day of the month coinciding with or next following the date United States Life approves the request.

The monthly benefit, when adding the increased amount being applied for with the monthly benefit of all other disability income insurance, whether issued for or applied for, may not exceed:

• for benefit amounts between $100 through $7,500, 66 2/3% of the member's basic monthly pay

• for benefit amounts between $100 through $5,000, 66 2/3% of the spouse's basic monthly pay, not to exceed 9 times the member's benefit amount under this policy, or $5,000

• for benefit amounts greater than $7,500, 60% of the member's basic monthly pay.

A person must be actively at work on the date an increase in his insurance is to take effect. If he is not, such increase will take effect on the first day of the month coinciding with or next following the date he resumes such work.

The date the increase is to take effect might not be a scheduled workday. If so, the person will be considered actively at work on such date if he was actively at work on his last scheduled workday.

A person must be able to perform the normal activities of a person of like age and sex, with like occupation or personal status on the date an increase in his insurance is to take effect. If he is not, such increase will take effect on the first day of the month coinciding with or next following the day the person resumes such activities.

A person might be hospitalized on the date an increase in his insurance is to take effect. If so, the increase will take effect on the first day of the month coinciding with or next following the day after he is discharged.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means that a person performs each duty of his job for full pay. This must be done at the person's or his employer's place of business or any place to which such business requires the person to travel.

FULL-TIME means:

• for a member, active work on a regular work schedule required of the member's job or occupation. This is to include his specialty in the practice of law

• for a spouse, active work on the spouse's employer's regular work schedule. The work schedule must be at least 30 hours a week.

PHYSICIAN means

• a medical practitioner licensed to provide medical services and perform general surgery,

• an authorized Christian Science practitioner as recognized by the Mother Church, the First Church of Christ, Scientist, in Boston, MA, or

• any other practitioner whose services, by law of the state where such services are performed, must be covered by this policy.

Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state. These requirements will not apply to an authorized Christian Science practitioner.

"Physician" will not include an insured person or an insured person's spouse or his or his spouse's father, mother, son, daughter, brother or sister.

HOSPITAL means a licensed institution which is approved by the Joint Commission on Accreditation of Hospitals. "Hospital" does not mean a place, or part of one, which is used mainly for:

• the aged
• the chronically ill
• convalescents
• drug addicts
• alcoholics
• a rest home
• a nursing home
• custodial, educational or rehabilitory care.

"Hospital" will be deemed to include approved Christian Science Sanitariums of this church.

INSURED PERSON means an insured member or an insured spouse of a member.

WAITING PERIOD means a period of consecutive days of total disability for which no benefit is payable. The duration of the waiting period is shown in the Schedule of Benefits. The waiting period begins on the first day of total disability occurring after the effective date of the insued person's insurance.

BASIC MONTHLY PAY means the insured person's monthly rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed. If the insured person owns any portion of a business or profession, Basic Monthly Pay would include the insured person's share of income earned by that business or profession to include the insured person's personal activities minus the insured person's share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the average of the 12 months' income after business expenses which immediately precedes the insured person's application. Basic Monthly Pay does not include dividends, rents, royalties, annuities or other forms of unearned income.

PARTIAL DISABILITY EARNINGS means the insured person's rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed during partial disability. If the insured person owns any portion of a business or profession. Partial Disability Earnings would include the insured person's share of income earned by that business or profession to include the insured person's personal activities minus the insured person's share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the monthly income after business expenses for each monthly period for which partial disability benefits are claimed. Partial Disability Earnings does not include dividends, rents, royalties, annuities or other forms of unearned income.

PRE-DISABILITY EARNINGS means the insured person's monthly rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed. If the insured person owns any portion of a business or profession. Pre-disability Earnings would include the insured person's share of income earned by that business or profession to include the insured person's personal activities minus the insured person's share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the average of the 12 months' income after business expenses which immediately precedes the date total disability commences   Pre-disability Earnings does not include dividends, rents, royalties, annuities or other forms of unearned income

MENTAL ILLNESS means any condition or disease, regardless of its cause listed in the most recent edition of the International Classification of Diseases as a Mental Disorder, except for conditions or diseases specifically excluded from coverage

MEMBER means a fully privileged voting member of the American Bar Endowment.

SPOUSE means the lawful married spouse of a member

G-19000
DEF

## ELIGIBILITY

### ELIGIBLE CLASSES

1. All members who were insured under this policy on April 30, 1998 and who are Actively At Work on a Full-Time basis.

2. For Plans II, III, IV and V only, all persons who submit evidence of their insurability satisfactory to United States Life and who:

- are under age 65;
- are actively at work on a full-time basis;
- are members in good standing with the AMERICAN BAR ENDOWMENT; and
- become insured under this policy on or after May 1, 1998.

3. For Plans III, IV and V only, all persons who submit evidence of their insurability satisfactory to United States Life and who are:

- the lawful spouse of a member described in items 1. or 2. above who is insured under this policy;
- actively at work on a full-time basis; and
- under age 65.

A person may be insured as a member or a spouse, but not both.

### DATE PERSONS ARE ELIGIBLE FOR INSURANCE

Each person in an eligible class on May 1, 1998 will be eligible for insurance on that date.

Each person who enters an eligible class after May 1, 1998 will be eligible for insurance on the date he enters such class.

### DATE INSURANCE TAKES EFFECT

#### For members who were insured under this policy on April 30, 1998

A member's insurance will continue in effect subject to the provisions of this policy.

#### For persons who become insured under this policy on or after May 1, 1998

A member must request insurance for himself and his spouse in writing. Each person must give evidence of his insurability satisfactory to United States Life. If approved, a person will be insured on the first day of the month coinciding with or next following the date United States Life approves the request, provided the required premium is paid.

**Note:** The insurance of an insured person may be subject to exclusions for certain conditions consistent with United States Life's underwriting practice. Such conditions, if applicable, are described in the certificate rider, form no. ASG 29423, which is made a part of the certificate. By paying the required premium, an insured person accepts the insurance provided by this policy, subject to the exclusions for the conditions described in such rider.

### ACTIVELY AT WORK REQUIREMENT

A person must be actively at work and in an eligible class on the date his insurance is to take effect. If he is not, such insurance will take effect on the first day of the month coinciding with or next following the day he resumes such work.

The date insurance is to take effect might not be a scheduled workday. If so, the person will be considered actively at work on such date if he was actively at work on his last scheduled workday.

### ABILITY REQUIREMENT

A person must be able to perform the normal activities of a person of like age and sex, with like occupation or personal status on the date his insurance is to take effect. If he is not, such insurance will take effect on the first day of the month coinciding with or next following the day the person resumes such activities.

### OUT OF HOSPITAL REQUIREMENT

A person might be hospitalized on the date his insurance is to take effect. If so, insurance will take effect on the first day of the month coinciding with or next following the day after he is discharged

**ELIGIBILITY (Continued)**



**DATE INSURANCE ENDS**

An insured person's insurance will end at the earliest of:

1. the date this policy ends;

2. the end of the period for which the last premium has been paid for such insured person;

3. the date the insured person retires;

4. the November 1 coinciding with or next following the date the member ceases to be a member in good standing with the AMERICAN BAR ENDOWMENT;

5. the November 1 coinciding with or next following the date the insured person ceases full-time work for reasons other than disability; or

6. the November 1 coinciding with or next following the date the insured person attains age 70;

In addition to items 1 through 3 and 5 and 6 above, insurance will also end for a spouse at the earliest of:

7. the date their marriage ends by divorce or annulment; or

8. the date the member's insurance ends, **except** as stated below.

**Exception:** If the member dies, his insured spouse may continue his insurance. The spouse will be required to pay the premiums due.

Insurance may be continued until the earliest of:

• the date the spouse is covered by another group plan
• the date the spouse remarries, or
• the date insurance would otherwise end under the group policy.

## LONG TERM DISABILITY BENEFITS 

If an insured person becomes totally disabled and continues to be so disabled past the waiting period, United States Life will pay to him the benefits described below.

The waiting period is shown in the Schedule of Benefits.

### DEFINITIONS

TOTAL DISABILITY means:

#### For members

• during the waiting period and next 60 months, the complete inability of the member to perform the material duties of his regular job to include his specialty in the practice of law; "specialty in the practice of law" means the specialty in the practice of law which the member was performing on the day before total disability began.

• after such 60 months, the complete inability of the member to perform the material duties of any gainful job for which he is reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, a member must also be under the regular care of a physician.

#### For spouses

• during the waiting period and next 60 months, the complete inability of the spouse to perform the material duties of his regular job; "his regular job" is that which he was performing on the day before total disability began.

• after such 60 months, the complete inability of the spouse to perform the material duties of any gainful job for which he is reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, an insured person must also be under the regular care of a physician

PARTIAL DISABILITY means:

• for members, that a member is not able to perform the material duties of his regular job to include his specialty in the practice of law but he is able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"Specialty in the practice of law" means the specialty in the practice of law which the member was performing on the day before total disability began.

The partial disability must be a result of the injury or sickness that caused the total disability.

To be considered partially disabled, a member must also be under the regular care of a physician.

• for spouses, that a spouse is not able to perform the material duties of his regular job but he is able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"His regular job" is that which he was performing on the day before total disability began.

The partial disability must be a result of the injury or sickness that caused the total disability.

To be considered partially disabled, an insured person must also be under the regular care of a physician.

DISABILITY means total and or partial disability.

### MONTHLY BENEFITS

The total disability benefit will begin to accrue on the day after the waiting period ends.

The total or partial disability benefit will be paid in the amount shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to mental, nervous or emotional disorders. These benefits are described on page LTD-2

G-19000
LTD-1

## LONG TERM DISABILITY BENEFITS (Continued)

### Benefits for part of a month

To determine the benefit to be paid for a period of less than a full month:

• divide the benefit by 30
• multiply the result by the number of days in such period.

### DURATION OF BENEFITS

Monthly benefits will be paid up to the maximum benefit periods shown in the Schedule of Benefits.

The benefit will end on the date:

1   the insured person fails to give required proof of continuing total or partial disability;
2.  the insured person's total or partial disability ends;
3.  the maximum benefit period ends; or
4.  the insured person dies.

If this policy ends, this will not act to end the maximum benefit period.

### MONTHLY BENEFITS PAYABLE FOR PARTIAL DISABILITY

If an insured person becomes partially disabled within 31 days after a period of total disability for which monthly benefits are payable, United States Life will pay the monthly benefit shown in the Schedule of Benefits. This monthly benefit will be paid while partial disability continues, up to the maximum benefit period shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to mental, nervous, or emotional disorders. These benefits are described below.

United States Life has the right to require any proof needed to verify the insured person's earnings and continuation of partial disability.

### PREGNANCY BENEFITS

No pregnancy benefits will be paid by this section. except as described on page P.

### LIMITED MONTHLY BENEFITS TO BE PAID FOR MENTAL, NERVOUS OR EMOTIONAL DISORDERS

If total or partial disability is due to a mental, nervous or emotional disorder. the maximum benefit period will be 2 years.

If disability begins prior to age 63, benefits may be paid beyond the 2 year period, as follows.

If:

• the insured person is confined in a hospital at the end of 2 years,
• such confinement has been continuous for the immediately preceding 12 months, and
• the insured person is under 65 years of age;

then benefits will continue to be paid during the confinement, but not beyond the date the insured person attains age 65.



## LONG TERM DISABILITY BENEFITS (Continued)

### SUCCESSIVE PERIODS OF DISABILITY

Successive periods of disability will be considered one period of disability unless they are:

• due to unrelated causes, or
• separated by a return to full-time work for 6 or more continuous months.

A separate waiting period will apply for each separate period of total disability.

Am Gen (Cheney) 5001127



## LONG TERM DISABILITY BENEFITS (Continued)

### CONTINUATION OF INSURANCE WITHOUT PREMIUM PAYMENT (WAIVER OF PREMIUM)

No premium is due for the insured person who is receiving monthly benefits. When the insured person stops receiving monthly benefits, premiums must again be paid when due.

### EXCLUSIONS

No monthly benefit will be paid for disability due to:

• intentionally self-inflicted injury or attempted suicide
• a declared or undeclared war or an act of war
• service in the Armed Forces of any country, except during a temporary active duty assignment with the United States Armed Forces of less than eight weeks duration, or
• committing a crime or an attempt to do so.

Am Gen (Cheney) 001128

## PREGNANCY BENEFITS

### FOR COMPLICATIONS OF PREGNANCY

The benefits to be paid by any section of this policy for a complication of pregnancy will be the same as those to be paid for a sickness.

COMPLICATIONS OF PREGNANCY means:

• conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization

• non-elective caesarean section
• a terminated ectopic pregnancy, or
• spontaneous termination of pregnancy which occurs when a viable birth is not possible.

### FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS

As used in this policy for the benefits shown below, the term "sickness" includes:

• pregnancy
• childbirth
• abortion
• complications of any abortion, and
• related medical conditions

all referred to as "pregnancy."

The benefits to be paid by this policy for total or partial disability due to pregnancy will be the same as those to be paid for total or partial disability due to sickness.

## SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN

These special provisions apply **only** to those persons who were insured the Policyholder's group insurance plan in effect on October 31. 1994, Group Policy No. GMT-3A84, issued by the MUTUAL OF OMAHA INSURANCE COMPANY.

If the maximum benefit amount or maximum benefit period for disability has been exhausted under the Prior Plan, no benefits will be payable under this policy for the condition which caused the disability, except as stated in the Successive Periods Of Disability provision on page LTD-3.

## PREMIUMS

### FREQUENCY OF PREMIUM PAYMENT

The Policyholder and United States Life may agree that payment be made in advance every 1, 3, 6 or 12 months.

### PREMIUM FOR CHANGES IN INSURANCE

If a policy amendment or evidence of insurability is required for this insurance, premium will be charged as of the date such insurance takes effect.

For insurance that ends, premium will be charged to the end of the policy month in which insurance ends. However, if this policy ends, or if insurance ends for a class of members, premium will be charged to the date insurance ends.

### RIGHT TO CHANGE RATES

United States Life may change premium rates:

• when this policy is amended

• on any date on or after the first policy anniversary; this will be done only if United States Life notifies the Policyholder, in writing, at least 60 days before such change.

The new premium will apply only to premiums due on or after the date the rate change takes effect.

### EXPERIENCE CREDIT

Not later than 90 days following the end of a policy year, United States Life will pay any available experience credits to the Policyholder.

The plan experience is based on the combined experience under group policy nos: G-164,155 and G-164,156.

### INSURANCE PREMIUM RATES

Premium rates are evidenced in the appropriate records of United States Life and the Policyholder.

## END OF INSURANCE PROVIDED BY THIS POLICY

### IF PREMIUM IS NOT PAID - GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by this policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

#### Separate billing arrangements

Premiums for this policy may be paid in separate bills covering categories of insured persons set up by the Policyholder. If premium is not paid for a category of insured persons, United States Life can end insurance for such insured persons as set forth above.

#### Individual billing arrangements

Premiums for this policy may be paid in separate bills covering individual insured persons. If premium is not paid for an individual insured person, United States Life can end insurance for such insured person as set forth above.

### OTHER WAYS INSURANCE MAY END

1. The Policyholder can end this policy by giving 30 days advance written notice to United States Life.

2. United States Life can end this policy by giving 60 days advance written notice to the Policyholder.

### IF INSURANCE ENDS - PREMIUMS

If insurance ends, all premiums due must be paid. Such payment will be on a pro rata basis for any period that insurance was in effect from the date the last premium was paid. If United States Life accepts premium after the date this policy ends, this will not act to "reinstate" the policy. United States Life will refund any unearned premium.

### REINSTATEMENT

To reinstate this policy, the Policyholder must complete the required form and send it to United States Life. If this request is approved, the policy will be reinstated on the date stated in writing by United States Life.

G-19000
END

Am Gen (Cheney) 001 132

## GENERAL PROVISIONS

### THE CONTRACT

The entire contract is made up of:

- this policy
- the Policyholder's application, a copy of which is attached
- the Policyholder's reinstatement application, if any, a copy of which will be attached, and
- the individual applications of the insured persons.

All statements in the applications are representations and not warranties. Only statements contained in a written application will be used to void insurance, reduce benefits or defend a claim.

This policy may be changed, renewed or ended without notice to or consent of any person with a beneficial interest in this policy.

### LIMIT ON AGENT'S AUTHORITY

No agent may change or waive any provision of this policy. Any change or waiver must be approved in writing by an officer of United States Life.

### INCONTESTABILITY

United States Life will not contest this policy after it has been in force for 2 years from its effective date (or date of last reinstatement), except for non-payment of premiums.

### CERTIFICATES

United States Life will issue certificates to the Policyholder. The Policyholder must give a certificate to each insured member. Such certificates will describe each insured person's benefits and rights under this policy.

### MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

### DATA NEEDED

The Policyholder will keep a record of all the data needed to compute premiums and carry out the terms of this policy. United States Life can examine such data at any reasonable time.

### Clerical error

A clerical error may be made by United States Life or the Policyholder in keeping the data. If so, when the error is found, the premium and/or benefits will be adjusted according to the correct data. An error will not end insurance validly in force, nor will it continue insurance validly ended.

### PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

### ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

## GENERAL PROVISIONS (Continued)

### POLICY NON-PARTICIPATING

This policy does not pay dividends.

### AGENCY

The Policyholder is not the agent of United States Life for any purpose under this policy.

### NEW ENTRANTS

New persons may be insured according to the terms of this policy.

### COMPLIANCE WITH LAW

On the date this policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

### GENDER

Male pronouns will be read as female where it applies.

## GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE

### FILING A CLAIM

To file a claim, follow these steps:

#### Step 1:

A claimant should send a written notice of claim to United States Life within 20 days of a loss. No special form is required to do this. The notice need only identify the claimant and the Policyholder.

#### Step 2:

When United States Life receives the notice, it will send a proof of claim form to the claimant.

#### Step 3:

The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must state the date the injury or sickness began and the nature and extent of the loss.

#### Step 4:

Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits). United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible.

### PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

### PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured. This may be done as often as needed to process a claim.

### TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period. This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

THE UNITED STATES LIFE Insurance Company In the City of New York

*(Called United States Life)*

## POLICY AMENDMENT

**Group policy no.:**      G-164,156

**Policyholder:**      AMERICAN BAR ENDOWMENT

**Effective Date:**      May 1, 1998

The first paragraph of the SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN provision on page TOG is changed to read:

~~These special provisions apply only to those persons who were insured under the Policyholder's group insurance plan in effect~~ on October 31, 1994, Group Policy No. GMT-8888, issued by the MUTUAL OF OMAHA INSURANCE COMPANY.

These changes will not affect the group policy, or any prior amendments, except as stated above.

*Chairman of the Board*

G-19004
PA

G-164,156

Am Gen (Cheney) 001136

T   E UNITED STATES LIFE Insurai,    Company In the City of New York

*(Called United States Life)*

## GROUP POLICY RIDER FOR COST OF LIVING ADJUSTMENT (COLA) BENEFIT

This rider is issued in return for the payment by the Policyholder of the required premium.  This rider is made a part of

**Group policy no.:**       G-164,156

**Policyholder:**           AMERICAN BAR ENDOWMENT

**Effective date:**         May 1, 1998

This page and the pages that follow are part of this rider.

This rider does not apply to a plan of insurance which provides a 30 day waiting period.

### ELIGIBLE CLASSES

1. All members who:

• were insured under the group policy on April 30, 1998 with a 60 day waiting period and/or a 90 day waiting period and/or a 180 day waiting period and/or a 365 day waiting period; and
• are under age 65,

but not those who are totally or partially disabled on May 1, 1998, until such disability ceases due to a return to full-time work, and such request for this rider has been applied for and approved by United States Life.

2. All members who:

• are eligible under the group policy; and
• become insured under the group policy on or after May 1, 1998; or
• transfer from the 30 day waiting period plan to an eligible class on or after May 1, 1998.

### DATE PERSONS ARE ELIGIBLE FOR INSURANCE UNDER THIS RIDER

Each person in an eligible class on April 30, 1998 will be eligible for insurance under this rider on May 1, 1998.

Each person who enters an eligible class on or after May 1, 1998 will be eligible for insurance under this rider on the date he enters such class.

### DATE INSURANCE TAKES EFFECT UNDER THIS RIDER

#### For members who were insured under the group policy in an eligible class on April 30, 1998

A member must request the insurance benefits provided under this rider by paying the required premium due on May 1, 1998.  If so, a member will be insured under this rider on May 1, 1998.  If a member does not request such insurance on or before the due date, the benefits provided under this rider will not be available to the person unless applied for and approved by United States Life.

#### For persons who enter an eligible class under the group policy on or after May 1, 1998

A person must request the insurance benefits provided under this rider in writing.  A person will be insured for such benefits on the date stated in writing by United States Life, provided the required premium is paid.

### PREMIUM

The premium rate for this benefit is evidenced in the appropriate records of United States Life and the Policyholder.

## GROUP POLICY RIDER FOR COST / LIVING ADJUSTMENT (COLA) BENEF. (Continued)

### BENEFIT DESCRIPTION

Subject to the conditions stated below, a Cost of Living Adjustment equal to a 3% increase in the insured person's elected monthly benefit amount will be paid to an insured person if he has satisfied his Waiting Period and continues to be totally disabled from an injury or sickness for twelve months.

An insured person will be eligible for these increase adjustments on the first anniversary of benefit payments and each following anniversary, if he is continuously receiving total disability benefits under the group policy.

Cost of Living Adjustment benefits will cease the earlier of:

• a total of five adjustments per period of disability have been made; or
• the date the insured person ceases to be totally disabled; or
• the date the insured person dies; or
• the end of the Maximum benefit period for each injury or sickness.

Cost of Living Adjustment Benefits are not subject to the maximum benefit per month of total disability.

For the purpose of calculating the adjustment, the elected monthly benefit amount will not include any prior years' Cost of Living Adjustment.

This rider is subject to all provisions of the group policy which are not inconsistent with the terms of this rider.

These changes will not affect the group policy, or any prior amendments, except as stated above.

_Chairman of the Board_

Signed by _____

(A licensed resident agent where required by law)

Signed by the Policyholder at _____

on _____

By _____   Witness _____ ]
(Signature and Title)

THE UNITED STATES LIFE Insurance Company In the City of New York

*(Called United States Life)*

**Group policy no.:**    G-164,156

**Policyholder:**    AMERICAN BAR ENDOWMENT

**Effective date:**    May 1, 1999

Pages END, GP-1, and GP-2 are replaced with the attached pages END, GP-1, and GP-2.

G-164,156
Am Gen (Cheney) 001139

# END OF INSURANCE PROVIDED BY THIS POLICY

### IF PREMIUM IS NOT PAID - GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by this policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

#### Separate billing arrangements

Premiums for this policy may be paid in separate bills covering categories of insured persons set up by the Policyholder. If premium is not paid for a category of insured persons, United States Life can end insurance for such persons as set forth above.

#### Individual billing arrangements

Premiums for this policy may be paid in separate bills covering individual insured persons. If premium is not paid for an individual person, United States Life can end insurance for such person as set forth above.

### OTHER WAYS INSURANCE MAY END

1. The Policyholder can end this policy by giving 30 days advance written notice to United States Life.

2. United States Life can end this policy by giving 60 days advance written notice to the Policyholder.

### IF INSURANCE ENDS - PREMIUMS

If insurance ends, all premiums due must be paid. Such payment will be on a pro rata basis for any period that insurance was in effect from the date the last premium was paid. If United States Life accepts premium after the date this policy ends, this will not act to "reinstate" the policy. United States Life will refund any unearned premium.

### REINSTATEMENT

#### For this policy

To reinstate this policy, the Policyholder must complete the required form and send it to United States Life. If this request is approved, the policy will be reinstated on the date stated in writing by United States Life.

#### For a person's insurance

With respect to an insured person, if any premium after the first is not paid before the grace period ends, the insurance under the group policy will end with respect to such person. To reinstate such insurance, the person must complete the required form and send it to United States Life. If the request is approved, the insurance will be reinstated on the date stated in writing by United States Life.

## GENERAL PROVISIONS

### THE CONTRACT

The entire contract is made up of:

- this policy
- the Policyholder's application, a copy of which is attached
- the Policyholder's reinstatement application, if any, a copy of which will be attached, and
- the individual applications of the insured persons.

All statements in the applications are representations and not warranties.  Only statements contained in a written application will be used to void insurance, reduce benefits or defend a claim.

This policy may be changed, renewed or ended without notice to or consent of any person with a beneficial interest in this policy.

### LIMIT ON AGENT'S AUTHORITY

No agent may change or waive any provision of this policy.  Any change or waiver must be approved in writing by an officer of United States Life.

### INCONTESTABILITY

#### Of this policy

United States Life will not contest this policy after it has been in force for 2 years from its effective date (or date of last reinstatement), except for non-payment of premiums.

#### Of a person's insurance

This limits United States Life's use of an insured person's statements, except for fraudulent statements, relating to his insurability to contest insurance after it has been inforce for 2 years (from the certificate effective date or date of last reinstatement) during his life, excluding any period when an insured person is totally disabled.  United States Life will also not use such statements, except fraudulent statements, to contest an increase or benefit addition to such insurance after the increase or benefit has been in force for 2 years (from the effective date or date of last reinstatement) during his life, excluding any period when an insured person is totally disabled.  These statements must be in writing on a form satsifactory to United States Life and signed by the insured person.  A copy of this form will be given to the insured person.

### CERTIFICATES

United States Life will issue certificates to the Policyholder.  The Policyholder must give a certificate to each insured member. Such certificates will describe each insured person's benefits and rights under this policy.

## GENERAL PROVISIONS (Continued)

### MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

### DATA NEEDED

The Policyholder will keep a record of all the data needed to compute premiums and carry out the terms of this policy. United States Life can examine such data at any reasonable time.

### Clerical error

A clerical error may be made by United States Life or the Policyholder in keeping the data. If so, when the error is found, the premium and/or benefits will be adjusted according to the correct data. An error will not end insurance validly in force, nor will it continue insurance validly ended.

### PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

### ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

### POLICY NON-PARTICIPATING

This policy does not pay dividends.

### AGENCY

The Policyholder is not the agent of United States Life for any purpose under this policy.

### NEW ENTRANTS

New persons may be insured according to the terms of this policy.

### COMPLIANCE WITH LAW

On the date this policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

### GENDER

Male pronouns will be read as female where it applies.

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

---

**POLICY AMENDMENT**

**Group Policy no.:**     G-164,156

**Policyholder:**     AMERICAN BAR ENDOWMENT

**Effective Date:**     November 1, 2002

The group policy is changed as follows:

A.  The **DEFINITIONS** section is changed to include the following definitions of Accident and Mental Illness:

ACCIDENT means a loss or disability that is the direct result of bodily injury caused solely by an accident that occurs while the insurance is in force and is independent of all other causes.  The loss or disability must commence within 365 days of the accident; otherwise it will be considered as arising from a sickness.

MENTAL ILLNESS means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions.  These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

B.  All references to "mental, nervous or emotional disorder" occurring in the group policy are replaced by the phrase Mental Illness.

These changes will not affect the group policy, or any prior amendments, except as stated above.

*William M. Keeler*

*President*

G-19004
PA

G-164,156

Am Gen (Cheney) 001143

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

---

**POLICY AMENDMENT**

**Group Policy no.:**        G-164,156

**Policyholder:**        AMERICAN BAR ENDOWMENT

**Effective Date:**        November 1, 2007

The member's maximum benefit amount for total disability, on the **SCHEDULE OF BENEFITS**, has been increased as follows:

Benefit per month of disability:

- maximum for total disability:*

-for members                                $100 to $12,000, in $100 increments

The combined total limit of coverage for each insured member under group policy nos. G-164,155 and G-641,156, as indicated in Item **c.)** of the **SCHEDULE OF BENEFITS,** has also been increased to $12,000.

These changes will not affect the group policy, or any prior amendments, except as stated above.

*James L. Weekly*

*President*

**G-19004**
**PA**

**G-164,156**

Am Gen (Cheney) 001144

**THE UNITED STATES LIFE** Insurance Company In the City of New York
*(Called United States Life)*

**POLICY AMENDMENT**

**Group Policy no.:**      G-164,156

**Policyholder:**      AMERICAN BAR ENDOWMENT

**Effective Date:**      November 1, 2008

A.  The definition of a **SPOUSE**, on page **DEF** of this policy, is changed to read:

**SPOUSE** means the lawful married spouse or domestic partner of a member.

If proof of domestic partnership, as outlined below, is provided to United States Life, references to spouse will read domestic partner as it applies, unless specifically stated otherwise.  Proof of domestic partnership includes:

a)  evidence of financial interdependence, which may include:

- joint bank accounts
- joint credit cards
- jointly owned property
- designation of beneficiary of life insurance or pension benefits

b)  evidence of co-habitation

c)  evidence of a prior relationship of at least 6 months, with an expectation of a future commitment

d)  indication of an exclusive mutual commitment

e)  evidence of attainment of the age of majority

f)  statement that he is not legally married

g)  statement that he is not related by blood to the domestic partner

h)  if a resident of a city, municipality or other governing jurisdiction that allows for filing as domestic partners, evidence of such filing.

B.  The **DATE INSURANCE ENDS** provision on page **E** of the **ELIGIBILITY** section of this Policy is changed to read:

**DATE INSURANCE ENDS**

An insured person's insurance will end at the earliest of:

1.  the date the group policy ends;

2.  the end of the period for which the last premium has been paid for such insured person;

3.  the date the insured person retires;

4.  the November 1 coinciding with or next following the date the insured person ceases being a member in good standing with the AMERICAN BAR ENDOWMENT;

**POLICY AMENDMENT (Continued)**

**DATE INSURANCE ENDS (Continued)**

5. the November 1 coinciding with or next following the date the insured person attains age 70;

6. the November 1 coinciding with or next following the date the insured person ceases full-time work for reasons other than total disability;

In addition to items 1 through 3 and 5 and 6 above insurance will also end for a spouse or domestic partner at the earliest of:

7. for spouses, the date their marriage ends by divorce or annulment;

8. for domestic partners, the date the person ceases to be a domestic partner as provided under the group policy;

9. for spouses, the date the member's insurance ends, **except** as stated below.

**Exception:**  If the member dies, his insured spouse may continue his insurance.  The spouse will be required to pay the premiums due.  Insurance may be continued until the earliest of:

- the date the spouse is covered by another group plan
- the date the spouse remarries, or
- the date insurance would otherwise end under the group policy.


These changes will not affect the group policy, or any prior amendments, except as stated above.

*President*

**THE UNITED STATES LIFE** Insurance Company In the City of New York
*(Called United States Life)*

---

**POLICY AMENDMENT**

**Group Policy no.:**      G-164,156

**Policyholder:**          AMERICAN BAR ENDOWMENT

**Effective Date:**        March 1, 2011

The definition of a **SPOUSE**, on page **DEF** of this policy, is changed to read:

**SPOUSE** means the lawful married spouse or domestic partner of a member.

These changes will not affect the group policy, or any prior amendments, except as stated above.

*Mary Jane Fortin*

*President*

G-19004
PA

**DP 03/11**

G-164,156

Am Gen (Cheney) 001147

# EXHIBIT 2

Case 2:17-cv-00004-DGC Document 93-1 Filed 09/14/18 Page 34 of 163

*Referral*
*2/6/14*
*2 pgs*

**ABE**

**AMERICAN BAR ENDOWMENT**
*Insuring your life's needs. Advancing your life's work.*

---

**FAX TRANSMISSION • COVER PAGE**

TO: Micheal LaRosa

FAX: 888-598-0575

DATE: 1-30-14

**FROM:** Charlene Stubbs
New Business Rep.

**PHONE:** 312-988-6419
800-621-8981 ext. 6419

**FAX:** 312-988-6401

**E-MAIL:** Cdstubbs@abendowment.org

---

**MESSAGE:** Please see the attached
Verification form for Cynthia Cheney.
Also, attached is a letter from her
lawyer regarding her Power of
attorney.

Thank You

C. Stubbs

This facsimile contains privileged and confidential information intended only for the individual or entity named above. If the reader of the facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the below address via the US Postal Service. Thank You.

**PAGES BEING SENT INCLUDING COVER:** 5

**AMERICAN BAR ENDOWMENT**
information@abendowment.org • 1-800-621-8981 (toll free) • 312-988-6401 (fax)
321 North Clark Street • Chicago • Illinois • 60654-7648
Web site: www.abendowment.org

ABE (Cheney) 017204

# UNITED STATES LIFE Insurance Company
## ASSOCIATION PLAN COVERAGE CERTIFICATION FORM

### ASSOCIATION   *ABE*

POLICY NUMBER:   G-164,156

CERTIFICATE NUMBER:  00982616

*MEMBR* NAME: Cynthia Chency

*MEMBER* DATE OF BIRTH: 09/21/1950

MEMBER BENEFIT  $3,250  WAITING PERIOD:  90 Days

EFFECTIVE DATE: 01/01/1993

COLA OPTION: No
WAIVERS: No
PTD: 03/01/2014

*SPOUSE* NAME: NA

*SPOUSE* DATE OF BIRTH:

SPOUSE BENEFIT:

WAITING PERIOD:

EFFECTIVE DATE:

COLA OPTION:
WAIVERS:
PTD:

CLAIM NO.:

**Verification Date to USL:  01/30/2014**
ABE Insurance Plan Specialist: Charlene Stubbs

# EXHIBIT 3

# ADELMAN GERMAN, PLC

*A Law Firm*

AIG CLAIMS

January 17, 2014

JAN 2 8 2014

RECEIVED

American Bar Endowment
Claims Center
P.O. Box 25
Bloomfield, CT  06002-0025

RECEIVED JAN 27 2014

> **Re:  Cynthia Cheney**
> **Regular Occupation:    Trial Lawyer (Med. Mal. Defense)**
> **Date of Disability:      December 2006**
> **Member ID:             00982616**

Dear Claims Center:

This law firm represents Cynthia Cheney in connection with her Claim(s) for individual disability income benefits. Enclosed you will find the completed claim packet, including the Claimant Statement, Attending Physician's Statement, and a signed HIPPA Authorization.

We are also enclosing an authorization signed by Ms. Cheney allowing you to direct all future communication, requests, and inquiries through my law firm. Please be instructed not to communicate directly with Ms. Cheney.

We look forward to assisting you with the streamlining of this claim. We will do our best to ensure all reasonable requests for further information and documentation are attended to without delay. Ms. Cheney is a very well respected attorney, and one of only a select group that focused her practice on litigating medical malpractice and other medical-related lawsuits, on behalf of doctors, healthcare providers, and healthcare institutions. Her reputation is excellent.

Unfortunately, Ms. Cheney has exhausted every practical possibility that would allow her to practice. She has tried to avoid filing a disability claim, but now realizes that she simply cannot continue her practice in any meaningful capacity. As you will learn, Ms. Cheney started practicing law in 1984. She worked with some of the best regarded law firms in Phoenix, until she started her own successful practice in 1997. She tried her last case in December 2006, and was given no choice at that time other than to stop working as a trial attorney. Her condition(s) prevented her from physically and cognitively trying complex cases. Her last trial was what is known as a "short trial," which is an alternative to trials that ordinarily last weeks, short trials allow the parties to present their case to a jury in a day or two with

8245 N. 85ᵗʰ Way, Scottsdale, Arizona 85258

480.607.9166

480.607.9031

Firm@AdelmanGerman.com

{AG:00225903.DOCX}

'American Bar Endowment
'January 17, 2014
Page 2

limited witnesses, and in a summary fashion. Even that was too much for Ms. Cheney, who was starting to make mistakes that would have never happened before, but for the fact that she suffers from profound co-morbid health conditions. Ms. Cheney was known for her courtroom excellence, and routinely was the lead counsel in trials lasting many weeks.

In early 2007, Ms. Cheney underwent a complete pelvic reconstruction, and could not work at all for an extended period of time. She returned to her firm to wind her litigation practice down over the remainder of the year, having accepted that she simply cannot do the work of a trial attorney. However, she did not want to completely walk away from law, as a whole, because it is part of her identity, and something she enjoyed and excelled at. After giving up her litigation practice all together, she started holding herself out as a mediator in 2008; mostly for cases involving medical issues and allegations of professional negligence against doctors and healthcare institutions.

Handling mediations soon became too much as well. Ms. Cheney recognized that on any given day she may not be well enough to get out of bed. She could only schedule a mediation if she had another attorney/mediator to cover for her in the event she had to cancel at the last minute. Unfortunately, as we all know, there is no timetable for health, and as such, there was no way to know when her condition(s) would make it impossible to handle a mediation. She ran into situations where she simply could not keep up cognitively or physically, and mistakes happened; which in turn affected her ability to continue handling mediations.

Ms. Cheney remains a named partner of Fidel, Cheney & Burt; however, she does not maintain an office, and is part of the firm in name only. The firm now consists of only Gary A. Fadell.

Ms. Cheney is living in a rented apartment. She is barely able to make ends meet, using what she is able to earn to pay for health insurance. She deals with crippling arthritic disease and a severe form of diabetes, which has left her unconscious at times, and with extremely low blood sugar. She is dependent on an insulin pump, or would otherwise have difficulty functioning and handling her basic activities of daily living.

Ms. Cheney is an extremely likeable person, and we would be happy to make her available for you to meet at our office. You will see that she is truly not capable of working as a trial attorney, and is unable to maintain any sort of legal practice due to her serious health issues.

{AG:00225903.DOCX}

Am Gen (Cheney) 001168

·American Bar Endowment
·January 17, 2014
Page 3

> We are enclosing a detailed overview of Ms. Cheney care and treatment, and her work history as well. Understand, her regular occupation at the time of disability was that of a trial lawyer, and that since January 2007, she has been unable due to sickness, to perform the substantial and material duties of her regular occupation.

> Kindly let us know what more you need from us to process the claim. We are hopeful that, at the very least, you will allow for premium waiver, knowing that this is a legitimate, compensable disability claim. We also ask that you allow us to do all we can to expedite the process. In this regard, please ask the assigned claims handler to call us upon receipt of this letter and its attachments.

Very truly yours,

Steve German, Esq.
For the Firm

Cc:     Ms. Cynthia Cheney
        Ms. Charlene Stubbs, ABE (W/o Encls.)

Enclosures

{AG:00225903.DOCX}

Am Gen (Cheney) 001169

**The United States Life Insurance Company in the City of New York**
New York, New York

**Application For Disability Benefits**



AMERICAN BAIL ENDOWMENT
*Insuring your life's needs. Enhancing your life's work.*

[To Avoid Delay Please Answer ALL Questions]
AS REQUIRED BY LAW, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND FOR OCCURRENCES IN THE STATE OF NEW YORK, SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION

**MAIL TO:** Claims Center, P.O. Box 25, Bloomfield, CT 06002-0025

## PART I—INSURED'S STATEMENT

| NAME OF ASSOCIATION American Bar Endowment | POLICY NO. 00982616 | CERTIFICATE NO. G-184-100 | ☑ MEMBER ☐ SPOUSE |
|---|---|---|---|

| NAME OF INSURED Cynthia V. Cheney | MARITAL STATUS M | ☐ MALE ☑ FEMALE | DATE OF BIRTH 9  21  50 |
|---|---|---|---|

| INSURED'S ADDRESS, STREET & NO. ~~c/o Steven D. Germaine~~  Adelman German, 8245 N. 85th Way, Scottsdale, AZ 85258  CITY   STATE   ZIP | SOCIAL SECURITY NO. | TELEPHONE NO. 480-607-9166 |
|---|---|---|

| EMPLOYED BY Named Partner: Fadell, Cheney & Burt | OCCUPATION Trial Lawyer | SPECIALTY Medical Malpractice |
|---|---|---|

| AVERAGE MONTHLY EARNED INCOME DURING THE TWELVE (12) MONTHS PRIOR TO DISABILITY: | GROSS Prior to 1/07, I made $ 75,000 to $125,000 per year | NET $ |
|---|---|---|

| DATE ACCIDENT OR SICKNESS BEGAN 12/2006  (Before) | DATE LAST WORKED 12/2006 | DATE FIRST TREATED BY PHYSICIAN FOR PRESENT DISABILITY Many years ago |
|---|---|---|

| NATURE OF SICKNESS OR INJURY SEE ATTACHED | DID DISABILITY ARISE OUT OF EMPLOYMENT? ☐ YES  ☑ NO |
|---|---|

| IF INJURED, HOW, WHEN AND WHERE DID ACCIDENT HAPPEN? N/A | DATE TOTAL DISABILITY COMMENCED 12/06 |
|---|---|

| | IF RECOVERED, GIVE DATE OF RECOVERY N/A |
|---|---|

| DATE OF YOUR RETURN TO WORK: N/A   FULL TIME   PART TIME | IF PART TIME, HOURS PER DAY |
|---|---|

NAME AND ADDRESS OF ALL PHYSICIAN'S ATTENDING YOU FOR THIS CONDITION:
SEE ATTACHED

Are you entitled to Benefits from any of the following for this disability?
☐ Workers' Compensation     ☐ Salary Continuance     ☐ Local, State or National Association or Society Disability Income Plan
☐ Social Security     ☐ Any Government Agency     ☐ None

If "Yes" insert policy number, name and address of insurance company or organization providing such benefits or services and amount of payment.

| POLICY NO. | NAME AND ADDRESS | AMOUNT OF PAYMENT |
|---|---|---|
| POLICY NO. | NAME AND ADDRESS | AMOUNT OF PAYMENT |

### AUTHORIZATION

TO PHYSICIANS OR PRACTITIONERS, HOSPITALS, CLINICS, PHARMACISTS, INSURANCE COMPANIES, MEDICAL INFORMATION BUREAU, EMPLOYERS AND OTHER PERSONS OR INSTITUTIONS: This authorizes you to give United States Life Insurance Company in the City of New York, or its authorized representative who is employed to assist in the evaluation of my claim, any information, data or records you may have regarding me, my employment, my benefits or my condition (including records pertaining to psychiatric, drug or alcohol use history, and any disability I may have had). I understand that any information obtained pursuant to this authorization will be used to evaluate my claim and may be transferred to an agency or person employed by United States Life Insurance Company in the City of New York to assist with this purpose. I understand I have a right to request a copy of this authorization and that a copy will be sent to me if requested. A photocopy of this authorization may be accepted by you.

| DATE | SIGNATURE OF INSURED | |
|---|---|---|

08304201-1926 R18/03 (Front)

Am Gen (Cheney) 001170

# Work and Education History Form

## EDUCATIONAL BACKGROUND

Please indicate the extent of your formal education (circle one):

High School:   1  2  3  4  5  6  7  8  9  10  11  12

Did you attend college?          Yes __X__ (Number of Years _____)
                                 No _____

Degree(s) Received _1975: B.S. Zoology (Pre-Med); 1979: BSN (Nursing); 1984 J.D. (Law)_

Major Fields of Study _____

Were you in the armed forces?     Yes _____        No __X__

Branch of Service _____     Highest Rank _____     Specialty _____

## WORK EXPERIENCE

Briefly describe your past 20 years of work experience (Begin with your most recent job).

| Dates (From/Through) | Job Title | Duties | Physical Requirements |
|---|---|---|---|
| | | SEE ATTACHED | |
| | | | |
| | | | |
| | | | |

Primary language __English__          Secondary language(s)_____

Please list any additional courses or training (please be specific, such as medicine (doctor, nurse, paramedic), financial services, carpentry, sales, etc.), and list any hobbies or special skills

_____
_____
_____
_____

Signature                                    Date  1-17-14

**HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT ("HIPAA")**
**Authorization to Obtain and Disclose Information**

I hereby authorize all of the people and organizations listed below to give AIG Life Insurance Company, AIG Life Insurance Company of Puerto Rico, American General Life Insurance Company, American Home Assurance Company, American International Life Assurance Company of New York, Delaware American Life Insurance Company, Pacific Union Assurance Company, The United States Life Insurance Company in the City of New York, and the American General Life Companies, (an affiliated service company), (collectively the "Companies"), and their authorized representatives, including agents and insurance support organizations, (collectively, the "Recipient"), the following information:

* any and all information relating to my health and my insurance policies and claims, including, but not limited to, information relating to any medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; and communicable diseases including HIV or AIDS.

I hereby authorize the following entity to provide the information outlined above:
* any physician or medical practitioner;
* any hospital, clinic or other health care facility
* any insurance or reinsurance company (including the Recipient for purposes of disclosing information related to other insurance policies that provide me with insurance coverage)
* any consumer reporting agency or insurance support organization;
* my employer, group policy holder, or benefit plan administrator; and
* the Medical Information Bureau (MIB).

I understand that the information obtained will be used by the Recipient to:
* determine my eligibility for benefits and contestability of a health insurance policy.

I hereby acknowledge that the insurance companies listed above are subject to federal privacy regulations. I understand that information released to the Recipient will be used and disclosed as described in the AIG American General Notice of Health Information Privacy Practices, but that upon disclosure to any person or organization that is not a health plan or health care provider, the information may no longer be protected by federal privacy regulations.

I may revoke this authorization at any time, except to the extent that action has been taken in reliance on this authorization or other law allows the Recipient to contest a claim under the policy or to contest the policy itself, by sending a written request to: AIG American General Service Center, P.O. Box 4373, Houston, TX 77210-4373. I understand that my revocation of this authorization will not affect uses and disclosure of my health information by the Recipient for purposes of claims administration and other matters associated with my claim for benefits under insurance coverage and the administration of any such policy.

I understand that the signing of this authorization is voluntary; however, if I do not sign the authorization, the Companies may not be able to obtain the medical information necessary to consider my claim for benefits.

This authorization will be valid for 24 months or the duration of any claim for benefits under my insurance coverage, whichever is later. A copy of this authorization will be as valid as the original. I understand that I am entitled to receive a copy of this authorization.

Cynthia Cheney
Name of Insured

1-17-14
Date

Signature of Insured or
Insured's Personal Representative

Description of Authority of Personal
Representative (if applicable)

# Attachment to Claimant Statement For
# Cynthia Cheney
# Certificate No. G-164-156
# 00982616

### Nature of Illness:

Type 1 diabetic now 13 years. Glucose levels have been subject to wide swings the entire time. A1C levels have never been at goal. Over those 13 years have had more bad lows (20's to 40's). Ability to reason, strategize, analyze and remember have gotten progressively worse. Each of those low episodes has created some permanent loss of brain cells. I began to see the changes in myself in 2004 and tried going to part-time work in 2005 to see if it would help. It helped a little, but only temporarily. I continued to have severe low sugars. I had very high sugars, too, which made me sleepy and dull mentally and terribly fatigued physically. In 2006 I made a number of mistakes in my practice that were so out of character for me, that I decided I would wind down my litigation practice and try to build a mediation practice, because I thought that would be easier. Each year, however, I have found I have less cognitive ability, poorer recall of acts, and less physical stamina to apply even to mediations. Even a half day mediation requires a level of energy and a level of analytical ability that I used to be able to reach, and can't at this time. I have found myself saying to myself, "come on now, think!" and "come on, now, bring on the energy" and my brain and body just won't respond. I have tried very hard to bring control to my blood sugars but they seem very brittle and even on good stable days, I can't get my brain or my body off of sluggish. Some days, I have energy like I used to have, physically, but even on those days, I feel like my brain is foggy. Other days, the fatigue and mental confusion and dullness make me really not good for anything. After a bad low, it takes the rest of the day and the night to recover. On days when my sugars are high, I am sick to my stomach and have to force fluids to prevent DKA and I test very frequently to see if the sugars are coming down or if I need to inject some more insulin, and I don't get anything done those days, either. When I have a stressful event, I can never predict whether my sugar will shoot up or down. As my sugars slide up and down, I have a variety of symptoms depending on which way they are going and what my environment is. As sugars slide down, I feel weak, shaky, horribly anxious, sweaty and clammy, mentally confused and physically clumsy. My heart races. As sugars climb up over 250, I feel fatigued and sleepy to the point of drugged, hot, flushed, lightheaded, mentally dull, frequently nauseous, sometimes vomiting and very thirsty.

Other serious health problem is degenerative disc disease, with arthritis and tendonitis. Degenerative disease is in cervical and lumbar spines. MRI shows it clearly. The tendonitis, which comes and goes all around the body may be from the interferon taken in 1999-2000. There have been autoimmune issues ever since. Travel for work is impossible because of the pain it causes in neck, shoulder, arm and fingers. Sitting in airplane seats, lifting bags, having to sit on soft furniture, sleeping in a too hard or too soft hotel bed, all causes horrible low back pain. To protect neck, need to have exactly

1

{AG:00225902.DOCX}

the right height of pillow. Cannot flex or extend neck past a careful range. I not able to lift more than 10 pounds because it sets off pain both in low back (extending down to butt and upper thigh) and neck/shoulder/arm. Even with medication there are some days when my fingers and hands are so painful that I cannot type or wash dishes or drive-comfortably.

Stress is a factor in how controlled or uncontrolled the pain is. Stress makes muscles around spine and neck tighten and that brings the vertebrae together and that inflames the nerves causing pain.

Mental problems that come with high and low sugars include: cognitive slowing and memory difficulty, episodes of confusion, self-doubt, lack of self-confidence.

Low sugar symptoms include: fatigue, weakness, shaking, confusion, heart racing, sweating, anxiety.

High sugar symptoms include: sleepiness, grossiness, mental confusion, blurry vision from swollen retinas, overall flushing and hot, nausea, some vomiting, urinary tract symptoms from sugar in urine and dehydration, ketosis, post ictal symptoms for hours afterward.

Degenerative Disc symptoms include: pain in neck, shoulder, arm and low back. Limited lifting, including limited ability to travel for work, especially by plane.

**PHYSICIANS**:

1.   Ann Bolar, N.P. [Family Practice BC-ADM]
     2200 N. 3rd Street
     Phoenix, AZ 85064
     602-258-9955

2.   Irving Rollingher, M.D. [Internal Medicine/Primary Care]
     Town Center Medical
     731 E. Second Street, Suite 300
     Scottsdale, AZ 85251
     Phone: 480-949-9047

3.   Debbie Bayham, P.A. [Endocrinology]
     Joan Bailey, M.D.
     2200 N. Third Street, Suite 220
     Phoenix, AZ 85004
     Phone: 602-258-9955

4.   Ben K. Harris, M.D. (Retired) [Rheumatology]

2

5.   Felipe Videla, M.D. [Surgeon (Pelvic Surgery/Reconstruction)]
     341- N. Fourth Avenue
     Phoenix, AZ  85013
     Phone:  602-241-1944

6.   William L. White, M.D. [Neuro-surgeon (Neck/Back)]
     Barrows
     2910 N. Third Avenue
     Phoenix, AZ  85013
     Phone:  602-256-7678

7.   Gustavo Armendariz, M.D. [Orthopedics (broken toe)]
     2222 E. Highland, Suite 300
     Phoenix, AZ  85016
     602-277-6211

**Work History:**

| 8/85 – 7/88: | Bonnett Fairbourn Friedman (Attorney) |
| 8/88 – 4/90: | Bryan Cave Law Firm (Attorney) |
| 5/90 – 12/96: | Broening Oberg and Woods (Trial Attorney) |
| 1/97 - 1/07 | Fadell Cheney & Burt (Trial Attorney/Owner) |
| 1/08 - Present | Fadell Cheney & Burt (Mediator/Owner)  When could no longer find the cognitive and physical ability to litigate medical malpractice cases, started to mediate elder abuse and medical malpractice cases toward settlement. Averaging at most 1 case per month. |

**Health Insurance:**

SEE ATTACHED INSURANCE CARD

**Authorization for Disclosure of Information:**

SEE ATTACHED AUTHORIZATION

3

{AG:00225902.DOCX}

Am Gen (Cheney) 001175



**Humana.**

PPO
Subscriber: CYNTHIA V CHENEY
Group Name: FADELL, CHENEY & BURT
Member Name: CYNTHIA V CHENEY
Member I.D.    01
001281597

Coverage Type: EMP
Group ID: 624291

Ofc Visit Co-pay
N/A

ER Co-pay
N/A

Pharmacy Benefit
DED THEN 100%/ DED THEN 70%

Pharmacists: 1-800-865-6715
ANSI BIN # 610649
PCN # 03190000

Humana Vitality

Am Gen (Cheney) 001176

## Authorization for Disclosure of Information

**To:**  American Bar Endowment
The United States Life Insurance Company in the City of New York

I, Cynthia Cheney, am represented by the law firm of **Adelman German, PLC,** in connection with my long-term disability insurance.

This authorization is to request that any person who may be contacted by this firm cooperate with the firm or any lawyer, paralegal or investigator, by providing discussing information about me or any documents which may be in your possession, whether it be legal, medical or other information which the firm may request.

Thank you in advance for your cooperation.

Dated this __30th__ day of __January__, 2013.

CYNTHIA CHENEY

{AG:00224122.DOCX}

Am Gen (Cheney) 001177

**PART II—ATTENDING PHYSICIAN'S STATEMENT**
**THE PATIENT IS RESPONSIBLE FOR THE COMPLETION OF THIS FORM WITHOUT EXPENSE TO THE COMPANY**

| NAME OF PATIENT CYNTHIA CHENEY | DATE OF BIRTH 9 / 21 / 1950 |
|---|---|

**1. HISTORY**
(a) When did symptoms first appear or accident happen?................................. Mo 07 Day 20 Year 2012
(b) Date patient was unable to work because of disability ........................... Mo 07 Day 20 Year 2012
(c) Has patient ever had same or similar condition? ..................................... Mo 07 Day 01 Year 2012
If "YES" state when and describe ☒Yes ☐ No
(d) Names and addresses of other treating physicians 3/2000 - DR. BOLLINGHER

**2. DIAGNOSIS**
(a) Diagnosis (including any complications) TYPE I DIABETES WITH SEVERS HYPOGLUCISM A
(b) Subjective symptoms UNABLE TO THINK UNABLE TO WALK SENSE OF PANIC
PAIRING LOW BLOOD SUGARS 2 TIMES LOSS OF CONSCIOUSNESS
(c) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings) ...................
LOW BLOOD SUGARS IN THE 20-40s

**3. DATES OF TREATMENT** Date of first visit 2/14/11 Date of last visit 1/6/14 Frequency Q 3 MONTH

**4. NATURE OF TREATMENT (Including Surgery and medications prescribed, if any)**
PRESCRIBED INSULIN VIA INSULIN PUMP NEEDS PUMP ADJUSTMENTS
AND LABWORK

**5. PROGRESS**
(a) Has patient........ ☐ Recovered? ☒ Improved? ☐ Uncharged? ☐ Retrogressed?
(b) Is patient ........... ☒ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?
(c) Has patient been hospital confined? ☐ Yes ☒ No
If "Yes," give Name and Address of Hospital ................................
Confined from ................ through ................

**6. CARDIAC (If Applicable)** NOT APPLICABLE
(a) Functional capacity .................... ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation)
(American Heart Ass'n.) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)
(b) Blood Pressure 120 / 72 (Last visit)

**7. PHYSICAL IMPAIRMENT (*as defined in Federal Dictionary of Occupational Titles)**
☐ Class 1—No limitation of functional capacity; capable of heavy work.* No restrictions. (0–10%)
☐ Class 2—Medium manual activity.* (15–30%)
☐ Class 3—Slight limitation of functional capacity; capable of light work.* (35–55%) ARTHRITIS
☒ Class 4—Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity. (60–70%)
☐ Class 5—Severe limitation of functional capacity; incapable of minimal (sedentary*) activity. (75–100%)

**8. MENTAL/NERVOUS IMPAIRMENT**
Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof? ☒ Yes ☐ No

**9. PROGNOSIS**
| | PATIENT'S JOB | ANY OTHER WORK |
|---|---|---|
| (a) Is patient now totally disabled? ........................... | ☒Yes ☐ No | ☒Yes ☐ No |
| (b) If "NO" when was patient able to resume work?.... | Mo___ Day___ Year___ | Mo___ Day___ Year___ |

(c) Do you expect a fundamental or marked change
in the future? ........................................................... ☐ Yes ☒ No ☐ Yes ☒ No
(d) If "YES" when will patient recover sufficiently Mo___ Day___ Year___ Mo___ Day___ Year___
to perform duties? ..................................................... ☐ 1 Month ☐ 1-3 Months ☐ 1 Month ☐ 1-3 Months
☐ 3-6 Months ☐ Indefinitely ☐ 3-6 Months ☐ Indefinitely
☐ Never ☐ Never

**10. REHABILITATION**
Is patient a suitable candidate for further rehabilitation services? ☐ Yes ☒ No
(i.e., cardiopulmonary program, speech therapy, etc.)

| NAME (ATTENDING PHYSICIAN) PRINT ANN BOLAR, NP | DEGREE NP | |
|---|---|---|
| STREET ADDRESS 2200 N 3RD ST | CITY OR TOWN PHOENIX AZ | TELEPHONE 602-258-9955 |
| | STATE OR PROVINCE 85004 | ZIP CODE |
| SIGNATURE | DATE 1/6/2014 | |

**PLEASE RETURN THIS FORM TO THE INSURED OR TO THE ADDRESS ON REVERSE SIDE**

06304201-1028  R10/03 (Back)

Am Gen (Cheney) 001178

**Medtronic**

## Sensor Daily Overlay for CYNTHIA CHENEY
## Dec 16 – Dec 22, 2013
### (7 days)

**HbA1c:** No Data

**Pump:** Paradigm Revel - 523        **#412138**
**Sensor:** In use

## Sensor Data (mg/dL)



| 12/16/13 | 12/17/13 | 12/18/13 | 12/19/13 | 12/20/13 | 12/21/13 | 12/22/13 | Avg. - - - |

| | Mon Dec 16 | Tue Dec 17 | Wed Dec 18 | Thu Dec 19 | Fri Dec 20 | Sat Dec 21 | Sun Dec 22 | Average / Total |
|---|---|---|---|---|---|---|---|---|
| # Sensor Values | 285 | 282 | 286 | 256 | 188 | 288 | 288 | 1,873 |
| High SG (mg/dL) | 288 | 392 | 242 | 303 | 275 | 323 | 336 | 392 |
| Low SG (mg/dL) | 56 | 45 | 52 | 68 | 55 | 45 | 87 | 45 |
| Average SG (mg/dL) | 173 | 143 | 140 | 192 | 173 | 213 | 171 | 172 |
| Standard Dev. | 44 | 70 | 48 | 59 | 59 | 51 | 54 | 61 |
| MAD % | 15.1 | 2.5 | 2.2 | 20.7 | N/A | 20.5 | 15.5 | 12.6 |
| # Valid Calibrations | 4 | 3 | 5 | 4 | 3 | 3 | 5 | 27 |



## Excursion Summary

| | Mon Dec 16 | Tue Dec 17 | Wed Dec 18 | Thu Dec 19 | Fri Dec 20 | Sat Dec 21 | Sun Dec 22 | Average / Total |
|---|---|---|---|---|---|---|---|---|
| # Excursions | 3 | 5 | 8 | 4 | 4 | 3 | 3 | 30 |
| # High Excursions | 2 | 3 | 6 | 3 | 3 | 2 | 3 | 22 |
| # Hypo Excursions | 1 | 2 | 2 | 1 | 1 | 1 | 0 | 8 |
| AUC Above Limit | 31.2 | 25.7 | 13.9 | 52.6 | 37.4 | 67.7 | 31.1 | 36.9 |
| AUC Below Limit | 0.6 | 3.4 | 2.3 | 0.2 | 1.2 | 0.8 | 0.0 | 1.2 |

## Duration Distribution (hh:mm)

       

| | Mon Dec 16 | | Tue Dec 17 | | Wed Dec 18 | | Thu Dec 19 | | Fri Dec 20 | | Sat Dec 21 | | Sun Dec 22 | | Average / Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Above 150 | 18:00 | 76% | 7:50 | 33% | 10:30 | 44% | 15:45 | 74% | 9:30 | 61% | 22:00 | 92% | 15:25 | 64% | 99:00 | 63% |
| Within (80 - 150) | 4:45 | 20% | 11:30 | 49% | 10:05 | 42% | 4:55 | 23% | 4:55 | 31% | 1:15 | 5% | 8:35 | 36% | 46:00 | 30% |
| Below 80 | 1:00 | 4% | 4:10 | 18% | 3:15 | 14% | 0:40 | 3% | 1:15 | 8% | 0:45 | 3% | 0:00 | 0% | 11:05 | 7% |

---

CYNTHIA CHENEY                                    Page:1                                    Printed:1/6/14, 8:51

Am Gen (Cheney) 001179

(7 days)

**HbA1c:** No Data

Pump: Peradigm Revel - 523    #412138
Sensor: In use

## Sensor Data (mg/dL)

12/24/13    12/25/13    12/26/13    12/27/13    12/28/13    12/29/13    12/30/13    Avg.



|  | Tue Dec 24 | Wed Dec 25 | Thu Dec 26 | Fri Dec 27 | Sat Dec 28 | Sun Dec 29 | Mon Dec 30 | Average / Total |
|---|---|---|---|---|---|---|---|---|
| # Sensor Values | 282 | 288 | 230 | 280 | 285 | 283 | 278 | 1,926 |
| High SG (mg/dL) | 400 | 341 | 400 | 302 | 316 | 299 | 377 | 400 |
| Low SG (mg/dL) | 100 | 132 | 46 | 81 | 76 | 60 | 56 | 46 |
| Average SG (mg/dL) | 192 | 222 | 198 | 205 | 177 | 185 | 175 | 193 |
| Standard Dev. | 76 | 55 | 110 | 64 | 62 | 57 | 85 | 75 |
| MAD % | 14.2 | 10.4 | 16.5 | 6.6 | 8.8 | 16.8 | 1.7 | 11.4 |
| # Valid Calibrations | 3 | 5 | 5 | 2 | 3 | 3 | 2 | 23 |

## Excursion Summary

|  | Tue Dec 24 | Wed Dec 25 | Thu Dec 26 | Fri Dec 27 | Sat Dec 28 | Sun Dec 29 | Mon Dec 30 | Average / Total |
|---|---|---|---|---|---|---|---|---|
| # Excursions | 2 | 1 | 4 | 3 | 4 | 3 | 3 | 20 |
| # High Excursions | 2 | 1 | 3 | 3 | 4 | 2 | 3 | 18 |
| # Hypo Excursions | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 2 |
| AUC Above Limit | 53.8 | 72.1 | 70.2 | 62.8 | 39.3 | 46.0 | 46.2 | 55.4 |
| AUC Below Limit | 0.0 | 0.0 | 3.9 | 0.0 | 0.0 | 0.4 | 0.8 | 0.7 |

## Duration Distribution (hh:mm)



|  | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Above 150 | 14:25 | 61% | 22:30 | 94% | 11:25 | 60% | 17:55 | 77% | 13:05 | 55% | 16:20 | 69% | 10:10 | 44% | 105:50 | 66% |
| Within (80 - 150) | 9:05 | 38% | 1:30 | 6% | 4:15 | 22% | 5:25 | 23% | 10:20 | 44% | 6:15 | 27% | 11:25 | 49% | 48:15 | 30% |
| Below 80 | 0:00 | 0% | 0:00 | 0% | 3:30 | 18% | 0:00 | 0% | 0:20 | 1% | 1:00 | 4% | 1:35 | 7% | 6:25 | 4% |

CYNTHIA CHENEY                     Page:1                     Printed:1/6/14, 8:48

Am Gen (Cheney) 001180

RECEIVED JAN 27 2014

FIRST CLASS MAIL

**ADELMAN GERMAN, PLC**

8245 N. 85th Way
Scottsdale, AZ 85258

To:
American Bar Endowment
Claims Center
P.O. Box 25
Bloomfield, CT 06002-0025

Am Gen (Cheney) 001181

# EXHIBIT 4

 **COVENTRY** Health Care

| Referral Source | MILHEIRO, KATE | Claimant name: | CHENEY, CYNTHIA |
|---|---|---|---|
| Ref. S. phone #: | 860-507-2866 | Claim number: | 95923 |
| Company: | AIG BENEFIT SOLUTIONS | Claimant's phone #s: | 480-607-9166 |
| Company address: | PO BOX M BEATTYVILLE, KY 41311 | Claimant's address: | Not provided |
| Ref. S. e-mail: | KATE.MILHEIRO@AIGBENEFITS.COM | Claimant's e-mail: | Not provided |

**Specific Referral Request (s):**    Coventry Complex Case Home Evaluation

# COVENTRY COMPLEX CASE HOME VISIT

The Coventry Complex Case Home Evaluation instrument includes a number of sections, **NOT** all of which need to be administered. Please use check marks to indicate below which sections of this instrument are being used for this Claimant).

☒ All sections to be provided; full report

If not all sections, please check below to indicate which sections you do **NOT** want the Case Manager to provide:

☐ File summary information

☐ Background and medical information (to be obtained from claimant)

☐ Case Manager's behavioral observations of claimant

☐ Claimant's own report of symptoms and perspective on disability

☐ Vocationally relevant information (to be obtained from claimant)

☐ Summary and additional questions (if any, please specify)

If you have any additional questions that are not part of the normal Complex Claims Home Evaluation, please specify:

Also, if the Coventry CM is **not** given access to the file, please provide a brief summary, including diagnosis and anything else you feel we need to know in order to proceed:

AmGen (Cheney)000142

 COVENTRY
*Health Care*

2

| Claimant: | Cynthia Cheney | Claim Number: | 95923 |
|---|---|---|---|
| Referral Source: | Kate MILHEIRO | Referral Date: | 6/11/2014 |
| Account: | AIG Benefit Solutions | Date of Disability: | 12/15/2006 |
| Address: | | CMC #: | 900744632-1 |
| | | REPORT DATE: | 6/18/2014 |

Specific Referral Request (s):   Coventry Complex Case Home Visit

**Date of interview:**   6/17/2014

**Start time of interview:**   11.00am   **End time of interview:**   12.05pm

**Total time duration spent on interview:** 1hour 5 minutes

**Number of attempts required to set up interview:** 1

**Any problems in scheduling the interview with this claimant, and if so, please detail:** Attorney needed to be present and conferencing with Kate Milheiro during the interview. FCM needed to coordinate with all 3 schedules.

**Driver's license used to verify Claimant, with expiration date:** 9/21/2015 Arizona license.

**Case Manager's brief summary of how this evaluation enhanced understanding of this claimant, and any specific suggestions that may assist the referral source:** During interview Kate Milheiro was present. Clarified the dates of disability and medical status.

## FILE SUMMARY INFORMATION
### *(Obtained from file)*

**Date of Accident or Disability and details (if applicable):** Developed Hepatitis C and part of her treatment was a medication study with Interferon. Feb 2000 developed Type 1 diabetes, had episodes of hypo and hyperglycemia but worked her way through her illness. Reportedly too disabled to work full-time in 2007, but has continued to work very part-time in order to pay for her health insurance.

**Diagnoses:** Diabetes Type 1. Hepatitis C.

**Treatment history:** Riboviron for treatment of Hepatitis C – finished trial at 6 months May 2000. Using insulin pump for Type 1 diabetes. A1C – 6 months ago 7.0

**Independent evaluations (if any provided):** None.

**Previous claims and resolution:** No – needle stick injury working as RN but did not follow up with the hospital. (Note: she subsequently retrained as a lawyer).

AmGen (Cheney)000143

CCOVENTRY
Health Care

3

**Any complicating neurological condition?**
    **Related to or independent of claim?** Hepatitis C –.
    **Diagnosis:** Medications caused diabetes type1
    **Treatment history:** Part of study group

**Any complicating psychological / psychiatric condition?**
    **Related to or independent of claim?** None

**Is there a formal DSM-IV evaluation on file?** No

**o Are there conflicting opinions re: the above?** No

## BACKGROUND and MEDICAL INFORMATION
### (Obtained from claimant)

**Personal Information (obtained from claimant):**

Date of Birth: 9/21/1950                 Gender:  Female
Marital Status: Married
Any children, and if so independent or living with claimant? 3 children, all living away from home
Previous Claims:   None

**Claimant's history of condition / symptoms leading to impairment:** Hep C because of medical treatment, developed risk of diabetes; diagnosed ca1999/2000.

**Claimant's stated primary diagnosis (resulting in functional loss, or the basis for disability):** Hep C and subsequent diabetes.

**Claimant's reported other diagnoses:** Cervical spine disc degeneration treated with anti-inflammatory medication

**Claimant's stated treatment summary:** Diagnosed with Hep C, which she suspects resulted from a needle stick injury when she worked as a RN. Treatment of Hep C resulted in development of diabetes.

**Current treatment providers and frequency of visits:**

| Name of provider and specialty | Address | Phone number | Date of last visit | Date of next visit |
|---|---|---|---|---|
| Dr. Joan Bailey Endocrinologist | 2200 N 3rd St, Phoenix, AZ 85004 | (602) 258-9955 | April 2014 | July 17, 2014 |
| PA Anne Bolar | PA to Dr. Bailey  same address | | | |
| Diabetic educator Laura Nolan | | | | |
| Rheumatologist Dr. Joe Nolan | 5040 North 15th Avenue, Phoenix, 85015 | 602 285 0017 | January 2014 | Fall 2014 |



4

**Claimant's recall of any independent assessments (and conclusions):** None

## HOME VISIT: CASE MANAGER'S BEHAVIORAL OBSERVATIONS

**General description of neighborhood:** Meeting at attorney's office

**Description of the living conditions and surroundings (BOTH inside and outside their residence):** Met at attorney's office

**Living arrangements:** Lives with husband.

**Claimant interview:** Attorney and legal assistant present at interview with Ms. Cheney.

**Claimant's Physical Presentation:**

| | |
|---|---|
| [x] Appropriately dressed, clean, groomed, etc. | [x] Cooperative |
| [ ] Dress appropriate but somewhat unkempt | [ ] Not dressed, unkempt |
| [ ] Bizarrely attired | [ ] Obviously very poor hygiene and self-care |
| [ ] Abnormal movements | [ ] Hostile toward examiner |
| [ ] Verbally threatening | [ ] Physically threatening |

Is the claimant's physical presentation consistent with the diagnoses? Yes

Use of any assistive devices, and if so what? No assistive devices – needs help with lifting due to her back issues.

Describe ease of movement when changing positions: Seated during interview.

Approximate Height: 5 feet 6 in     Weight: 164 lbs.

Changes in weight since onset of disability? Gained weight when using insulin; trying to lose weight

Signs of malnourishment? No

**How did the claimant present overall?** Very articulate, well presented.

**Claimant's Mental Status Presentation:**

| | |
|---|---|
| [x] Well oriented as to time, place and person | [x] Alert and engaged |
| [ ] Somewhat disoriented | [ ] Hyper-alert, hyper-vigilant |
| [ ] Lethargic | [ ] Movements fluid and appropriate |
| [ ] Agitated | [ ] Moving as in slow motion |
| [ ] Attention seemed to wander at times | [ ] Attention wandered a great deal |
| [ ] Apparent hallucination(s) | [ ] Other: Specify |

AmGen (Cheney)000145

COVENTRY
Health Care

5

**Claimant's Language Skills:**

| | |
|---|---|
| [x] Fluid, on topic, no obvious difficulties | [x] Comprehension fine, no evident difficulties |
| [ ] Loud | [ ] Slow speech |
| [ ] Low voice | [ ] Evident difficulties with articulation |
| [ ] Very limited vocabulary | [ ] Speech lacking in spontaneity |
| [ ] Extensive profanity | [ ] Pressured speech |
| [ ] Could not stay on topic very long | [ ] Did not seem to understand at times |
| [ ] Wandered and answered questions other than those that were asked | |

**Claimant's fluency in English? Yes**

**If not English-speaking, fluency in his/her language?  NA**

**Claimant's Apparent Thinking Processes:**

| | |
|---|---|
| [x] Idea flow logical and coherent at all times | [ ] Looseness of associations |
| [ ] Tangential at times | [ ] Often tangential |
| [ ] Bizarre | [ ] Paranoid |
| [ ] Hostile, aggressive content | [ ] Overt threats towards others |
| [ ] Suicidal ideation | |

**Claimant's Presenting Emotional State:**

| | |
|---|---|
| [x] Appropriate to the occasion | [x] Affect consistent with expressed mood |
| [ ] Emotional presentation *in*consistent with expressed mood | [ ] Prevailing mood anger |
| [ ] Prevailing mood elation | [ ] Inappropriate laughter |
| [ ] Inappropriate humor | [ ] Prevailing mood depressed |
| [ ] Teary | [ ] Crying |
| [ ] Wailing | [ ] Other: (specify) |

**Other:**

[ ] Smell of alcohol
[ ] Physiological signs of substance abuse

**Comments:**  Wearing sleeveless dress – no signs of any track marks on arms.

## CLAIMANT'S OWN REPORT OF SYMPTOMS AND PERSPECTIVE ON DISABILITY

**Claimant's reported physical symptoms:**   Severe hypoglycemic attacks, better controlled since she started using the insulin pump. Has 1-2 hypoglycemic attacks per day.  Sensitive to know when she is going hypoglycemic and takes measures to counteract progress of the attack.



6

**Claimant's reported emotional/cognitive symptoms:** When she goes hypoglycemic she feels very sleepy and groggy, feels sick to stomach. Both hypo and hyperglycemic she has accompanying mental confusion. Attacks have become less random now that she is no longer working – she feels that the stress of work "set her off".

**Functional inquiry (sleep, appetite, libido, etc.):** Follows diabetic diet. Trouble with sleeping; wakes up when blood sugar moves in either too high or too low.

**CURRENT MEDICATIONS** *(Note: please ask to see their pill bottles and note any discrepancies between what they are taking.*

**Is the claimant able to name his/her medications and their purpose?**

| Medication | Dosage / frequency | Purpose of Medication | Date Started | Effectiveness / side effects | Prescribed by Dr. |
|---|---|---|---|---|---|
| Apedra | Wears insulin pump. Uses about 30 units per day | Via insulin pump to manage blood sugar | 12/1/2012 | No side effects | Dr. Bailey |
| Metformin | Twice daily 2000mgs | Management of blood sugars | 1999 | No side effects | Dr. Bailey |
| Etotalac | 500mgs twice daily | Anti-inflammatory | 2008 | | Dr. Nolan |

**Any additional comments on medication:** None

**OTHER SUBSTANCES:** Client's reported current use of:
**Alcohol:** Very occasionally since alcohol affects her blood sugar adversely.
**Tobacco:** None
**Caffeine:** Not at all
**"Recreational" drugs:** None

**Claimant's description of the normal and material duties of previous occupation:** 1984 graduated from law school. 1984 1990 general litigation. 1990- 2009 medical malpractice defense attorney. Last trial in 2005. In 2008 started mediations in malpractice, worked in 2009 and 2010. Work includes pleadings, arguments, research, defending depositions from expert witnesses

**Claimant's understanding of any physical or other limitations imposed by his/her *doctors*:** Dr. Rollinger, internal medicine, recommended cutting back at work 1997. Dr. White, neurosurgeon, recommended no lifting. Dr. Bailey has recommended decreased work load for better control of diabetes. No formal work restrictions. Currently does 6 mediations per week not lasting more than 4 hours. Does 6-8 depositions per year.

**Does claimant's *Doctor(s)* support a RTW at modified duties if available?** Yes, recommended but not documented.

**Claimant's *own* perception of what *specifically* prevents him/her from RTW at same job, i.e., what could he/she not do that he/she was doing before:** "Brittle and erratic nature of blood sugar and

AmGen (Cheney)000147



7

subsequent complications comes from the stress of work both litigation and mediation, can't return to work full time."

<u>Claimant's *own* perception of what prevents him/her from RTW in a modified capacity at a different position if available:</u>   Working in a modified capacity doing depositions and mediations.

<u>Claimant's perception of current treatment:</u>

a) Is the claimant able to name their doctor(s)?   Yes
b) Who is he/she treating with and what is the treatment plan?   See above.
c) What are the goal(s) of the treatment plan?   To stabilize her blood sugar.
d) How well does the claimant appear to be complying with treatment?   Yes, she appears compliant.
e) How effective is/are the medication(s)?   Better control of diabetes since she started using the pump.
f) Is the claimant having any treatment other than medication, and if so, what, and how effective are these other modalities?   No other modalities.
g) Is the family close by, and are they supportive?   Yes
h) Claimant's expectations re: outcome and timeline:   Expects that management of her diabetes will be an ongoing problem.

## VOCATIONALLY RELEVANT INFORMATION
### (Based *only* on information obtained from the claimant in the interview with CM)

Activities of daily living: Does / Is the Claimant ...

| | | | | | |
|---|---|---|---|---|---|
| Look after his/her personal care? | x Yes | No | Do his/her own laundry? | Yes | x No |
| Do housecleaning chores? | x Yes | No | Do grocery shopping? | x Yes | No |
| Do clothes shopping? | x Yes | No | Do other shopping? | x Yes | No |
| Have a driver's license? | x Yes | No | Drive regularly? | x Yes | No |
| Watch television regularly? | Yes | No | Go to movies? | x Yes | No |
| Read books/papers regularly? | x Yes | No | Talk to others on phone? | Yes | No |
| Socialize with others at home? | x Yes | No | Go out with others? | Yes | No |
| Exercise at home / walk regularly? | x Yes | No | Exercise at a gym? | x Yes | No |
| Access / surf the Internet? | x Yes | No | Uses a computer for other than Internet? | Yes | No |
| Look after his/her own finances? | Yes | No | | | |

<u>If the claimant receives assistance with any of the above,</u>

(1) Who provides this assistance?   ADL performed by self
(2) What type of assistance is provided?   Only needs help when lifting due to her lower back and cervical issues.
(3) How often is assistance provided?   Occasionally
(4) Why is assistance needed?   Degenerative disc disease.

C COVENTRY
Health Care

8

<u>With respect to the following, elaborate on any Yes responses in terms of time commitment:</u>

| | | | |
|---|---|---|---|
| Look after others? | | If yes, elaborate: | |
| Actively engage in a hobby? | x | If yes, elaborate: | Enjoys reading and visiting family |
| Involved in volunteer work? | | If yes, elaborate: | |
| Involved in paid employment? | x | If yes, elaborate: | Does mediation and deposition work |
| Taking courses? | | If yes, elaborate: | |

<u>A typical day consists of the following activities and time frames:</u> Wakes up 7.30am. Checks out diabetic pump, which takes 30 -45 minutes. Takes medication. Breakfast followed by walk. Checks email and talks with her children and checks in with office . Spend lots of lunches and afternoons with her previous partner. Reads a lot. Currently writing a book with her brother, John. Fatigue big problem. Eats dinner by 5.30pm, which her husband prepares. Goes to bed at 9pm.

<u>What are your major interests these days?</u> Writing and reading. Spending time with kids.

<u>Who looks after the residence (outside and inside)?</u> Husband and housekeeper look after home

<u>Availability of transportation (auto or public):</u> Own car

<u>Claimant's position and earnings at claim onset:</u> Lawyer 2008 $76000, 2009 $11000, 2010 $5600

<u>Education (include training programs and certifications):</u> RN degree and law degree.

<u>Brief work history (previous 10 years: include promotions and supervisory experience):</u> Worked own firm in 1997; remains a partner of the firm

<u>Any military history?</u> None

<u>Does the claimant believe he/she could pass a background check, and if not, why not?</u> Yes

<u>Does the claimant have a current resume?</u> Yes

<u>What is (are) the claimant's sources of income presently?</u> Husband's income and $1600 per month disability. Income from any work with the law firm is used for health insurance.

<u>Is the claimant involved in any third party litigation relating to his/her disability?</u> SSDI claim in 2012

<u>Has the claimant applied for Social Security Disability benefits, and if so, what is the status?</u> SSDI claim denied at first level and is now on appeal.

**COVENTRY** Health Care

9

**In the Case Manager's opinion, which of the following best describes the client's stated perception / intentions as to RTW:**

- [ ] Eager to RTW at former position and will likely do so with successful treatment
- [ ] Eager to RTW at former position but employer not likely / not able to accommodate
- [ ] Eager to RTW but not at former position and feels he/she will need retraining
- [ ] Eager to RTW and feels he/she has marketable skills but needs help to find job
- [ ] Would like to RTW but sees little likelihood in view of outdated skills and experience
- [ ] Would like to RTW but sees little likelihood in view of symptoms
- [x] Unlikely to RTW:  Sees self as permanently disabled and effectively out of the work force
- [ ] Not interested in RTW
- [ ] Other. Elaborate:

**In the Case Manager's opinion, what, if anything, would best assist in moving this case forward?**
IME with endocrinologist to review the medical file and blood sugar trends to determine how well blood sugar is being controlled and if any additional measures need to be considered.

**Additional case specific questions from Referral Source:** AIG benefits case manager, Kate Milheiro was conferenced in by phone during the interview. She asked additional questions from Ms. Cheney at the end of the interview.

**Any relevant information not captured above:** Changes sensors on the insulin pump every 4-5 days instead of 3 days.

Signature: *Jacinta Riggs*

CM name and Qualifications: Jacinta Riggs RN BSN CCM   Date:   June 20, 2014

# EXHIBIT 5

## DECLARATION OF GARY A. FADELL

1.    I am a named partner in the law firm of Fadell Cheney & Burt PLLC, a law firm that was established in 1997.

2.    Cynthia Cheney is also a named partner in the law firm. I have practiced law with Cynthia Cheney for 25 years and over those years have enjoyed both a personal and professional relationship with her.

3.    For many years, Cynthia Cheney was a highly regarded, well respected medical malpractice defense attorney, whose clients included some of the largest medical malpractice insurance carriers and hospitals in the State of Arizona. Cynthia brought significant clients and cases to our law firm, based on her skills and reputation; she was chiefly responsible for those cases, including handling of those cases from inception through trial.

4.    Ms. Cheney's law practice focused on defending hospitals and medical institutions in complex medical negligence lawsuits. The lawsuits that Cynthia Cheney handled had the potential to be valued in the millions of dollars.

5.    As part of her practice, Ms. Cheney was considered a trial lawyer. Her clients hired her because of her ability to handle a case from its inception through trial and appeals. It is expected that a certain percentage of medical malpractice cases, which are largely contested matters, will proceed to trial. The attorneys who are hired to defend the cases are required to have excellent trial skills as well as the ability to commit to the rigorous and time-intense preparation necessary to prepare each case for trial.

{AG:00273629.DOCX}

AmGen (Cheney)000079

6.      Medical malpractice cases are also very discovery-intense and involve the preparation and taking or defending of numerous depositions involving complex medical issues. Those depositions frequently involve travel throughout the United States and therefore sitting on an airplane in a confined space for extended periods of time, exceptionally long work days, and irregular sleeping and eating schedules. They also involve putting in long hours for preparation, travel and taking and/or defending depositions.

7.      Ms. Cheney began to suffer from debilitating health conditions, which interfered with her ability to practice law as a trial attorney, during the approximate time period of 2006/2007; her health continued to worsen after this time period.

8.      During this time, I personally observed times when Ms. Cheney was physically, cognitively, emotionally and/or mentally unable to handle the complexities and rigors of practicing as a trial lawyer.

9.      Ms. Cheney could not handle all day depositions, complex hearings, or jury trials. More and more frequently, she was too ill to come into the office.

10.      During the year 2006 Ms. Cheney started to make mistakes in her law practice. Those mistakes specifically included an error on a case being handled for one of her largest clients, Catholic Healthcare West. Due to those errors, Ms. Cheney made the decision to transfer the handling of cases on behalf of Catholic Healthcare West to me, rather than risk being removed from the panel of defense lawyers for these entities.

11.      In early spring of 2007, Ms. Cheney underwent a major surgery and missed time from work. I recall that it was at this time that she was starting to wind down her litigation and trial practice. She has not tried a lawsuit since October 2005.

{AG:00273629.DOCX}

AmGen (Cheney)000080

12. Because she was unable to handle trials, Ms. Cheney was no longer retained to represent healthcare institutions with respect to lawsuits alleging medical negligence.

13. While Cynthia was able to assist me, on occasion, with my cases, such as preparing a difficult client and/or expert witness for a deposition or trial, which she was exceptionally qualified to do, she was not able to maintain the day-to-day, week-to-week work that involved handling a case from inception through trial.

14. Beginning sometime after her surgery in early 2007, Ms. Cheney began to spend less and less time at the office, while she worked to reinvent herself as a mediator, but no longer as a trial attorney.

15. Around 2007, Ms. Cheney began to hold herself out as a mediator and arbitrator, with a focus on medical negligence matters.

16. Her work became almost exclusively mediation-related over the next few years, as her health deteriorated.

17. Her ability to perform at a level comparable to prior years, even in mediations, was impaired by how ill she felt many days.

18. By the Fall of 2012, her health issues worsened; and her memory and cognitive abilities were marginal for the work she was doing, and she was forced to significantly reduce her arbitration and mediation practice. She could not physically or mentally handle the time commitments associated with all-day mediations and arbitrations. Ms. Cheney began to book just a handful of mediations, with the caveat that another attorney, including me, be scheduled on standby in the event she was not

{AG:00273629.DOCX}

AmGen (Cheney)000081

PAGE 9/27 * RCVD AT 6/4/2015 4:59:09 PM [Central Daylight Time] * SVR:PWGSASRSRFAX05/1 * DNIS:7135743087 * CSID:480607 9031 * DURATION (mm-ss):06-30

well enough on the day of the mediation. If that occurred, she would have a replacement handle the mediation in her place.

19.    I recall a specific incident where Cynthia was handling a complex, high-dollar mediation for very prominent Phoenix attorneys. As the day wore on, her blood glucose rose very high, which frequently happened due to the stress of the work we do. Late in the afternoon, the fatigue and mental dullness that comes with high glucose rose to such a level that she failed to share crucial conditions of the settlement with one of the parties. This error caused much post-mediation hostilities between the parties and almost derailed the settlement. As a result of this incident, Cynthia's reputation as a mediator was damaged. She admitted to me that she did not think she had the capacity any longer to handle the high profile multimillion dollar mediations. This was not the kind of mistake Cynthia would have made before her health deteriorated.

20.    As it now stands, Cynthia Cheney does just enough work to cover the cost of her yearly health insurance premiums. She is careful not to take on any mediation or other work that she thinks exceeds her more limited abilities.

21.    I can attest to the fact that over the past few years Ms. Cheney's ability to handle mediations has significantly decreased, and that by early 2007, she no longer worked as a trial attorney. I have seen her when she is not well. I know from my personal contact with her that the stress and time requirements for practicing law and handling trial and then later, mediations, has become overwhelming for her.

{AG:00273629.DOCX}

AmGen (Cheney)000082

I declare under penalty of perjury that the foregoing is true and correct and that

this Declaration was executed on May⌐8TH, 2015 at Phoenix, Arizona.

GARY A. FADELL

{AG:00273629.DOCX}

AmGen (Cheney)000083

# EXHIBIT 6

1   Steven J. German - State Bar No. 014789
    Scott B. Seymann – State Bar No. 027215
2   **ADELMAN GERMAN, PLC**
    8245 North 85th Way
3   Scottsdale, Arizona 85258
    Telephone (480) 607-9166
4   Facsimile (480) 607-9031
    steve@adelmangerman.com
5
    Steven C. Dawson - State Bar #006674
6   Anita Rosenthal – State Bar # 006199
    Sander R. Dawson – State Bar #032243
7   **DAWSON & ROSENTHAL, PC**
    25 Schnebly Hill Road
8   Sedona, Arizona 86336-4233
    Telephone: (928) 282-3111
9   Facsimile: (928) 282-3126
    dandr@dawsonandrosenthal.com
10
    *Attorneys for Plaintiff*
11

12              **UNITED STATES DISTRICT COURT OF ARIZONA**

13                          **DISTRICT OF ARIZONA**

14

15

16   CYNTHIA CHENEY, an individual,          No.  2:17-CV-00004-PHX-DGC

17              Plaintiff,                    **PLAINTIFF'S RESPONSES TO**
                                             **DEFENDANTS' SECOND SET OF**
18   v.                                       **INTERROGATORIES**

19   THE UNITED STATES LIFE
20   INSURANCE COMPANY IN THE CITY
     OF NEW YORK, a foreign insurance
21   company; AMERICAN GENERAL LIFE
     INSURANCE COMPANY, dba AIG
22   BENEFIT SOLUTIONS CONNECTICUT
     CLAIM CENTER, a foreign business entity;
23   DOES 1-10; ROES 1-10,

24              Defendants.

25

26       Plaintiff, Cynthia Cheney, through counsel, responds to Defendants' Second Set

27   (*incorrectly labeled as First Set*) of Interrogatories as follows:

28

     {AG:00393338.DOC}

**GENERAL OBJECTIONS**

1.     Plaintiff objects to any attempt to impose any further or greater obligation upon her to search for responsive information or to supplement these responses, except as is imposed by law, regulation, the Federal Rules of Civil Procedure or the Rules of this Court.

2.     Much of the information requested is already known to Defendants by virtue of information obtained through the claim process, as well as information Defendants may have gathered through the use of public records searches and interviews with various individuals. Plaintiff's prior statements are incorporated herein, and Plaintiff objects to the interrogatories on the basis of redundancy, over-breadth, overly burdensome and harassing nature of the discovery requests, and directs Defendants to its claim file, as well as Plaintiff's disclosure statements, which hold the answers to many of its questions and requests.

3.     Plaintiff objects to the interrogatories on the grounds that discovery is continuing and Plaintiff and her attorneys have not yet completed their discovery or preparation for trial, nor have they completed their analysis of information gathered to date. These answers are based upon information presently available to Plaintiff and her attorneys and upon the investigation they have been able to complete as of this date. Future investigation and discovery may supply additional documents, facts, and information, add meaning to known facts, or establish entirely new factual conclusions and contentions, all of which may lead to addition to, changes in, and variations from the answers set forth herein. These answers are made without prejudice to the right of Plaintiff to submit any and all admissible evidence available to them at the time of trial, arbitration or similar procedure.

4.     Plaintiff objects to the interrogatories to the extent they are overbroad. In these responses, the term "overbroad" means that the requested information is not relevant to the subject matter involved in the present action and not reasonably calculated to lead to the discovery of admissible evidence.

{AG:00393338.DOC}2

1    5.      In these responses, the term "unduly burdensome" means that gathering
2    information would be oppressive, harassing or would cause undue financial burden to
3    the Plaintiff.

4    6.      Plaintiff objects to the interrogatories to the extent they request disclosure
5    of confidential business or personal information, including medical records and
6    information therefrom that is not germane to issues at hand.

7    7.      Plaintiff objects to the interrogatories to the extent they request release or
8    review of information protected by law or general privacy rights from disclosure to
9    third parties.

10   8.      Plaintiff objects to the interrogatories to the extent they seek to impose on
11   Plaintiff the responsibility for producing documents not within her possession, custody,
12   or control.

13   9.      Plaintiff objects to the interrogatories as over-reaching in that they seek
14   information irrelevant to the claims herein.  Further, much of the information sought is
15   already in Defendants' possession, having been obtained during the claims process or
16   Plaintiff's initial disclosure statement.

17
18                              **INTERROGATORIES**
19   **Interrogatory No. 18**
20       Identify Your specialty in the practice of law which You were performing the
21   day before Your claimed disability.

22
23   **RESPONSE:**
24       **Cynthia was a medical malpractice defense trial lawyer, and defended**
25   **almost exclusively institutional defendants. Declarations from the risk**
26   **management personnel that referred cases to Cynthia Cheney were provided to**
27   **AIG as part of the claim handling process. These professionals will further affirm**
28

1  that she was one of a few attorneys that defended institutional defendants in

2  malpractice litigation.

3

4  **Interrogatory No.19**

5     Identify the date upon which You were no longer able to perform Your specialty

6  in the practice of law because of Your claimed disability.

7

8  **RESPONSE:**

9     Cynthia Cheney did not suffer an acute injury on a date certain, but rather it

10  was a culmination of health issues which ultimately led to the inability to practice

11  as a trial lawyer.

12     She was the lead counsel for a trial at the end of 2005, during which she

13  suffered significant health issues, that would ultimately lead to her inability to

14  work as a trial attorney. She thought that she would recuperate once the physical

15  toll of trial dissipated and post-trial work was completed in 2006. In hindsight, she

16  did not realize how serious her conditions were, or the impact that they had on her

17  ability to work as a trial lawyer.

18     Cynthia's cases were referred to her by the risk management department of

19  institutional medical facilities. One of her referral sources saw first-hand how ill

20  she became during the last trial she handled. She tried to continue work as a trial

21  lawyer through 2006, but as the year wore on she was not able to rebound, and she

22  was not able to resolve her health issues, which affected her physically and

23  cognitively. All of this is documented in the claim materials submitted to AIG

24  before her claim was denied.

25     Ultimately, in early March 2007 Cynthia underwent pelvic reconstruction

26  surgery. While she was recovering she had some down time to look back and

27  realize how her physical health impacted her ability to be a trial lawyer. She was

28  still not willing to forfeit her chosen profession, and struggled to come to terms. She

{AG:00393338.DOC}4

1    took affirmative steps to wind down her trial practice at that time, but still had
2    hope that one day she would return. Thereafter, towards the end of 2007, she
3    suffered a foot injury, and having already missed much of 2007, she was forced to
4    accept that because of issues with her health she could no longer hold herself out as
5    a trial lawyer. She thereafter no longer accepted new cases as a trial lawyer.

6        She believes her trial practice was wound down or winding down in or
7    around January 2007. She was out for a significant amount of time for surgery in
8    early 2007, and then out again in the fall of 2007. By 2008, she transitioned to doing
9    mediations, in lieu of working as a trial lawyer. Again, she explained all of this to
10   AIG before her claim was denied.

11       AIG denied her claim all together, and therefore it never calculated a start
12   date to her disability, nor did it challenge the timing of her conditions or their
13   impact at various times to Cynthia. **Thus, as presented in Cynthia's claim**
14   **submissions the start date of disability is as indicated therein at the beginning of**
15   **2007 at the earliest.**

16

17   Interrogatory No. 20

18       Identify with specificity the material duties of Your specialty in the practice of
19   law, as identified in response to Interrogatory No. 18.

20

21   RESPONSE:

22       Cynthia Cheney's regular occupation at the time of disability was that of a
23   medical malpractice trial lawyer representing institutional clients. The material
24   duties of her occupation required that she be physically, cognitively and
25   emotionally capable of handling cases from start to finish. A lawyer cannot hold
26   herself out as a trial lawyer if she is incapable of doing trials. A trial lawyer must
27   have the ability to work long, mentally strenuous hours, multi-task, and handle

28

stressors from numerous sources. There is no timetable for when an urgency arises during the litigation process.

Trial attorney work for Cynthia required the ability to learn and retain significant amounts of information, from details surrounding complex issues of medicine to various claimants' medical histories, from witness information, legal issues, expert qualifications and much more. Daily stressors stem from all facets of trial work, which can emanate from issues with clients, opposing counsel, judges, witnesses, experts, and more.

The work leading up to trial is also very time intensive and stressful. Depositions, pre-trial memoranda, motions in limine, trial briefs, and much more must be distilled and presented to a jury. The outcome of medical malpractice claims can be very substantial with exposure to clients running into the many millions of dollars. It is a very specialized area of the law that requires special dedication to the medicine and the law, medical process and procedures, hospital protocols, and much more. It is not an area of the law that allows for inconsistency or absences due to chronic health issues. As a trial lawyer, Cynthia was required to be present and ready when scheduled in court and able to best represent her clients in preparation of trial.

**Interrogatory No. 21**

State with specificity the basis for Your inability to perform the material duties of any gainful job for which You are reasonably fit by training, education or experience from 60 months after the date You identify in response to Interrogatory No. 19 to the present.

## RESPONSE

Cynthia suffers Type 1 Diabetes and is afflicted when her blood sugars are either high or low. High sugars cause her to be somnolent, dazed, and unable to focus or attend to her surroundings. Low sugars cause her to become confused, light headed, clumsy, unable to concentrate or reason, sweaty, tachycardic, unsteady on her feet and panicked that she will pass out.

More recent records further explain Cynthia's medical conditions that affect her ability to concentrate, reason, multi-task, focus and so on. In this regard, studies show brain volume loss and brain atherosclerosis, as documented by Dr. Maki. With the benefit of retrospect, the brain volume issues likely played a role in her diminishing cognitive and memory skills. This can occur in aging adults although it is not a benign condition. Dr. Maki is following Cynthia for this condition because it involves issues of her vascular health in her brain. Dr. Maki's records also support the reading of the CT scan of her brain from May 2016 showing an old stroke. Stated succinctly, Cynthia's inability to perform trial work is manifested by fatigue, somnolence, inability to focus or concentrate, and by physical and cognitive deficiencies as a whole, all of which are likely the result of her diabetes, high and low fluctuating blood sugars, and/or organic changes in her brain.

Once it became clear that this was a chronic condition, and something that would not soon pass, Cynthia began doing mediations centered on medical-legal cases. She could no longer work as a trial lawyer, and therefore could not hold

herself out as a trial lawyer. Her medical impairments are such that on any given day she may not be able to handle a mediation, and will routinely have someone available to back her up in the event she is physically or cognitively unable to handle mediation.

Cynthia cannot withstand rigors of an all-day mediation. She suffers routinely from increased and decreased blood sugars, and other health issues and ailments that by their very nature cannot be predicted with any certainty. Stress, lack of sleep, and physical activity all factor into her condition. She also suffers cognitive and memory impairments that result in further difficulties as a mediator. Her vision is impaired when her blood sugar levels are elevated, and she suffers anxiety and fatigue depending on sugar levels and how high or low they become.

At times, her partner, Mr. Fadell, may need someone to sit in on a deposition to observe, and Cynthia will do that, but she does not ask questions and is not able to compute the data and information needed to prepare for or take a deposition.

**Interrogatory No. 22**

Do You contend that You qualify/qualified for "Partial Disability" as that term is defined in the Policy at any time? **SEE OBJECTION BELOW.** If, yes, state with specificity the basis for your contention. Your response should include, but is not limited to, information regarding: the material duties of Your job (in Your legal

specialty) that You are unable to perform, whether Your inability to perform each of the material duties is on a part-time or full-time basis, and the date of your "Partial Disability" as that term is defined by the Policy.

**RESPONSE**

      **Plaintiff objects to this interrogatory to the extent it calls for a legal conclusion that will be addressed in large part when expert witnesses are disclosed. The interrogatory is also vague and ambiguous as to time and/or regular occupation. Without waiving these objections, Plaintiff responds as follows:**

      **Cynthia is making a claim for total disability benefits to the extent she is unable to perform the material duties of a trial lawyer. Issues of partial disability are inapplicable as to Cynthia's inability to perform her 'regular occupation' as a trial lawyer. AIG has refused to acknowledge this component of her claim in whole or in part.**

      **AIG further denied Ms. Cheney's claim for total disability benefits, without analyzing whether she is entitled to 'partial disability' benefits.**

      **Plaintiff's claims for bad faith denial of her disability claim will incorporate damages stemming from AIG's refusal to timely, fairly and thoroughly evaluate whether she is entitled to any benefits under her Policy. Ms. Cheney provided significant amounts of information related to her prior occupation as a trial lawyer, and the work she has since done as a mediator. In that she has suffered significant losses of income, and is unable to work on a consistent, regular**

{AG:00393338.DOC}9

schedule, she is claiming total disability benefits are owed. To the extent she earned income for mediation work she did or when she filled in for Gary Fadell, it is significantly less than her prior monthly income. Thus, to the extent there were months when she did not work at all, or her income was practically non-existent, AIG owes her total disability benefits. If there are instances when AIG determines there are months when her income was such that partial disability benefits are owed, then it needed to issue payment for those benefits. But until AIG acknowledges Cynthia's disabling conditions, and her inability to work as a trial lawyer, and advises of its calculation of prior monthly income, there is no analysis as to partial disability.

Plaintiff reserves her right to amend this answer as discovery proceeds, and records are obtained from AIG, that indicate whether, when, and why it considered or evaluated her claim for partial disability benefits versus total disability.

Interrogatory No. 23

Identify with specificity the material duties of Your work as a mediator at Fadell Cheney & Burt, P.L.L.C. (or any other name Your law practice has operated under since 2006).

**RESPONSE:**

The material duties of work as a mediator require that Cynthia be well enough to be present for scheduled mediations. This requires her to limit the number of mediations performed, and assurances of someone to back her up in the event she is unable to attend for reasons of health.

Mediations require her to become familiar with the parties' claims and their respective positions, and issues of medicine or law that may apply to their claims. During mediations, she becomes familiar with the parties, learns more about their cases and their positions, and then works to see if she can be of assistance in helping them to resolve their cases. Cynthia will not accept a mediation if it is expected to last all day or involves complex issues or is overly contentious and thus too stressful. Cynthia has run into difficulties in the past when a mediation lasted into the evening, and involved a number of moving parts. This resulted in issues for her and the litigants, such that she had difficulties remembering to share certain pre-conditions of a proposed settlement, which later became problematic when the parties did not have a mutual understanding of the terms of a settlement they thought they reached.

In all, Cynthia has forced herself to work as a mediator and earn enough money to cover her health insurance. She hoped she could handle full time work as a mediator, but by 2012, it was clear that she lacked the capacity to do that. She was not physically or cognitively able to commit to doing that sort of work, and as a result she has lost out on the ability to finish funding her 401k and saving toward

1   her retirement. If AIG paid her claim as it should have, Cynthia would not have

2   forced herself to do the things that made her fell even more ill.

3

4        DATED this 12th day of December, 2017.

5

6                                    ADELMAN GERMAN, PLC

7                                    By: _____

8                                         Steven J. German
                                          Scott B. Seymann
9

10                                        DAWSON & ROSENTHAL
                                          Steven C. Dawson
11                                        Anita Rosenthal
                                          Sander R. Dawson
12

13                                        *Attorneys for Plaintiffs*

14   Copy emailed and original mailed this
15   12th day of December, 2017, to:

16   GRAIF, BARRETT & MATURA, P.C.
17   Jeffrey C. Matura
     Amanda J. Taylor
18   1850 N. Central Ave., Ste. 500
     Phoenix, Arizona 85004
19   *Attorneys for Defendants*

20

21   By: _____
22        Sheri Sadler

23

24

25

26

27

28

{AG:00393338.DOC}12

# EXHIBIT 7

The United States Life Insurance
Company in the City of New York
New York, New York

Benefit Solutions Connecticut Claim Center
P.O Box M
Beattyville, KY 41311

February 11, 2014

Steve German
Adelman German, PLC
8245 N. 85th Way
Scottsdale, AZ 85258

RE:   Your Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Certificate Number: 00982616
      Group Policy Number: G164156            Claim Number: 95923
      Underwritten by: The United States Life Insurance Company in the City of New York

Dear Ms. Cheney:

This letter is to acknowledge that Benefit Solutions Connecticut Claim Center is in receipt of your
claim submission under the above Long Term Disability plan. I will be contacting you shortly to review
in detail your LTD plan and to discuss your current disabling condition with you. My direct phone
number is listed below and I encourage you to contact me with any questions or concerns.

The following documentation is needed to continue the process of reviewing your claim for disability
benefits. Please provide us with the following information no later than March 12, 2014.

- Please specify the date of disability for which you are filing a claim including the day, month
  and year of your disability. Please provide documentation from your medical provider(s)
  supporting your date of disability;

- We will need medical records from your disabling physician(s) for the period of disability you
  are claiming supporting total disability through the 90 day elimination period and into the
  benefit payment period. We will request this information from your treating physicians and
  would appreciate your assistance in obtaining these documents as soon as possible for
  review. Additionally, please notify us of the time frame that you treated with each of your
  treating physicians;

- In order to help us better understand your occupation, we ask that you provide us with
  documentation concerning your monthly billable hours broken down by month, type of service

Distributing products issued by:

American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
*This company does not solicit business in New York.

Am Gen (Cheney) 001182

The United States Life Insurance
Company in the City of New York
New York, New York

and amount billed for the three calendar months prior to your date of disability, through your date of disability. Please have this information exported into an Excel or PDF document and submit on a disc;

- If you are filing for a date of disability in the year 2006, please provide copies of your Personal and Business Income Tax Returns for the years 2005 through 2012, including all supporting W-2 and K1 statements, schedules and attachments so that we may calculate your Basic Monthly Earnings and verify your post disability residual earnings as you have notified us that you continued to work beyond your date of disability;

- Please submit a copy of your monthly profit and loss statement(s) for the period November 1, 2005 through January 31, 2014;

- A statement from your pension administrator, yourself or your accountant, indicating pension/profit sharing contributions made on your behalf by any of the entities owned during the years 2005 and 2006.

- A completed Fraud Statement form (please see attached)

- Please provide a written explanation for the reason you are filing your claim late. The instructions for filing a claim are noted below as follows:

## "Filing a Claim

To file a claim, follow these steps:

### Step 1:
A Claimant should send a written notice of claim to United States Life within 20 days of a loss. No special form is required to do this. The notice need only identify the clamant and the Policyholder.

### Step 2:
When United States Life receives the notice, it will send a proof of claim form to the claimant.

### Step 3:
The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.
If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required, should be attached to the form.
If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must State the date the injury or sickness began and nature and extent of the loss.

### Step 4:
Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits). United States  Life may require more proof as often as needed to verify disability.
If a notice of proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible."

Am Gen (Cheney) 001183

The United States Life Insurance
Company in the City of New York
New York, New York

**Please forward the information to:** Benefit Solutions Connecticut Claim Center at the address of:
P.O. Box M; Beattyville, KY 41311. You may also fax the information to us at 1-888-598-0575.

Disability claims can sometimes involve a detailed and lengthy evaluation process. We will work
diligently to complete our evaluation of your claim in prompt manner. We also expect and appreciate
your prompt and complete cooperation as that will help expedite the evaluation process.

Upon receipt of the requested information we will be able to continue with the review of your claim.  If
you should have any questions, please feel free to contact our office at 1-866-894-3840 or you may
contact me directly at 860-507-2864.

Sincerely,

*Michael LaRosa*

Michael LaRosa
Long Term Disability Case Manager
**Benefit Solutions Connecticut Claim Center**

Am Gen (Cheney) 001184

# EXHIBIT 8

# Initial Clinical Assessment



**To:**
**Date:**      **March 21, 2017**
**From:**      **Milheiro, Kate**

**Claimant Information:**
| | |
|---|---|
| Claimant: | Cheney, Cynthia |
| Address: | 8245 N. 85th Way |
| | Scottsdale, AZ  85258 |
| Phone Number: | |
| Claim Number: | 95923 |
| Disability Date: | December 15, 2006 |
| Date HDi Notified: | January 27, 2014 |
| SSN: | 526940923 |
| Date of Birth: | September 21, 1950 |
| Sex: | Female |
| Height: | |
| Weight: | |
| Dominant Hand: | |
| Language: | |

**Employer Information:**
| | |
|---|---|
| Company: | AMERICAN BAR ENDOWMENT |
| Location: | AMERICAN BAR ENDOWMENT |
| | 321 North Clark Street  14th Floor |
| | Chicago, IL  60610 |

**Employment History:**
| | |
|---|---|
| Occupation: | |
| Hire Date: | January 01, 1993 |
| Current Work Status: | |

**Description of Disability:**
| | |
|---|---|
| Nature: | Diabetes, DDD, etc. |
| Body Part: | |

| | | |
|---|---|---|
| Diagnosis: | 250 | DIABETES MELLITUS |
| Diagnosis: | 251.2 | HYPOGLYCEMIA NOS |

**Medical Providers:**

**Provider Contacts:**

| Provider Type | Specialty | First Name | Last Name | Title | Address_1 | Address_2 | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|
| Disabling | | Ann | Bolar | | 2200 N. 3rd Street | | Phoenix | AZ | 85064 | 6022589955 |
| Disabling | | Irving | Rollingher | | 731 E. Second Street, Suite 300 | | Scottsdale | AZ | 85251 | 4809499047 |
| Disabling | | Debbie | Bayham | | 2200 N. Third Street, Suite 220 | | Phoenix | AZ | 85004 | 6022589955 |
| Disabling | | Ben | Harris | | | | | | | |
| Disabling | | Felipe | Videla | | 341-N, Fourth | | Phoenix | AZ | 85013 | 6027881521 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Avenue | | | |
| Disabling | | William | White | | 2910 N. Third Avenue | Phoenix | AZ | 85013 | 6024063621 |
| Disabling | | Gustavo | Armendariz | | 2222 E. Highland, Suite 300 | Phoenix | AZ | 85016 | 6022776211 |
| Disabling | | Joan | Bailey | | 2200 N. Third Street, Suite 220 | Phoenix | AZ | 85004 | 6022589955 |
| Disabling | | Richard | Hallock | | 3399 E Trindle Rd | Camp Hill | PA | 17011 | 7177615530 |

Date of Next Appt:
Case Manager LOD:
Approved thru Date:
Attorney Involved:          No

**NOTES:**

**Correspondence/Employee/Employee**
01/29/2014   EMira          Mailed Association Ack Ltr and EFT form.

**Review/AIG/Case Manager**
01/30/2014   MLaRosa     CM to email the ABE for the certificate documentation. CM to locate policy and
assign plan when certificate is found and coverage is clear. After receiving

certificate info, CM will conduct TI and send acknowledgement letter. CM to review

intake documents received. CM to send MRR to treating MD's when MROI is obtained.

CM to try to obtain info for AAW, PDI/PMI, pension stmts, job descript, trade

license.

**Correspondence/AIG/Case Manager**
01/30/2014   MLaRosa     CM em'd Charlene Stubbs & Bonnie C @ the ABE & requested the certificate, riders,
PTD info. Copy of email scanned to file.

**Review/AIG/Case Manager**
01/30/2014   MLaRosa     Please note that while the DON is stated to be 1/27/14, the intake processor didn't
load the claim until 1/29/14. Therefore CM was actually advised of the claim no

earlier than 1/29/14 and CM began handling the claim on 1/30/14 which is within

standards.

**Correspondence/AIG/Case Manager**
02/04/2014   MLaRosa     Scan Rcvd Type: Claim Intake DOS: ltr from atty, EE stmt, MROI, APS from Dr. Bolar,
list of treating MD's, Authorization to s/w Adelman/German PLC

**Correspondence/AIG/Case Manager**
02/04/2014   MLaRosa     Scan Rcvd Type: Power of Attorney DOS: Certificate, duplicate ltr from atty.

**Correspondence/AIG/Case Manager**
02/04/2014   MLaRosa     Scan Rcvd Type: Power of Attorney DOS: Duplicate ltr from atty

**Correspondence/AIG/Case Manager**
02/04/2014   MLaRosa          Scan Rcvd Type: Attorney Correspondence DOS: dupe system generated tickler.

**Correspondence/AIG/Case Manager**
02/04/2014   MLaRosa          Scan Rcvd Type: Attorney Correspondence DOS: dupe system generated tickler.

**Review/AIG/Case Manager**
02/04/2014   MLaRosa          CM emailed Bonnie & Charlene at the ABE as it appears they sent us the certificate
                             for the wrong member. CM cannot verify coverage(s) at this time.

**Correspondence/AIG/Case Manager**
02/11/2014   MLaRosa          Scan Rcvd Type: Policy DOS: ABE Certificate & PTD

**Review/AIG/Case Manager**
02/11/2014   MLaRosa          Plan notes: CM chose plan for 90 day EP. No ADEA to age 65 plans exist. CM assigned
                             24 mos max dur plan and found that claim accepted max dur of age 65. CM to proceed

                             in handling claim unless otherwise notified. Additionally, test change occurs at

                             60 mos. Depending on the DOD, this may not apply. EE is late filing to as late as

                             2006 per ltr from atty, but at this time, the treating MD puts EE out w/ DOD of

                             7/1/2012

**Outbound Call/Employee/Attorney**
02/11/2014   MLaRosa          CM s/w Atty Steve German. CM provided contact info. CM verfied demo. Cm went over
                             EE's condition and DOD. LDW as trial atty unknown (in 12/2006 or 01/2007). EE had

                             complete pelvic reconstruction in early 2007. Atty did not have dates of

                             disability or tx. Atty stated EE never stopped performing work altogether but

                             stopped practicing as a trial atty, her specialty, in 12/2006. EE then did

                             mediations only and remained as a partner only in name since 2007. EE still owns a

                             portion of the practice. 1120S is likley filing structure per atty. Over last few

                             yrs, EE has made only around $8000 doing mediations but not in occ. Atty inq if

                             EE's post dis earnings will be an offset- CM stated we must acquire the pre dis

                             and post dis earning, medical records, etc before we can determine that. Atty to  ·

                             provide list of tx MD's with dates that EE saw them. CM will req MR's when dates

                             of tx are known. Atty was agreeable in providing all tax returns adn will try to

                             get AAW billable hrs. Call complete.

**Correspondence/Employee/Attorney**
02/11/2014   MLaRosa          CM mailed & faxed ack letter & fraud stmt to Atty.

**Review/AIG/Case Manager**
02/24/2014   MArnone          ACTION PLAN: CM to review all information on claim to date and send 30 day status
                             letter introducing new CM and requesting any additional information needed for

                             claim. Determine whether member is to be contacted directly or it POA is to be

called.

**Medical Record Request Template/Other/Other**
02/24/2014   MArnone   PLEASE ADD TO CONTACTS: ATTORNEY REPRESENTATIVE STEVE GERMAN OF ADELMAN GERMAN
PLC

LAW FIRM P-480-607-9166 F-480-607-9031

**Review/AIG/Case Manager**
03/14/2014   sys   Decision Outcome: Pending * Decision Outcome Reason: Awaiting EE/ER Info * Hours
Per Day: N/A * Days Per Week: N/A * Begin Date: 09/29/2012 * End Date: N/A *

Actual End Date: N/A * Number of Days: N/A * Anticipated RTW Date: N/A * Note: N/A

**Review/AIG/Case Manager**
03/19/2014   KMilheir   Reviewed recently transferred claim. S: decreased cognitive abilities, pain. O:
Cynthia Cheney is a 63-year-old attorney who is claiming disability since 12/2006

due to complications from Type 1 diabetes including decreased cognitive abilities

and autoimmune issues, and degenerative disc disease/arthritis. A: Additional

information is needed to determine disability, including but not limited to:

written statement advising the mbrs claimed DOD, inc documentation from all

medical providers supporting this DOD; med recs from all disabling physicians for

the period of disability claimed, time frames that mbr treated with each

physician; documentation of all monthly billable hours broken down by month, type

of service and amount billed for the three calendar months prior to the claimed

date of disability, through the actual date of disability; Personal and Business

Income Tax Returns year prior to disability through 2012; monthly P&L's for the

period 11/1/2005-1/31/2014; statement indicating pension/profit sharing

contributions made on mbr's behalf by any of the entities owned during 2005 and

2006; Fraud Statement; written explanation for late claim filing. P: Follow up for

outstanding info.

**Correspondence/Employee/Attorney**
03/25/2014   KMilheir   status ltr sent to attorney

**Correspondence/AIG/Case Manager**
04/02/2014   KMilheir   Scan Rcvd Type: Attorney Correspondence DOS: N/A. Ltr from Attny advising they are
in the process of gathering info and requesting field visit.

**Correspondence/AIG/Case Manager**
04/16/2014   KMilheir   Scan Rcvd Type: Attorney Correspondence DOS: N/A. faxed ltr from attny advising
they are attempting to gather the information requested; rqsting additional time

to gather information; and providing 2005-2012 partnership tax rtns & 2007-2012

personal tax returns (via CD which will be sent via US mail); Disability start

date of 12/14/2006 provided by attny


**Medical Record Request Template/Other/Other**
04/16/2014   KMilheir        MRR Request for Claim #: 95923; Date of Request: 4/16/2014; Farmington CM: Kate
                             Milheiro; Integra MRR Processor: Iris Engracial; Name of Providers: #1- Dr. Bolar,

                             #2- Dr. Rollingher, #3- Dr. Bayham, #4- Dr. Videla, #5- Dr. White, #6- Dr.

                             Aremdariz; Is Provider in Contacts: yes; Dates of MRR for LTD: 6/2006-present


**Review/AIG/Case Manager**
04/17/2014   KMilheir        File referred to Coventry for onsight visit

**Correspondence/Vendor/Other Vendor**
04/22/2014   KBuckley        p/c to Charlotte Forst, Account Rep at Coventry, referral has been received, no
                             action will be taken until CM returns to office on 4/28/14.


**Correspondence/AIG/Case Manager**
04/28/2014   KMilheir        Scan Rcvd Type: Attorney Correspondence DOS: N/A. 4/9/2014 ltr from attny
                             (duplicate)


**Inbound call/Employee/Attorney**
05/01/2014   SGonzale        Terry from Adelman German Law Firm c/i trying to get a hold of CM thru
                             p#860-507-2766 but it was busy. *** ADDRESS NOT VFD *** Confirmed she has correct

                             direct p# for Cm and offered assistance.

                             ATTORNEY REPRESENTATION ON FILE SCANNED TO CLAIM ON [1/29/2014] GRANTING PERMISSION

                             TO S/W [Attorneys from Adelman German] ON CLAIMANT'S BEHALF *** Per Terry, their

                             ofc mailed CD containing tax returns and would like to know if we rcvd the CD.

                             Asked when the CD was mailed and which years were the tax returns for. Per Terry,

                             the CD was mailed this April only and advised tax returns were from 2005-2012.

                             Confirmed rec't of CD/tax returns (scanned 4/22). Terry thanked.


**Correspondence/AIG/Case Manager**
05/09/2014   KMilheir        Scan Rcvd Type: Financial DOS: N/A. 2005-2012 business tax returns.

**Correspondence/AIG/Case Manager**
05/09/2014   KMilheir        Scan Rcvd Type: Financial DOS: N/A. 2007-2012 personal tax returns.

**Correspondence/AIG/Case Manager**
05/09/2014   KMilheir        Scan Rcvd Type: Claim Intake DOS: N/A. Fraud Stmnt.

**Review/AIG/Case Manager**
05/09/2014   KMilheir        Spoke with Jacinta Riggs from Coventry (480-721-0027). She will forward list of

questions they typically ask, then will call attny next week to schedule onsight

visit. Discussed potential for CM and VRC to conference in, she said that would be

fine. Thanks were exchanged and the call ended.

**Correspondence/Provider/Disabling**
05/14/2014   RTahil       MRR (06/2006-present) sent to Dr's Bolar, Rollingher, Bayham, Videla, White, and
                          Armendariz.

**Inbound call/Provider/Support Staff**
05/15/2014   SGonzale     Amanda Shneider  from doctor's ofc (Dr Rollinger) c/i asking where to mail medical
                          records. *** ADDRESS IN TAM AND LAST 4 OF SSN NOT VFD *** Advised to mail records

                          to the pobox m beattyville,ky). Amanda understood and thanked. Tickler CM.

**Correspondence/AIG/Case Manager**
05/15/2014   KMilheir     Scan Rcvd Type: Medical Records DOS: 05/14/2014. Invoice - Dr. Bolar.

**Correspondence/AIG/Case Manager**
05/15/2014   KMilheir     Scan Rcvd Type: Medical Records DOS: 01/10/2007. Medical records - Dr. Videla
                          (incomplete)

**Correspondence/AIG/Case Manager**
05/15/2014   KMilheir     Scan Rcvd Type: Medical Records DOS: 01/10/2007. Medical records - Dr. Videla
                          (incomplete)

**Correspondence/AIG/Case Manager**
05/21/2014   KMilheir     Scan Rcvd Type: Medical Records DOS: 03/01/2007. Medical records - Dr. Videla. Pt
                          seen from 2005-2007 for vaginal/anal difficulties. Urodynamics and surgical repair

                          noted.

**Correspondence/AIG/Case Manager**
05/22/2014   KMilheir     Scan Rcvd Type: Medical Records DOS: 05/23/2012. Medical records - Dr. Armendariz
                          (incomplete fax)

**Correspondence/AIG/Case Manager**
05/23/2014   KMilheir     Scan Rcvd Type: Medical Records DOS: 05/23/2012. Medical records - Dr. Armendariz.
                          11/1/2006: Rt knee and bilateral shoulder discomfort. degenerative arthritis noted

                          at C5-C6 level. No frank abnormalitis, shoulder ROM not impaired, very mild

                          impingement signs, elbow/wrist movements not impaired, no ROM impairment in R

                          knee/hip/ankle. Dx: bilateral shoulder impingement and R patella chondromalacia.

                          10/12/2007: consult for R little toe fracture after tripping over dining room

                          chair on 10/7/2007. Dx: displaced fracture, proximal phalanx, R 5th toe with

                          deformity - manipulation of toe under anesthesia and percutaneous pinning.

                          11/7/2007: 4 weeks s/p ORIF proximal phalax fracture of R little toe. pins

removed, good healing, no other f/u neeed. 5/23/2012: consult w/Brad Nigbur PA-C

for R thumb trigger digit. normal x-rays, injection given.

**Correspondence/Employee/Employee**
05/23/2014   KMilheir      status ltr sent to attny

**Outbound Call/Provider/Disabling**
05/30/2014   RTahil        Called Dr. Bayham's office s/w a lady, and was advised that the office is close,
                           left w/ a detailed message to relay. Provided w/ a callback #. Tickler CM.

**Correspondence/AIG/Case Manager**
06/02/2014   KMilheir      Scan Rcvd Type: Medical Records DOS: 05/28/2014. Rtnd MRR from Dr. White - no
                           records within requested timeframe.

**Correspondence/AIG/Case Manager**
06/02/2014   KMilheir      Scan Rcvd Type: Medical Records DOS: 07/10/2013. Medical records - Dr. Rollinger.
                           Tx covering 2006 through 7/2013 follow up for diabetes, incl labs, OV for

                           cough/bronchitis.

**Review/AIG/Case Manager**
06/04/2014   KMilheir      Invoice is Paid - Dr. Bolar.

**Correspondence/AIG/Case Manager**
06/09/2014   KMilheir      Scan Rcvd Type: Medical Records DOS: 05/14/2014.  Invoice - Dr. Bolar (duplicate)

**Correspondence/AIG/Case Manager**
06/13/2014   KMilheir      Scan Rcvd Type: Medical Records DOS: 05/14/2014. duplicate copy of invoice from Dr.
                           Bolar.

**Correspondence/Provider/Disabling**
06/16/2014   RTahil        3rd attempt completed. Sent MRR (06/2006-present) to Dr. Bayham.

**Correspondence/Employee/Employee**
06/23/2014   KMilheir      status ltr sent to attny

**Inbound call/Employee/Attorney**
06/27/2014   KMilheir      Rcvd phone call from Terry at Attny German's office. She said they are working
                           diligently to obtain the information we requested but may not have it by 7/7 and

                           asked for an extension. I advised that though the claim may be approved, it can be

                           reopenned upon receipt of the requested information and that the claim cannot be

                           held open indefinitely. She said she understood. Thanks were exchanged and the

                           call ended.

**Inbound call/Provider/Support Staff**
06/30/2014   MLacanar      Laura from Dr Joan Bailey's ofc c/i asking where to mail the records as there's too
                           many records to fax. ***ADDRESS AND LAST 4 OF SSN NOT VRFD*** Confirmed to mail

                           records to PO BOX M Beattyville KY 41311. Caller thanked. CSR-KA

**Correspondence/AIG/Case Manager**
07/07/2014   KMilheir      Scan Rcvd Type: Financial DOS: N/A. 2005-2006 IRS transcripts.

**Correspondence/AIG/Case Manager**
07/07/2014   KMilheir      Scan Rcvd Type: Financial DOS: N/A. 2005-2006 IRS transcripts (duplicate)

**Correspondence/AIG/Case Manager**
07/07/2014   KMilheir      Scan Rcvd Type: Services DOS: N/A. Invoice - Coventry (onsight)

**Correspondence/AIG/Case Manager**
07/07/2014   KMilheir      Scan Rcvd Type: Medical Records DOS: 04/24/2014. Medical records - Dr. Bolar.
                           follow up tx 2011-4/2014 for type 1 diabetes w/neurological manifestations,

                           general osteoarthrosis; has insulin pump

**Review/AIG/Case Manager**
07/07/2014   KMilheir      S: decreased cognitive abilities, pain. O: Cynthia Chency is a 63-year-old attorney
                           who is claiming disability since 12/2006 due to complications from Type 1 diabetes

                           including decreased cognitive abilities and autoimmune issues, and degenerative

                           disc disease/arthritis. A: Additional information is needed to determine

                           disability, including but not limited to: time frames that mbr treated with each

                           physician; documentation of all monthly billable hours broken down by month, type

                           of service and amount billed for the three calendar months prior to the claimed

                           date of disability, through the actual date of disability; monthly P&L's for the

                           period 11/1/2005-1/31/2014. P: Deny claim for lack of information as unable to

                           determine eligibility for benefits on currently available information

**Review/AIG/Case Manager**
07/08/2014   KMilheir      Decision ltr drafted and forwarded to TL-DL for review.

**Review/AIG/Team Leader**
07/14/2014   DLee          TL reviewed denial letter and returned to CM to add state specific info to the back
                           of the letter.  Once completed, ok to send out.

**Review/AIG/Case Manager**
07/14/2014   KMilheir      Invoice is Paid - Coventry

**Correspondence/Employee/Attorney**
07/14/2014   KMilheir      Denial letter sent to Attorney German.

**Correspondence/Other/Other**
07/14/2014   KMilheir      WOP notification sent to ABE

**Review/AIG/Case Manager**
07/14/2014   sys           Decision Outcome: Denied * Decision Outcome Reason: Non-Compliant * Hours Per Day:
                           N/A * Days Per Week: N/A * Begin Date: 03/15/2007 * End Date: N/A * Actual End

                           Date: N/A * Number of Days: N/A * Anticipated RTW Date: N/A * Note: N/A

**Correspondence/AIG/Case Manager**
08/22/2014   KMilheir          Scan Rcvd Type: Financial DOS: N/A. duplicate copies of 2005-2012 business tax rtns

**Correspondence/AIG/Case Manager**
08/22/2014   KMilheir          Scan Rcvd Type: Financial DOS: N/A. duplicate copies of 2007-2012 personal tax
                               returns.

**Correspondence/AIG/Case Manager**
09/22/2014   KMilheir          Scan Rcvd Type: Attorney Correspondence DOS: N/A Ltr from attny rqsting copy of
                               claim file and residual disability benefits.

**Correspondence/Employee/Attorney**
09/22/2014   KMilheir          Ltr sent to attny w/copy of claim file

**Correspondence/AIG/Case Manager**
11/18/2014   KMilheir          Scan Rcvd Type: Medical Records DOS: 05/21/2014. Invoice - Dr. Armandariz/ScanStat
                               (past due)

**Correspondence/AIG/Case Manager**
11/18/2014   KMilheir          Scan Rcvd Type: Medical Records DOS: 09/10/2014. Medical records - Dr. Rollingher
                               documenting ongoing tx and f/u for Diabetes, w/labs.

**Correspondence/AIG/Case Manager**
11/18/2014   KMilheir          Scan Rcvd Type: Correspondence DOS: N/A. Cover ltr from attny with copy of CD w/
                               med recs

**Correspondence/AIG/Case Manager**
02/03/2015   KMilheir          Scan Rcvd Type: Correspondence DOS: N/A. Ltr from attny expressing confusion as to
                               why claim has not been honored.

**Inbound call/Employee/Attorney**
02/03/2015   KMilheir          Rcvd call from Terry at Attny German's office inquiring as to the status of the
                               claim. Advised that none of the financials have been rcvd so the claim is still

                               closed. She asked if we received the medical records they submitted. I advised we

                               did but that they have not been reviewed as the claim is closed until such time as

                               the financials are received. She said they have some of the financials  but have

                               not gone through them yet, that Attny German is in a trial for the next month but

                               when he gets out they will review and get some additional information to me.

                               Thanks were exchanged and the call ended.

**Inbound Voice Mail/Employee/Attorney**
04/07/2015   KMilheir          Rcvd vm from Terry at Attny German's office left at 1:26pm today rqsting a call
                               back at 480-607-9166 to schedule a mutually convenient time so Attny German and I

                               can speak re: Ms Cheney's claim. CM rtnd call at 3:16pm and spoke with Terry. She

                               thanked me for calling back and advised that Steve would like to speak with me re:

                               the status of this claim, that they do not have the additional information and

would like to discuss. I explained that would be fine, however that after this

week I will be out of the office for 2 weeks, not returning until Monday 4/27. She

asked if the claim was going to be approved and I advised it would not be approved

at this time. She then asked if Thursday would work for a call, that he can do

9:00 their time, 12:00 my time. I advised that time works for me and she asked if

I could call Attny German then. I said I would, thanks were exchanged and the call

ended.

**Correspondence/AIG/Case Manager**
04/07/2015   KMilheir       Scan Rcvd Type: Correspondence DOS: N/A. Ltr from attny clarifying 1/1/2007 claimed
                            DOD and outlining conditiong and decline in work, annual income per tax returns

                            shows decline in income and therefore rqst payment of past due benefits.

**Outbound Call/Employee/Attorney**
04/09/2015   KMilheir       CM called Attny at scheduled time to discuss claim. He expressed concern over the
                            amount of time we have had claim and wanted to know why we are not paying

                            benefits. Explained that we understand she has medical conditions, but we still do

                            not have verification of her pre-dis and post-dis occupational duties to ascertain

                            whether she was working in her specialty. He advised that billable hours are not

                            available and I explained that we will still require some sort of objective

                            documentation that confirms her occ as a Trial Attny and that she has not been

                            working in that capacity since her DOD. He asked if we could pay under ROR while

                            he gathered this information and I advised we could not. He advised the member is

                            experiencing financial hardship since we are not paying and I expressed

                            understanding and advised that the information is needed before benefits could be

                            paid. Thanks were exchanged and the call ended.

**Review/AIG/Case Manager**
04/09/2015   KMilheir       File referred for NCM review

**Correspondence/Employee/Attorney**
04/09/2015   KMilheir       ltr sent to attny

**Review/AIG/Case Manager**
05/04/2015   KMilheir       Discussed claim with NCM-KU. Disability unclear based on medical records provided,
                            NCM will refer for peer review.

**Correspondence/AIG/Case Manager**
05/27/2015   KMilheir       Scan Rcvd Type: Services DOS: N/A. Initial NCM review- Based on the records
                            reviewed, the inability to RTW FD, full time due to diabetes w/ labile blood

sugars is unclear as the member has apparently been working in some capacity and

has not continued treatment on regular basis since the date of disability; w/

insulin pump placement 12/1/12, one would expect improvement of symptoms w/ fewer

large swings and hypoglycemic episodes. With the 2/28/07 pelvic reconstruction

surgery, one would anticipate inability to RTW even sedentary position 6-8 wks

post-op (2/28/07 to 4/24/07). With percutaneous pinning right 5th toe 10/12/07,

per ODG, expect RTW 2 wks (10/26/07). **File referred for peer review**


**Correspondence/AIG/Case Manager**
06/30/2015   KMilheir          Scan Rcvd Type: Financial DOS: N/A. ltr from attny, litigation billing
                               7/1/2006-6/30/2007, declaration stmnts from coworkers.


**Correspondence/AIG/Case Manager**
06/30/2015   KMilheir          Scan Rcvd Type: Correspondence DOS: N/A. completed trial attny questionnaire
                               indicating no days in trial from 1/1/2006-1/1/2015.


**Inbound call/Employee/Attorney**
07/07/2015   KMilheir          Rcvd call from Terry at Attny German's office looking for status on claim. Advised
                               info has been received and is being reviewed and that will have update for them

                               hopefully by the end of next week. Thanks were exchanged and call ended.


**Correspondence/AIG/Case Manager**
07/08/2015   KMilheir          Scan Rcvd Type: Services DOS: N/A. Peer review report.

**Correspondence/AIG/Case Manager**
07/08/2015   KMilheir          Scan Rcvd Type: Correspondence DOS: N/A. Ltr from attny demanding decision on claim.

**Review/AIG/Voc Specialist**
07/14/2015   KBuckley          received and completed request for occupational description and demands, DOT JD &
                               PDs added to correspondence, CM advised.


**Review/AIG/Case Manager**
07/16/2015   KMilheir          S: decreased cognitive abilities, pain. O: Cynthia Cheney is a 64-year-old attorney
                               who is claiming disability since 12/2006 due to complications from Type 1 diabetes

                               including decreased cognitive abilities and autoimmune issues, and degenerative

                               disc disease/arthritis. A: Medical information on file supports tx for diabetes

                               however peer review determined it is not disabling. pelvic reconstruction surgery

                               and percutaneous pinning of toe would not be disabling through EP. No medical

                               records provided to support dis due to degen disc disease. Mbr reports unable to

                               work as trial attny, however no objective documentation on file to support work as

                               trial attny prior to 12/15/06 and mbr continued to work in capacity as an attny

after 12/15/06. Unable to determine occupational duties prior to and after claimed

DOD and no medical evidence of disabling condition on file. P: Deny claim as info

provided does not support Total Disability through or beyond 90 day EP.

**Review/AIG/Case Manager**
07/20/2015   KMilheir       decision ltr to UC-DL for review.

**Review/AIG/Unit Coordinator**
07/21/2015   DLee           UC reviewed closure letter and returned to CM for revisions.  Once completed, ok to
                            send out.

**Correspondence/Employee/Employee**
07/22/2015   KMilheir       Decision ltr sent to attny

**Correspondence/AIG/Case Manager**
08/03/2015   KMilheir       Scan Rcvd Type: Services DOS: N/A. NCM closure report.

**Correspondence/AIG/Case Manager**
08/17/2015   KMilheir       Scan Rcvd Type: Correspondence DOS: N/A. Litigation Hold demand. **File referred to
                            legal**

**Correspondence/Employee/Employee**
08/17/2015   KMilheir       ltr acknowledging 8/14/15 ltr/litig hold demand sent to attny.

**Inbound call/AIG/Case Manager**
09/08/2015   KMilheir       Attny-Client Privileged and Confidential: Spoke with Council Michael Long. He will
                            issue Litigation Hold as requested, I will send copy of claim file to Attny German.

**Correspondence/AIG/Case Manager**
12/10/2015   LDAppoll       Scan Rcvd Type: Medical Records DOS: na

**Outbound Call/Employee/Attorney**
03/22/2016   LBeck          Called Atty German's office to introduce myself as the Appeals Specialist and
                            provide contact coordinates...Mr. German was not available...spoke to his legal

                            assistant, Terry...provided contact info and advised that I will be complete a

                            full review and will be in touch if I identify any information that may help in

                            supplementing the appeal.

**Inbound call/Employee/Attorney**
04/28/2016   SRoa           Steve German (atty) c/i and said previous CM(CM-KM) working on claim is no longer
                            with the company, new CM called him but he wasnt able to get info. ***DEMO NOT

                            VERIFIED***.Advised unable to provide specifics of claim.Atty said he just needs

                            to talk to new CM. ***ATTY VERIFIED DEMO***Advised appeal specialist-LB called him

                            on 3/26 ,appeal specialist will be consulted.Atty asked for appeal specialist's

                            direct p#.Advised CSR unable to provide direct p#.Atty gave his c# 602-432-9265 in

                            case call gets disconnected.S/w appeal specialist-LB.Per appeal specialist-LB,

call was transferred to appeal specialist-LB.

**Inbound call/Employee/Attorney**
04/28/2016   LBeck          Rec'd call from clmnt's attorney, Steve German re:  stauts of appeal...advised that
                            I am continuing my review and have started to put together a timeline, but have

                            not completed my review of all info....asked Mr. German about the late filing - 8

                            years post claimed DOD and he advised that clmnt did not realize she had the

                            policy.  Expld that I recalled a directive in one of his letters suggesting that

                            we cannot req. a financial review of info submitted...explained that I am not a

                            financial experty and may need the resources of our consultant to evaluate the

                            info submitted...Steve advised that he has no recollection of any such

                            directive...agreed to revisit my notes to determine if I misunderstood

                            same....also advised that my initial review indicates that we have no citations of

                            any cases where clmtn was atty of record at trial, but Mr. German advised that

                            info has been submitted...Mr. German further pointed out that several declarations

                            have been submitted by former clients on clmnt's behalf and suggested those should

                            be documentative of trial work pre-disability and suggested that prior CM ignored

                            those...assured Mr. German that I would give appropriate weight to all info

                            submitted, but expalained that we need to reconstruct pre-dis occ. duties via

                            documentation in the form of financials, calendars, case citations, etc. and not

                            only statements of clients on clmnt's behalf...assured Mr. German that I will give

                            the claim a fair review and asked his availability to discuss furth

# EXHIBIT 9

The United States Life Insurance
Company in the City of New York
New York, New York

Benefit Solutions Connecticut Claim Center
P.O Box M
Beattyville, KY 41311

March 25, 2014

Steve German
Adelman German, PLC
8245 N. 85th Way
Scottsdale, AZ 85258

RE:   Your Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Policy Number: G164156 / Claim Number: 95923
      Certificate Number: 00982616
      Underwritten by: The United States Life Insurance Company in the City of New York

Dear Attorney German:

This letter is in regards to your client's pending claim for disability under the above-captioned Long
Term Disability plan. Please note that I will now be the disability case manager for this claim. My
direct phone number is listed below and I encourage you to contact me with any questions or
concerns.

The following documentation is needed to continue the process of reviewing your client's claim for
disability benefits. The following information was requested in our letters dated February 11, 2014
and February 24, 2014 and is still outstanding:

- Please specify the date of disability for which your client is filing a claim including the day,
  month and year of your disability. Please provide documentation from all medical provider(s)
  supporting this date of disability;

- We will need medical records from all disabling physician(s) for the period of disability your
  client is claiming supporting total disability through the 90 day elimination period and into the
  benefit payment period. We can request this information from your client's treating physicians
  and would appreciate your assistance in obtaining these documents as soon as possible for
  review. Additionally, please notify us of the time frame that your client treated with each of
  these treating physicians;

- In order to help us better understand your client's occupation, we ask that you provide us with

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa,
*This company does not solicit business in New York.

Am Gen (Cheney) 001188

The United States Life Insurance
Company in the City of New York
New York, New York

documentation concerning all monthly billable hours broken down by month, type of service and amount billed for the three calendar months prior to the claimed date of disability, through the actual date of disability. Please have this information exported into an Excel or PDF document and submit on a disc;

- If the date of disability in the year 2006, please provide copies of your Personal and Business Income Tax Returns for the years 2005 through 2012, including all supporting W-2 and K1 statements, schedules and attachments so that we may calculate the Basic Monthly Earnings and verify all post disability residual earnings as you have notified us that your client continued to work beyond the date of disability;

- Please submit a copy of your client's monthly profit and loss statement(s) for the period November 1, 2005 through January 31, 2014;

- A statement from your client's pension administrator, your client or her accountant, indicating pension/profit sharing contributions made on your client's behalf by any of the entities owned during the years 2005 and 2006.

- A completed Fraud Statement form (please see attached)

- Please provide a written explanation for the reason your client is filing her claim late. The instructions for filing a claim are noted below as follows:

**"Filing a Claim**

To file a claim, follow these steps:

**Step 1:**
A Claimant should send a written notice of claim to United States Life within 20 days of a loss. No special form is required to do this. The notice need only identify the clamant and the Policyholder.

**Step 2:**
When United States Life receives the notice, it will send a proof of claim form to the claimant.

**Step 3:**
The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.
If the form is received within such time, it should be completed, as instructed, by all persons required to do so.  Additional proof, if required, should be attached to the form.
If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must State the date the injury or sickness began and nature and extent of the loss.

**Step 4:**
Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits). United States Life may require more proof as often as needed to verify disability.

The United States Life Insurance
Company in the City of New York
New York, New York

If a notice of proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible."

**Please forward the information no later than April 9, 2014 to:** Benefit Solutions Connecticut Claim Center at the address of: P.O. Box M; Beattyville, KY 41311. You may also fax the information to us at 1-888-598-0575. **If we do not receive this information by April 9, 2014, we will assume you are no longer interested in pursuing this matter and will close Attorney Cheney's claim until such time as the information is received.**

Disability claims can sometimes involve a detailed and lengthy evaluation process. We will work diligently to complete our evaluation of your client's claim in prompt manner. We also expect and appreciate your prompt and complete cooperation as that will help expedite the evaluation process.

Upon receipt of the requested information we will be able to continue with the review of your client's claim.  If you should have any questions, please feel free to contact our office at 1-866-894-3840 or you may contact me directly at 860-507-2766.

Sincerely,

*Kate Milheiro*

Kate Milheiro
Long Term Disability Case Manager
Benefit Solutions Connecticut Claim Center

Am Gen (Cheney) 001190

# EXHIBIT 10



ADELMAN GERMAN, PLC

*A Law Firm*

April 9, 2014

VIA FACSIMILE AND U.S. MAIL – 888-598-0575

Kate Milheiro
Long Term Disability Case Manager
Benefit Solutions Connecticut Claim Center
P.O. Box M
Beattyville, KY 41311

RE:   Our Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Certificate Number: 00982616
      Group Policy Number: G164156 – Claim Number: 95923
      Underwritten by:    The United States Life Insurance Company
                          In the City of New York

Dear Ms. Milheiro:

        We are writing to informally introduce ourselves to you. We understand that
you are replacing Maureen Arnone, who replaced Michal LaRosa, as the adjuster
responsible for this claim. We look forward to working with you and hope to provide
you with every bit of information we reasonably can gather, in order to facilitate and
ensure a prompt, thorough and fair evaluation of Ms. Cheney's claim, resulting in
payment of her claim for individual disability income benefits.

        We understand that you (and your predecessors) set what appears to be an
arbitrary date of April 9, 2014, for Ms. Cheney to respond to and produce
information related to what seems to be at least a dozen categories of
information. Your request is not reasonable or practical.

        In spite of our best efforts, and a significant amount of time and efforts, we
simply could not respond and produce information and documentation as to each
and every inquiry. We are, however, doing our very best to accommodate your
requests and are producing all that we have been able to gather since your March
25, 2014 letter (received in our offices on March 31, 2014).

        It is our intention to continue our efforts to gather and produce information to
you. We ask for your indulgence, to the extent the volume of information sought is
quite extraordinary. This is not a difficult claim. Ms. Cheney was a well-recognized,
highly regarded and sought after medical malpractice trial lawyer. She defended
doctors and hospitals in complex cases that exposed them to millions, if not tens of

8245 N. 85ᵗʰ Way, Scottsdale, Arizona 85258

480.607.9166

480.607.9031

Firm@AdelmanGerman.com

Kate Milheiro
April 9, 2014
Page 2

millions of dollars in damages. She was very respected not only amongst the
defense bar, but by judges in Arizona, and by her adversaries, the Plaintiffs' bar.

All those involved that knew Ms. Cheney will sing her praises, and will affirm
she was one of the finest medical malpractice trial lawyers representing doctors,
hospitals and other medical institutions. By mid-December 2006, her illnesses got
the best of her. She tried her very last case that December, and has since not tried
a case. Her medical condition(s) are well-documented, and are easily understood
such that they made it impossible for Cynthia from both physical and cognitive
standpoints, to safely, adequately, or fairly represent doctors and healthcare
institutions as a medical malpractice trial lawyer. She was forced to stop her
"regular occupation" [as defined by her Policy].

Lest there be any doubt, Ms. Cheney was the named partner of a boutique
law firm of trial lawyers. You will find her partnership tax returns on the enclosed
disc for the years in question. These are being provided with a very important
caveat. Under no circumstances does Ms. Cheney grant or permit you or anyone
affiliated with the handling of this claim, to disseminate this very private, highly
confidential, personal financial information pertaining not only to her, but to her
partners as well.

Please be instructed not to open the partnership tax returns from the
accompanying CD-ROM, unless you are willing to abide by this admonition. The tax
returns simply cannot and shall not be reproduced or otherwise duplicated or
shared with any third-party, including financial experts, forensic accountants,
outside counsel, etc. This restriction shall apply save the exception of Ms. Cheney
expressly granting her authorization to share the returns with a particular person. If
you are not agreeable to this pre-condition, we ask that you let us know
immediately. Short of hearing otherwise from you via facsimile, we will assume we
have your agreement to protect the accompanying tax returns (including Ms.
Cheney's personal returns), and will not share or provide them to anyone else.

## PARTNERSHIP TAX RETURNS

- 2005 Complete Federal and Arizona State Partnership Returns for
  Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-
  1's for each partner, and all other schedules and attachments

- 2006 Complete Federal and Arizona State Partnership Returns for
  Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-
  1's for each partner, and all other schedules and attachments

Kate Milheiro
April 9, 2014
Page 3

- 2007 Complete Federal and Arizona State Partnership Returns for Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-1's for each partner, and all other schedules and attachments

- 2008 Complete Federal and Arizona State Partnership Returns for Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-1's for each partner, and all other schedules and attachments

- 2009 Complete Federal and Arizona State Partnership Returns for Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-1's for each partner, and all other schedules and attachments

- 2010 Complete Federal and Arizona State Partnership Returns for Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-1's for each partner, and all other schedules and attachments

- 2011 Complete Federal and Arizona State Partnership Returns for Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-1's for each partner, and all other schedules and attachments

- 2012 Complete Federal and Arizona State Partnership Returns for Fadell, Cheney & Burt, P.L.L.C., including Form 1065, all Schedule K-1's for each partner, and all other schedules and attachments

## MS. CHENEY'S PERSONAL TAX RETURNS

- 2007 Federal and Arizona State Individual Return for Gregg H. Temple and Cynthia V. Cheney

- 2008 Amended Federal and Arizona State Individual Return for Gregg H. Temple and Cynthia V. Cheney

- 2009 Federal and Arizona State Individual Return for Gregg H. Temple and Cynthia V. Cheney

- 2010 Federal and Arizona State Individual Return for Gregg H. Temple and Cynthia V. Cheney

Kate Milheiro
April 9, 2014
Page 4

- 2011 Federal and Arizona State Individual Return for Gregg H.
  Temple and Cynthia V. Cheney

- 2012 Federal Individual Return for Gregg H. Temple and Cynthia V.
  Cheney

Tax Return Transcripts, as well as copies of the complete Tax Returns, have been requested for the years 2005 and 2006. Ms. Cheney's CPA for that time period passed away from illness, and she is not able to track them down. They will be forwarded to you when they are received.

Again, the personal tax returns of Ms. Cheney and her husband Greg Temple are NOT to be disseminated. They include private, personal information related to third persons that have nothing to do with Ms. Cheney's claims. We ask that their identities be protected, as well as their earnings and other personal, private financial information. We again admonish that you let us know immediately if you are not agreeable to the terms of production. If you are not inclined to protect the privacy of others, and the highly sensitive information found therein, then return the tax returns immediately, and delete copies you or your·co-workers have generated or that they (or you) can later make available either electronically or in hard-copy.

Continuing on, you (actually, Mr. LaRosa), requested a specific disability start date evidencing when Ms. Cheney was no longer able to perform the substantial and material duties of her regular occupation as a medical malpractice defense trial lawyer. That date coincides with her last trial, which ended on December 14, 2006, and which she was barely able to withstand.

By the end of 2006, her health afflictions made it impossible for her to try cases. Her body could not handle the stressors, the physicality, the cognition requirements, the emotion, or the highly charged adversarial nature of her work. Instead of maintaining her health, she was spiraling down. Her blood sugars were plummeting or spiking out of control.

Additionally, in early spring of 2007, Ms. Cheney underwent complex, reconstructive pelvic surgery. This further sidelined her from any type of trial work. The issue she faced was recognizing she was not invincible, and that she needed to protect her body, if she wanted to live. Ms. Cheney identified herself as a top-tiered medical malpractice defense lawyer, and knew nothing else as a mature trial lawyer. It is what set her apart from others, and gave her self-identity, and no one

Kate Milheiro
April 9, 2014
Page 5

was going to take that away from her. The reality, however, was that in spite of her effort to overcome her maladies, they were not the kind that grow dormant. Rather, they are very sensitive to environmental triggers, such as stress, physical exhaustion, and the overall, adversarial nature of being a medical malpractice trial lawyer. Most do not realize that these attorneys spend weeks on end traveling around the country, taking and defending depositions of some of the most brilliant medical minds our country has ever known. This is but one example of the complex and involved nature of handling these types of cases.

Ms. Cheney's insulin levels became so unstable that she has to wear a surgically implanted pump. The incidences of "close calls," was frightening to all those that know Cynthia. She suffers episodes from extreme insulin levels such that she becomes locked-in, unable to move or communicate. After her last trial, her client (who she shared a very close relationship), recognized the toll, and in spite of their professional closeness, she was no longer asked to, or able to represent another hospital or health institution. Word travels quickly, and soon everyone was aware that Ms. Cheney was unable to work as a trial lawyer, although Ms. Cheney herself remained in denial and kept hoping for her health to return.

Not willing to ever accept defeat, Ms. Cheney tried to recreate herself, doing something entirely different than work as a trial attorney. Rather than advocating, she took classes and became skilled at helping others to resolve their claims through mediation. She became a mediator, strictly tailored to her area of expertise as a medical malpractice trial lawyer. Aside from aberrant cases, all that still involved medical issues, she handled predominantly medical malpractice cases brought against doctors, practice groups, hospitals, and other medical institutions.

Unfortunately, her career change was only a band aid. Before, when she was a trial lawyer, she spent weeks traveling or days defending and taking depositions, before trying weeks (if not months) long medical negligence cases. Her body simply could not tolerate the wear and tear and gave out. She was fatigued, in terrible pain, and unable to function. When Ms. Cheney wasn't working, she was treating with doctors, resting, taking medicines, and trying to rehabilitate as best she could, until it all caught up. This same pattern appeared with her mediation work.

With time and the help of her partners and colleagues, Ms. Cheney started to develop a reputation for mediations. These "settlement conferences" typically lasted a day, and did not require days' on end of work. They do, however, require endurances. Many last 12 hours, and include ushering adversarial positions from one conference room to another. Often, the parties and mediator barely find time to eat.

Kate Milheiro
April 9, 2014
Page 6

It was clear that although Ms. Cheney was gifted, she could not tolerate the physical toll with any assurances, and therefore, she would only agree to take on a new mediation if she planned ahead and had a replacement mediator on board in the event she could not function on any given day. Thus, in spite of her best intentions, there were days when she would wake up in terrible pain, cognitively impaired, and unable to mediate. She always had a substitute on call, for the very reason that she could not guarantee her health.

The juggling of her schedule, always with a back-up in the event she was not well, lasted for a period of time. She managed to handle mediations to the best of her ability, when she was feeling well. Unfortunately, it all caught up with her, at a time when she could ill-afford any distraction.

During a very important mediation between a very esteemed and well known trial lawyer and the head of risk management of Phoenix's largest healthcare institution, Ms. Cheney decompensated and was barely able to function. As a result, there was key information she did not communicate, as an important pre-condition to the settlement offer. Not knowing those conditions, the Plaintiffs' attorney agreed to the settlement, only to realize a week later that there was not a true meeting of the minds. Cynthia was thrust into the middle of the disagreement, and her reputation was badly damaged. The attorneys were unsympathetic, and shared the incident with others in the medical-legal community. It was another sign that Ms. Cheney was not physically and cognitively capable of keeping up.

One question asked by your predecessor is why Ms. Cheney did not give notice right away. The answer is found in the above narrative. She did not want to admit there was anything she cannot do, or overcome. She felt that someway, somehow she would beat her illnesses and march back to doing the trial work she loved. Aside from denial, her focus was on surviving with what she knew. It was not a matter of giving up, but rather a matter of fighting on. For this reason, she was unable to appreciate her needs, and was too proud to think of herself as disabled. The last thing she wanted to do was to declare that she is disabled. The moniker of being disabled is very hard for Ms. Cheney to accept.

You will note that Ms. Cheney tried valiantly to defeat her disability. We are in the process of gathering Ms. Cheney's billable time and collections records, which were impacted over time, as will be seen in the trends therein. These records will reflect efforts on her part to handle medical malpractice trial work until she was no longer able, and thereafter, her efforts to handle mediations.

Kate Milheiro
April 9, 2014
Page 7

Finally, and so you can appreciate the efforts being made, Ms. Cheney is giving you notice of her efforts to gather medical records from various healthcare providers over the years. These records are being gathered to facilitate the processing of the case. Understand, we hope to avoid duplicating efforts by gathering medical records already in your possession, or asking for records from providers you reached out to already. In that regard, we ask that you kindly provide us a copy of medical records you have, in exchange for our producing the medical records we are able to gather.

Please call if you have questions about the content of this letter, or as to any of the hundreds of pages of documents we have gathered to date. We believe that from the information provided to date, the claim is well identified, and the bases for disability set forth thoroughly. Under these circumstances, we ask that you release benefits, pay Ms. Cheney back-benefits owed, and refund premiums. We further ask that you place Ms. Cheney on claim into the future; at this time the evidence is overwhelmingly in favor of compensability. If you feel it necessary, at the very least, pay the claim under a reservation of rights. Ms. Cheney is entitled to benefits, has always timely paid her premiums, and asks that her disability insurer step up to the plate at this difficult time.

In closing, we would be happy to sit down with you. We will make Ms. Cheney available for you to meet. You will see that she is clearly a very special person, with very special talents. You will also see that she is not well, is dependent on an insulin pump, and has already suffered too many close calls. Stress is the worst thing for her to have to endure at this time. Please be mindful of this, and do what you can to help avoid causing her further harm.

Very truly yours,

Steve German, Esq.
For the Firm

Cc:   Ms. Cynthia Cheney

# EXHIBIT 11

The United States Life Insurance
Company in the City of New York
New York, New York

Benefit Solutions Connecticut Claim Center
P.O Box M
Beattyville, KY 41311

April 25, 2014

Steve German
Adelman German, PLC
8245 N. 85th Way
Scottsdale, AZ 85258

RE:   Your Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Policy Number: G164156 / Claim Number: 95923
      Certificate Number: 00982616
      Underwritten by: The United States Life Insurance Company in the City of New York

Dear Attorney German:

This letter is in regards to your client's pending claim for disability under the above-captioned Long
Term Disability plan.

We have received your faxed letter dated April 9, 2014. Thank you for your response. Please be
assured that your client's entire claim file, including all medical and financial documentation, will be
held in the strictest confidence.

We have updated our records to reflect that Attorney Cheney is claiming her disability commenced on
December 15, 2006, the day after her last day of trial.

Copies of Attorney Cheney's medical records for the period of June 1, 2006 through present have
been requested from Dr. Bolar, Dr. Rollingher, Dr. Bayham, Dr. Videla, Dr. White, and Dr.
Armendariz. If there are specific timeframes that your client treated with each of these providers,
please let us know so we may adjust the timeframe for which we are requesting records.

The following documentation is needed to continue the process of reviewing your client's claim for
disability benefits. The following information was requested in our letters dated February 11, 2014,
February 24, 2014, and March 25, 2014 and is still outstanding:

- In order to help us better understand your client's occupation, we ask that you provide us with
  documentation concerning all monthly billable hours broken down by month, type of service

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
*This company does not solicit business in New York.

AmGen (Cheney)000036

The United States Life Insurance
Company in the City of New York
New York, New York

and amount billed for the three calendar months prior to the claimed date of disability, through
the actual date of disability. Please have this information exported into an Excel or PDF
document and submit on a disc;

- Please submit a copy of your client's monthly profit and loss statement(s) for the period
  November 1, 2005 through January 31, 2014;

- A statement from your client's pension administrator, your client or her accountant, indicating
  pension/profit sharing contributions made on your client's behalf by any of the entities owned
  during the years 2005 and 2006.

- A completed Fraud Statement form.

We also understand from your April 9, 2014 fax that 2005 through 2012 business and personal tax
returns have been forwarded on CD to our office, and transcripts for 2005 and 2006 personal returns
have been requested. While have not yet received this information, please be assured it will have our
prompt attention once it is received.

Please forward all information to: Benefit Solutions Connecticut Claim Center at the address of:
P.O. Box M; Beattyville, KY 41311. You may also fax the information to us at 1-888-598-0575.

Finally, as you have offered, we are in the process of arranging an onsite visit with you and your
client. As I am unable to attend the meeting personally, I would like to suggest that a representative
meet with you in person and that I attend telephonically, if scheduling permits. We will be in contact
with you as soon as possible to arrange a mutually convenient time for this meeting.

If you should have any questions, please feel free to contact our office at 1-866-894-3840 or you may
contact me directly at 860-507-2766.

Sincerely,

*Kate Milheiro*

Kate Milheiro
Long Term Disability Case Manager
Benefit Solutions Connecticut Claim Center

AmGen (Cheney)000037

# EXHIBIT 12

The United States Life Insurance
Company In the City of New York
New York, New York

Benefit Solutions Connecticut Claim Center
P.O Box M
Beattyville, KY 41311

May 23, 2014

Steve German
Adelman German, PLC
8245 N. 85th Way
Scottsdale, AZ 85258

RE:   Your Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Policy Number: G164156 / Claim Number: 95923
      Certificate Number: 00982616
      Underwritten by: The United States Life Insurance Company in the City of New York

Dear Attorney German:

This letter is in regards to your client's pending claim for disability under the above-captioned Long
Term Disability plan.

Copies of Attorney Cheney's medical records for the period of June 1, 2006 through present have
been requested from Dr. Bolar, Dr. Rollingher, Dr. Bayham, Dr. Videla, Dr. White, and Dr.
Armendariz. Records have been received from Dr. Videla and Armendariz and are still outstanding
from Dr. Bolar, Dr. Rollinger, Dr. Bayham and Dr. White.

The following documentation is needed to continue the process of reviewing your client's claim for
disability benefits. The following information was requested in our letters dated February 11, 2014,
February 24, 2014, March 25, 2014 and April 24, 2014 and is still outstanding:

- In order to help us better understand your client's occupation, we ask that you provide us with
  documentation concerning all monthly billable hours broken down by month, type of service
  and amount billed for the three calendar months prior to the claimed date of disability, through
  the actual date of disability. Please have this information exported into an Excel or PDF
  document and submit on a disc;

- Please submit a copy of your client's monthly profit and loss statement(s) for the period
  November 1, 2005 through January 31, 2014;

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
*This company does not solicit business in New York.

AmGen (Cheney)000041

The United States Life Insurance
Company in the City of New York
New York, New York

- A statement from your client's pension administrator, your client or her accountant, indicating pension/profit sharing contributions made on your client's behalf by any of the entities owned during the years 2005 and 2006.

- Transcripts for Attorney Cheney's 2005 and 2006 personal tax returns.

Please forward all information to: Benefit Solutions Connecticut Claim Center at the address of: P.O. Box M; Beattyville, KY 41311. You may also fax the information to us at 1-888-598-0575.

Finally, we have contracted with a representative from Coventry Healthcare to meet with you and your client. As previously mentioned, I am unable to attend the meeting personally, and hope to attend telephonically, if scheduling permits. If she has not already contact you, Jacinta Riggs from Coventry Healthcare will be reaching out to arrange a mutually convenient time for this meeting.

If you should have any questions, please feel free to contact our office at 1-866-894-3840 or you may contact me directly at 860-507-2866.

Sincerely,

*Kate Milheiro*

Kate Milheiro
Complex Case Manager
Benefit Solutions Connecticut Claim Center

AmGen (Cheney)000042

# EXHIBIT 13

The United States Life Insurance
Company in the City of New York
New York, New York

Benefit Solutions Connecticut Claim Center
P.O Box M
Beattyville, KY 41311

June 23, 2014

Steve German
Adelman German, PLC
8245 N. 85th Way
Scottsdale, AZ 85258

RE:   Your Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Policy Number: G164156 / Claim Number: 95923
      Certificate Number: 00982616
      Underwritten by: The United States Life Insurance Company in the City of New York

Dear Attorney German:

This letter is in regards to your client's pending claim for disability under the above-captioned Long
Term Disability plan.

It was a pleasure speaking with you and your client last week. As discussed, we are continuing to
await copies of medical records from Dr. Bolar's office. An invoice has been received and paid,
however the requested records are still outstanding.

The following documentation is needed to continue the process of reviewing your client's claim for
disability benefits. The following information was requested in our letters dated February 11, 2014,
February 24, 2014, March 25, 2014, April 24, 2014 and May 23, 2014 and is still outstanding:

- In order to help us better understand your client's occupation, we ask that you provide us with
  documentation concerning all monthly billable hours broken down by month, type of service
  and amount billed for the three calendar months prior to the claimed date of disability, through
  the actual date of disability. Please have this information exported into an Excel or PDF
  document and submit on a disc;

- Please submit a copy of your client's monthly profit and loss statement(s) for the period
  November 1, 2005 through January 31, 2014;

- A statement from your client's pension administrator, your client or her accountant, indicating

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
*This company does not solicit business in New York.

AmGen (Cheney)000043

The United States Life Insurance
Company in the City of New York
New York, New York

pension/profit sharing contributions made on your client's behalf by any of the entities owned during the years 2005 and 2006.

• Transcripts for Attorney Cheney's 2005 and 2006 personal tax returns.

Please be aware we are unable to proceed with our review of your client's claim without the requested information. As such, we request that this information be forwarded no later than July 7, 2014. If it is not received, by that time, we will be forced to close our handling of your client's claim until such time as this necessary information is received. Please forward all information to: Benefit Solutions Connecticut Claim Center at the address of: P.O. Box M; Beattyville, KY 41311. You may also fax the information to us at 1-888-598-0575.

If you should have any questions, please feel free to contact our office at 1-866-894-3840 or you may contact me directly at 860-507-2866.

Sincerely,

*Kate Milheiro*

Kate Milheiro
Complex Case Manager
Benefit Solutions Connecticut Claim Center

AmGen (Cheney)000044

# EXHIBIT 14

The United States Life Insurance
Company in the City of New York
New York, New York

Benefit Solutions Connecticut Claim Center
P.O Box M
Beattyville, KY 41311

July 14, 2014

Steve German
Adelman German, PLC
8245 N. 85th Way
Scottsdale, AZ 85258

RE:   Your Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Policy Number: G164156 / Claim Number: 95923
      Certificate Number: 00982616
      Underwritten by: The United States Life Insurance Company in the City of New York

Dear Attorney German:

This letter is in regards to your client's pending claim for disability under the above-captioned Long
Term Disability plan.

Ms Cheney's plan states in part:

"TOTAL DISABILITY means:

- during the waiting period and next 60 months, the complete inability of the member to
  perform the material duties of his regular job to include his specialty in the practice of
  law; "specialty in the practice of law" means the specialty in the practice of law which the
  member was performing on the day before total disability began.
- after such 60 months, the complete inability of the member to perform the material
  duties of any gainful job for which he is reasonably fit by training, education or
  experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled.
A member must also be under the regular care of a physician."

"PARTIAL DISABILITY"means:
- for members, that a member is not able to perform the material duties of his regular job

Distributing products issued by:
American General Life Insurance Company", The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
"This company does not solicit business in New York.

AmGen (Cheney)000048

The United States Life Insurance
Company in the City of New York
New York, New York

to include his specialty in the practice of law but he is able to perform:
- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis

"Specialty in the practice of law" means the specialty in the practice of law which the member
was performing on the day before total disability began.

The partial disability must be a result of the injury or sickness that caused the total disability.

To be considered partially disabled, a member must also be under the regular care of a
physician."

"BASIC MONTHLY PAY means the insured person's monthly rate of earned income from
salaries, fees and other amounts received for personal services rendered or work performed. If
the insured person owns any portion of a business or profession, Basic Monthly Pay would
include the insured person's share of the business expenses which are deductible for Federal
Income Tax purposes. Such rate will be determined by the average of the 12 months' income
after business expenses which immediately precedes the insured person's application. Basic
Monthly Pay does not include dividends, rents, royalties, annuities or other forms of unearned
income."

"PARTIAL DISABILITY EARNINGS means the insured person's rate of earned income from
salaries, fees and other amounts received for personal services rendered or work performed
during partial disability. If the insured person owns any portion of a business or profession,
Partial Disability Earnings would include the insured person's share of the business expenses
which are deductible for Federal Income Tax purposes. Such rate will be determined by the
average of the 12 months' income after business expenses which immediately precedes the
insured person's application. Partial Disability Earnings does not include dividends, rents,
royalties, annuities or other forms of unearned income."

"PRE-DISABILITY EARNINGS means the insured person's rate of earned income from
salaries, fees and other amounts received for personal services rendered or work performed
during partial disability. If the insured person owns any portion of a business or profession, Pre-
disability Earnings would include the insured person's share of the business expenses which
are deductible for Federal Income Tax purposes. Such rate will be determined by the average
of the 12 months' income after business expenses which immediately precedes the insured
person's application. Pre-disability Earnings does not include dividends, rents, royalties,
annuities or other forms of unearned income."

"WAITING PERIOD means a period of consecutive days of total disability for which no benefit
is payable. The duration of the waiting period is shown in the Schedule of Benefits. The waiting
period begins on the first day of total disability occurring after the effective date of the insured
person's insurance."

Please see our previous correspondence dated February 11, 2014, February 24, 2014, March
25, 2014, April 24, 2014 and May 23, 2014 requesting additional documentation needed to
determine Ms. Cheney's eligibility for disability benefits as well as her monthly loss of income.

The United States Life Insurance
Company in the City of New York
New York, New York

In these letters, we asked that this information be provided by you no later than July 7, 2014 or
we would close your claim until the following information was received:

- Documentation concerning all monthly billable hours broken down by month, type of service
  and amount billed for the three calendar months prior to the claimed date of disability, through
  the actual date of disability. Please have this information exported into an Excel or PDF
  document and submit on a disc;

- A copy of your client's monthly profit and loss statement(s) for the period November 1, 2005
  through January 31, 2014;

- A statement from your client's pension administrator, your client or her accountant, indicating
  pension/profit sharing contributions made on your client's behalf by any of the entities owned
  during the years 2005 and 2006.

You may forward all information to: Benefits Solutions Connecticut Claim Center at the address of
P.O. Box M, Beattyville, KY 41311. You may also fax the information to us at 1-888-598-0575.

As of today we have not received this information from you. Because we cannot complete our
review of Ms. Cheney's disability claim without the above information, we have closed the
handling of this claim. Upon receipt of the requested information, we will be able to continue
with the review of her claim.

Should you elect to appeal this decision please do so in writing within 180 days following
receipt of this letter.  If you decide to pursue this course, we will review the matter again, and
notify you of our decision no later than 45 days following the receipt of your written request.
Should we need additional time beyond the 45 days, you will be notified in writing, outlining the
reason for the required extension prior to the expiration of the initial 45 days.  Appeals should
be mailed to: Benefit Solutions Connecticut Claim Center, P.O. Box M, Beattyville, KY  41311

Along with your letter of appeal, please forward any additional information you wish to submit
for our review, including but not limited to the following:

- Documentation concerning all monthly billable hours broken down by month, type of service
  and amount billed for the three calendar months prior to the claimed date of disability, through
  the actual date of disability. Please have this information exported into an Excel or PDF
  document and submit on a disc;

- A copy of your client's monthly profit and loss statement(s) for the period November 1, 2005
  through January 31, 2014;

- A statement from your client's pension administrator, your client or her accountant, indicating
  pension/profit sharing contributions made on your client's behalf by any of the entities owned
  during the years 2005 and 2006.

Section 2695.7 (b) (3) of the California Fair Claims Settlement Practice Regulations requires that our
company advise that if you believe your claim has been wrongfully denied or rejected, you may have
the matter reviewed by the California Department of Insurance at:

The United States Life Insurance
Company in the City of New York
New York, New York

California Department of Insurance
Consumer Communications Bureau

300 South Spring Street, South Tower
Los Angeles, CA 90013
(800) 927-4357 or (213) 897-8921

Attorney German, hopefully this has been explained to your satisfaction. However, should you have
any questions concerning your claim or, if we can be of further service to you, please do not hesitate
to contact us at toll free 1-800-458-9355 or my direct line 860-507-2866.

Sincerely,

*Kate Milheiro*

Kate Milheiro
Complex Case Manager
Benefit Solutions Connecticut Claim Center

AmGen (Cheney)000051

# EXHIBIT 15



**ADELMAN GERMAN, PLC**

*A Law Firm*

March 17, 2015

<u>VIA FACSIMILE - 888-598-0575</u>

Kate Milheiro
Long Term Disability Case Manager
Benefit Solutions Connecticut Claim Center
P.O. Box M
Beattyville, KY 41311

RE:   Our Client: Cynthia Cheney
      American Bar Endowment Sponsored Disability Income Plan
      Certificate Number: 00982816
      Group Policy Number: G164156 – Claim Number: 95923
      Underwritten by:      The United States Life Insurance Company
                            in the City of New York

Dear Ms. Milheiro:

Thank you for speaking with my legal assistant while I was in trial over the month of February 2015. As I understand it, the ABE Plan is not disputing Ms. Cheney's total disability. It is, instead, working towards a claims' determination for purposes of the start-date of Ms. Cheney's claim. We believe what follows should allow you to make that determination.

As indicated in prior communications, Ms. Cheney was a very well-respected medical malpractice attorney. Because of illnesses, however, she has been unable to work in the capacity of a litigator in general, and a trial lawyer in particular. We believe an appropriate start-date would be January 1, 2007. Allow us to explain.

On December 18, 2006, Ms. Cheney was seen by a Uro-Gynecologist for conditions resulting from prior pregnancy, wherein along with systemic pelvic organ prolapse, she was dealing with serious restrictions from diabetes that was very difficult for her to control (running between 70 and 300), a history of Hepatitis C, and cervical radicular pain and limitations due to multilevel degenerative disc disease, and osteoarthritis in the joints of her fingers. She was in pain and suffering severe limitations due to her physical impairments, along with overall fatigue.

In early 2007, Cynthia was cleared to undergo, and ultimately underwent a complete pelvic reconstruction. This was very significant surgery and prevented Cynthia from working at all for several months.

*8245 N. 85ᵗʰ Way, Scottsdale, Arizona 85258*

📞 480.607.9166

📠 480.607.9031

@ Firm@AdelmanGerman.com

{AG:00268266.DOCX}

AmGen (Cheney)000061

03-17-³15 11:08 FROM- Adelman German          480607-9031          T-040 P0008/0005 F-039

Kate Milheiro
March 17, 2015
Page 2

Then, later in 2007, Ms. Cheney badly injured her foot and required surgery. This included a closed reduction and percutaneous pinning to the proximal phalanx fracture at her right forefoot.

I hope we can all agree that the beginning of 2007 is an appropriate start-date for Ms. Cheney's disability claim; it was then that any hope that Ms. Cheney could return to work as a trial lawyer truly ended. Her condition(s) continued to deteriorate and her overall health spiraled. After spending the year 2007 in surgery and recovering, year 2008 did not bring much improvement. By May of 2008, her pain in her wrists, hands, and finger joints became much more severe. She underwent additional medical evaluations. Her doctors' findings show a history of 24 months of fatigue and restrictions resulting from complications of diabetes and her other medical conditions. She complained of shoulder pain and restrictions and limited range of motion. Her shoulder showed signs of tendon tears -- tendonosis. That same month, her glucose level was measured by Sonoran Quest Laboratories as 375; extremely high. Ms. Cheney was unable to balance her glucose levels, and suffered extreme changes that resulted in her body shutting down all together.

In short, Ms. Cheney was restricted from working for most of 2007. Diabetes, cervical radiculopathy, shoulder tendonosis, osteoarthritis to her hands, a complete pelvic reconstruction, and surgery to her foot made it impossible to practice. She tried to continue, but was unable.

Understand, trial work is stressful in and of itself. It is unpredictable. On any given day a new issue can arise, leading to motion practice, depositions, and court involvement. There are often changes with a clients' health, or their medical practice, or their ability to participate in the defense of their lawsuit. It can be a pressure-cooker, and this is all before trial even starts. Actual trial work consumes every minute of every day. For months leading up to, during and then after trial, the amount of work and the attendant stress are incredible. As you know, I was in trial for the month of February 2015, and woke up every morning at 4 a.m., prepared for and attended trial all day, and then worked until midnight to get ready for the next day. This cycle continued throughout the week and on weekends too. It is physically and mentally exhausting. Someone with uncontrollable diabetes could not handle the rigorous work of a trial lawyer, and when you consider Cynthia's other health conditions, it posed serious risk of physical and emotional harm.

Ms. Cheney's inability to work is further documented in records from Dr. Rollingher in and through 2008. He notes that Ms. Cheney was not working much. She was waking each day with flu like symptoms, and painful joints. Her hands and joints were getting hot, swollen and then tender in a moment's notice. Her cervical spine was giving her pain, as was her shoulders and rotator cuff. Her wrists were painful. In short, she was often unable to function. Litigation and trial work do not afford extended periods of down-time. There are strict court-deadlines, client

{AG:00268266.DOCX}

AmGen (Cheney)000062

03-17-'15 11:07 FROM- Adelman German      480607-9031      T-040  P0004/0005 F-039

Kate Milheiro
March 17, 2015
Page 3

demands, dealings with the opposing attorney, significant travel; and so on, and unless you are on top of your game, you will easily lose a case.

A January 1, 2007 is also consistent with Ms. Cheney's earnings and collections. A medical malpractice defense attorney bills an hourly rate. There are times where a defense attorney may work 50-60 billable hours a week, but may not get paid for months afterwards. Receivables in 2007 may be for work done in 2006. With Cynthia, we know that beginning in 2005 her finances were trending downwards. She showed lower and lower billable income; this is consistent with her physical inability to meet the demands of a trial lawyer. In 2005, for example, she had $121,095 in billable income and total receipts of $136,451. Things dropped from there. Her billable income went down to $96,176 in 2006, and her total receipts dropped to $81,260. In 2006, her income was $263,878, whereas in 2007, it dropped to $149,000, or by more than $100,000. By 2009, her taxable income was down to $44,000, and by 2012, it was down to $6,006. This marked decrease in taxable income is directly attributable to Ms. Cheney's health restrictions.

We have provided you with documentation supporting the above analysis. You have everything we were able to gather. You have financial documentation for Ms. Cheney as well as for her practice. You have tax returns filed with the IRS, which include partnership returns for Faddell, Cheney & Burt (2005-2012); Personal Income Tax Returns (2007-2012); Income Tax Transcripts for 2005-2006. These document and demonstrate a significant drop off in earnings.

She has tried her best to overcome obstacles caused by her diabetes, and had a pump surgically implanted to help control her blood sugar levels. Her litigation work wound down by January 2008, loose ends were closed off for the cases she was handling, all by the end of 2007. Cynthia's reputation in the community was always excellent, and for that reason her name remains on the firm's letterhead. She is a partner in name to the extent the 99% of the heavy lifting is done by managing partner Noel Fadell. Cynthia started to do mediations with a focus on medical malpractice matters around this time. She never earned significant income. Her goal and intent was to do enough mediation and related work to cover the cost of her health care coverage. Her earnings went to pay for her medical treatment and care.

As we understand it, you have reviewed Cynthia's financial records. You have also gathered medical records from Ms. Cheney's doctors and other healthcare providers, including:[1]

---

[1] We would appreciate if you would send a copy of the records you gathered. We would like to ensure that we are all working off of the same information.

{AG:00268266.DOCX}

AmGen (Cheney)000063

03-17-'15 11:07 FROM- Adelman German          480607-9031          T-040   P0005/0005 F-039

Kate Milheiro
March 17, 2015
Page 4

- Dr. Bolar
- Dr. Rollingher
- Dr. Bayham
- Dr. Videla
- Dr. White
- Dr. Armendariz

Again, based on the above, we assert that benefits should be forthcoming. The disability start date should be January 1, 2007. Ms. Cheney missed much of 2007 at work because of complete pelvic reconstructive surgery, and then underwent foot surgery six months later. Her inability to work as a litigator or trial lawyer traces back to that time.

Remember, the firm she helped establish was boutique in size. It did not have an accounting department, a conflicts of interest department, or anything of the sort. The firm has changed systems for billings, and for recording collections. There are no profit and loss statements available to provide and no billing records we can turn to at this time. We believe we have provided you with more than ample evidence from the tome of evidence we provided to show a disability start date of January 1, 2007, at the very latest.

Ms. Cheney has not received any pension benefits or other retirement benefits, and is truly dependent on getting her disability benefits to make ends meet. It has been very stressful and difficult for her to struggle without those disability benefits and harder and harder for her to survive on her own.

We are asking that you release benefits for the periods of time not in dispute without delay. There is no disagreement — Cynthia Cheney is disabled. We all agree she has suffers horrible medical conditions which make it impossible for her to practice as a trial lawyer or litigator. Again, we ask that you honor her policy and pay her benefits without further delay. If there is any period in question as to whether benefits are owed, please let us know. Otherwise, please issue benefits that are owed and needed.

Thank you.

Very truly yours,

Steve German, Esq.
For the Firm

(AG:00268266.DOCX)

AmGen (Cheney)000064

# EXHIBIT 16



ADELMAN GERMAN, PLC

A Law Firm

June 4, 2015

<u>VIA FACSIMILE - 888-598-0575</u>

Kate Milheiro
Long Term Disability Case Manager
Benefit Solutions Connecticut Claim Center
P.O. Box M
Beattyville, KY 41311

RE:  **Our Client: Cynthia Cheney**
American Bar Endowment Sponsored Disability Income Plan
Certificate Number: 00982616
Group Policy Number: G164156 – Claim Number: 95923
Underwritten by:    The United States Life Insurance Company
In the City of New York

Dear Ms. Milheiro:

We have spent a substantial amount of time and resources to further document and affirm Cynthia Cheney's individual disability income "start-date" for purposes of calculating past-due disability benefits still owed.

Former clients and co-workers provided us with details from observations and first-hand dealing with Ms. Cheney, and in particular her health and ability to work as a trial lawyer over the time period at issue. These individuals include:

- Gary Fadell (Former Partner)
- Joyce McLaren (Former Employee)
- Patricia Winthrop (Former Client – contact person)
- Ellen Campbell (Former Client – contact person)

You will learn from these Declarations that Ms. Cheney suffered physical restrictions and limitations that prevented her from doing work of a trial lawyer starting no later than January 2007. Although Cynthia tried her best for as long as she could, she was simply unable to handle the minimum requisites needed to practice as a medical malpractice trial attorney.

Most compelling, perhaps, are the attestations from her former clients. Ms. Cheney was extremely well-respected, very hard-working, conscientious, and caring, and was a go-to attorney when medical institutions were sued. Her clients grew worried when they saw how physically fragile she had become. They

8245 N. 85ᵗʰ Way, Scottsdale, Arizona 85258

 480.607.9169

 480.607.9031

@ Firm@AdelmanGerman.com

{AG:00268266.DOCX}

AmGen (Cheney)000074

Kate Milheiro
June 4, 2015
Page 2

reluctantly had to pull their business, because they were concerned and did not want to see Cynthia spiral down farther.

Some of the most impactful statements made by her former clients include the following:

- "*In approximately 2006 I began to witness Cynthia Cheney's health decline, where she was having difficulty handling the stress, time, work and physical and mental requirements necessary to handle medical malpractice cases.*"

- "*I witnessed on several occasions that Cynthia was struggling because she was physically fatigued and mentally foggy as a result of either high or very low sugars. I know from discussing it with her that she is prone to dramatic drops in blood sugar when presented with any kind of stressful situation.*"

- "*Attorney Cheney was clearly physically struggling with short walks around the city and, complaining of exhaustion coupled with foot and leg pain, had to retreat to her hotel room on multiple occasions.*"

- "*Shortly after returning to Phoenix, I noticed a slight delay in submission of reporting requirements and although the quality of the work was still excellent, I found myself worried that the reports had not been submitted in a timely manner.*"

- "*I became concerned, however, that she was damaging her health in order to keep up with the work. I could see that the work was taking a serious toll on her.*"

- "*Based on my observations during that trial, Ms. Cheney was struggling to meet the demands of trial work, which requires long days, a high tolerance for stress, and sharp mental status to make on the spot decisions. I am not medically trained but she appeared ill to me, and she was not her old self.*"

Her condition was easily recognizable among her colleagues as well, especially by her partners and co-workers. They tried to do all they could to support Cynthia while she battled to overcome her health issues. They were patient, accommodating, and did what they could to try to cover for her, with the hope that things would improve. When it became apparent that her condition was long-term and she was unable to practice as a trial lawyer, they did all they could to help with her transition out of trial work and litigation. They facilitated her with doing mediations, which unlike her trial practice, does not require constant daily physical stress. Even so, Cynthia does not book mediations unless she knows another

{AG:00268266.DOCX}

AmGen (Cheney)000075

Kate Milheiro
June 4, 2015
Page 3

attorney is available to step-in if she is unable to get out of bed that morning, or it is otherwise unable to handle the mediation.

Some of the more compelling statements made by her colleagues and partners include:

- *"It was evident to me at that time that she was struggling with the work in a way I hadn't seen before. She was fatigued, sick to her stomach, and often having trouble retaining facts."*

- *"I personally observed that she was not physically, mentally, or cognitively able to handle discovery or trial as she had in years past. I witnessed the fatigue that she experienced and the difficulty in concentrating on the tasks that were involved in the cases that she handled."*

- *"She had physical limitations that prevented her from being able to travel and withstand long days of depositions and/or trials."*

- *"By early 2007, her health further declined, she missed many days of work, and she was no longer able to handle the high demands of litigation."*

- *"She made mistakes that I hadn't seen her make before."*

- *"During this time, I personally observed times when Ms. Cheney was physically, cognitively, emotionally and/or mentally unable to handle the complexities and rigors of practicing as a trial lawyer."*

- *"Ms. Cheney could not handle all day depositions, complex hearings, or jury trials. More and more frequently, she was too ill to come into the office."*

- *"During the year 2006 Ms. Cheney started to make mistakes in her law practice. Those mistakes specifically included an error on a case being handled for one of her largest clients, Catholic Healthcare West."*

Finally, we are attaching a spreadsheet reflecting litigation billings for Ms. Cheney for the year July 2006 – July 2007. This Excel spreadsheet reflects the number of hours she billed as a trial lawyer on litigation matters. You'll note that her hours became *de minimus*. The time billed were what we might consider "soft hours." She handled rote matters. Things that could be cancelled if need be or delayed. Legal work that she could do without otherwise putting her health at risk. Even then, she had to step back. As we all know, health does not have a time table,

{AG:00268266.DOCX}

AmGen (Cheney)000076

06-04-'15 14:53 FROM- Adelman German   480607 9031   T-353  P0005/0027 F-839

Kate Milheiro
June 4, 2015
Page 4

and there is not always a way to predict one day from another. Over time, her condition grew markedly worse, to the point where by January 2007 she had all but wound down her trial practice.

It is quite clear that Ms. Cheney was not able to maintain a practice as a trial attorney. Typically, an attorney in general that does billable, hourly work, bills 40 hours a week or 160 hours a month. A medical malpractice trial attorney works much harder, and can typically log 2,000 hours a year. With Cynthia, on the other hand, by 2007 she worked 3 hours up to 10 hours per week. And, again, this was work she did to wind down her trial practice.

We understand that there is no dispute Ms. Cheney suffers a compensable disability claim. Rather, the issue is the disability start-date, and when benefits first became due and owing. Based on the accompanying materials, we once again ask that you honor Ms. Cheney's claim beginning no later than January 2007. This is a year after Ms. Cheney's last trial. It was during the year 2006 – 2007, that Cynthia fought to overcome her disability and realized that she could not.

We are unsure what more there is to offer you at this point. We have gathered and pieced together materials requested, and then some. We hope that you are now able to honor the claim and will release benefits owed without any further delay.

Please let us know if there are further questions. Also, please afford Ms. Cheney the courtesy of being told if you expect there will be more delays. She is hard-pressed to wait any longer, and is being given no choice other than to file her lawsuit. She is genuinely disabled as defined by her Policy, and entitled to insurance benefits that continue to be withheld.



Very truly yours,

Steve German, Esq.
For the Firm

{AG:00268266.DOCX}

AmGen (Cheney)000077