1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| 9  Cynthia Cheney, | No. CV-17-0004-PHX-DGC |
| 10              Plaintiff, | **ORDER** |
| 11  v. | |
| 12  United States Life Insurance Company in the City of New York, a foreign insurance company; American General Life Insurance Company, d/b/a AIG Benefit Solutions Connecticut Claim Center, a foreign business entity; Does 1-10; Roes 1-10, | |
| 13 | |
| 14 | |
| 15 | |
| 16              Defendants. | |

17

18          Plaintiff Cynthia Cheney filed a complaint against Defendants United States Life

19  Insurance Company ("U.S. Life") and American General Life Insurance Company

20  ("American General), d/b/a AIG Benefit Solutions, alleging breach of contract and

21  insurance bad faith.  Doc. 1.  Defendants move for summary judgment.  Doc. 92.  The

22  motion is fully briefed, and the Court finds that oral argument will not aid in its decision.

23  *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).  For the following reasons, the Court will grant

24  the motion.

25  **I.      Background.**

26          The following facts are undisputed unless otherwise noted.  U.S. Life issued a

27  disability insurance policy ("the Policy") to an association, the American Bar Endowment

28

("ABE"). Doc. 93-1 at 2-3.[1] As an ABE member, Plaintiff was covered by the Policy. *Id.* at 35. The Policy provides for the payment of benefits "[i]f an insured person becomes totally disabled and continues to be so disabled past the waiting period." *Id.* at 9. The Policy defines "total disability" as:

- during the waiting period and next 60 months, the complete inability of the member to perform the material duties of [her] regular job to include [her] specialty in the practice of law; "specialty in the practice of law" means the specialty in the practice of law which the member was performing on the day before total disability began.

- after such 60 months, the complete inability of the member to perform the material duties of any gainful job for which [she] is reasonably fit by training, education or experience.

*Id.* An insured's "regular job" is "that which [she] was performing on the day before total disability began." *Id.*

Plaintiff worked generally as an attorney from 1985 to 1990, and then began medical malpractice trial work. Doc. 93-1 at 38-39. As a trial lawyer, Plaintiff's "material duties" included managing complex litigation through trial and appeals, travel, conducting written discovery and depositions, researching, drafting motions and other documents, attending hearings and oral arguments, and being involved in all aspects of trial preparation and execution. Doc. 93-2 at 132-40, 143. Plaintiff tried seven cases between 1997 and 2005, and tried her last case in November 2005 with a colleague's help. Doc. 93-2 at 119-24; 93-1 at 44, 66.

On January 17, 2014, Plaintiff submitted a claim for total disability to ABE. Doc. 93-1 at 38. Plaintiff asserted that her disability began in December 2006 and that she had been unable to continue working as a trial lawyer due to uncontrolled diabetes and other health conditions. *Id.* at 38-39. Plaintiff's claim included an Attending Physician's Statement from a treating nurse practitioner which indicated that Plaintiff had a moderate

---

[1] Citations to the docket are to page numbers attached to the top of each page by the Court's electronic filing system, not to page numbers in the original documents.

limitation of functional capacity due to her arthritis. *Id.* at 49. The statement opined that Plaintiff was unable to work due to disability as of July 1, 2012. *Id.*

In a February 2014 letter to Plaintiff, U.S. Life verified that "Benefit Solutions Connecticut Claim Center" had received her claim. Doc. 93-1 at 98. The letter requested additional information from Plaintiff, including a specific disability date, monthly billable hours, medical documentation, tax returns, an explanation for her delay in filing, and other documentation. *Id.* at 98-99. U.S. Life again requested this information from Plaintiff in a March 2014 letter. *Id.* at 120; Doc. 106 at 3. Plaintiff attended an in-person interview about her claim (Doc. 93-1 at 56), but U.S. Life closed her claim in July 2014 after several more unsuccessful requests for additional information (Doc. 93-1 at 148-50).

Plaintiff eventually provided the requested information, and U.S. Life reopened her claim. Doc. 93-1 at 113-14. In a March 2015 letter, Plaintiff updated her date of disability to no later than January 1, 2007 and stated that she had wound down her litigation activities by January 2008. Doc. 93-1 at 154-57. Plaintiff also provided a spreadsheet of her hours billed from July 2006 to June 2007. Docs. 93-2 at 3-4; 93-1 at 160-63. Plaintiff's hours billed, Claimant Statement, and Social Security Administration disability application reflect that she began litigating part-time in 2005. *Id.*; Docs. 93-2 at 9; 93-1 at 87. Plaintiff attended a court hearing as counsel of record in 2007 and was identified as counsel of record in another case that year. Docs. 94-2 at 77; 93 at 9 ¶ 51; 106 at 7 ¶ 51.

U.S. Life obtained an opinion from a board-certified endocrinologist, Dr. Soodini, that medical records did not support Plaintiff's claimed severe limitations as of 2007. Doc. 93-2 at 21-27. U.S. Life denied Plaintiff's claim on July 22, 2015, finding "insufficient information to support that [Plaintiff] was Totally Disabled through and beyond her policy's 90-day Waiting Period." Doc. 93-2 at 37-41.

**II.    Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Discussion.**

Counts 1 and 2 assert claims for breach of contract and bad faith, respectively. Doc. 1. Defendants move for summary judgment on both claims. Doc. 92.

**A.    American General.**

**1.    Breach of Contract.**

To succeed on her breach of contract claim, Plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013). American General argues that summary judgment is proper because American General had no contract with Plaintiff. Docs. 92 at 12, 14; 105 at 17-18. The parties agree that American General and U.S. Life are subsidiaries of American International Group, Inc. and are distinct legal entities. Docs. 93 at 9; 106 at 8-9.[2]

Plaintiff argues that American General may be liable based on its alleged involvement in denying Plaintiff's claim or based on a joint venture theory. She also seems

_____

[2] Plaintiff's statement of facts agrees that American General is a separate legal entity from U.S. Life, but "denies that the two entities are *in fact* separate." Doc. 106 at 8. Plaintiff cites to testimony from another case, but does not make clear whether the references to "AIG" in the testimony concern the parent, American International Group, Inc., or Defendant, American General Life Insurance Company. Doc. 106-4. Because Plaintiff provides only three pages from the middle of the 88-page deposition, the Court cannot clarify the evidence itself. *Id.* Plaintiff does otherwise develop this argument.

to treat American General, a subsidiary of American International Group, as synonymous with American International Group.  Docs. 106 at 8-9, ¶56; 108 at 10-11; 105 at 17-18.[3] Defendants assert that American General played no role in issuing, underwriting, or administering the Policy, or in denying Plaintiff's claim.  Doc. 108 at 10.

Plaintiff makes no coherent argument explaining how American General, a non-party to the Policy between Plaintiff and U.S. Life, can face breach of contract liability. Plaintiff fails to develop or support her "direct involvement" or "joint venture" theories. And her unexplained citations to and quotations from bad faith cases are unavailing on this breach of contract claim.  *See Gatecliff v. Great Rep. Life Ins.*, 821 P.2d 725, 730 (Ariz. 1991) (discussing bad faith cases); *Ceimo v. Gen. Am. Life Ins. Co.*, 137 Fed. App'x 968, 969 (9th Cir. 2005) (memorandum decision citing *Gatecliff* without analysis); *Ingram v. Great Am. Ins.*, 112 F. Supp. 3d 934, 940-41 (D. Ariz. 2015) (bad faith claim); *Sparks v. Rep. Nat'l Life Ins.*, 647 P.2d 1127, 1136-37 (Ariz. 1982) (same); *Farr v. Transamerica Occidental Life Ins.*, 699 P.2d 376, 385-86 (Ariz. Ct. App. 1984) (citing *Sparks* for support that an insurer and its agent are joint venturers and can be jointly liable for bad faith).

More importantly, Plaintiff cites no evidence in the record showing that American General was party to a contract with Plaintiff, was involved in writing or administering the Policy, or was involved in denying Plaintiff benefits.  In fact, the portion of Plaintiff's brief addressing this issue contains only a single citation to the record – a 3-page excerpt from a deposition in a different case.  *See* Doc. 105 at 17-18 (citing Doc. 106-4 at 3-5).  This evidence does not establish the elements of Plaintiff's claim in this case, and her conclusory assertions about American General's liability are insufficient to create a triable issue of fact.  *See Anderson*, 477 U.S. at 249-52; *Celotex*, 477 U.S. at 322.

The Court has no duty to search the record for evidence supporting Plaintiff's arguments.  As the Ninth Circuit has noted, a district court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in

_____

[3] Plaintiff also argues that a jury could find American General liable on an alter ego theory, but she does not develop this argument.  Doc. 105 at 18.

- 5 -

the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (the district court has no responsibility on summary judgment to "scour the record in search of a genuine issue of triable fact"). "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'" *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The Court will grant summary judgment in favor of American General on Plaintiff's breach of contract claim.

### 2. Bad Faith.

"To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble v. Nat'l Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981). American General asserts that it cannot be liable for bad faith because it has no contractual relationship with Plaintiff, did not issue or administer the Policy, and was not involved in denying benefits. Docs. 92 at 14; 108 at 10.

Plaintiff treats her bad faith and breach of contract claims as one, making no distinct arguments for either. Doc. 105 at 17-18. She cites several cases dealing with bad faith claims, but fails to explain a basis for finding that American General acted in bad faith when U.S. Life denied her benefits. She cites no evidence in the record showing American General's involvement in the issuance, administration, or denial of Plaintiff's claim, a joint venture theory of liability between American General and U.S. Life, or that American General was U.S Life's agent. *Id.* Her unsupported assertions and unexplained citations are insufficient to create an issue of fact or establish elements essential to her case for which she would have the burden of proof at trial. *Anderson*, 477 U.S. at 249-52; *Celotex*, 477 U.S. at 322. The Court will grant summary judgment in favor of American General on Plaintiff's bad faith claim.

/ / /

### B.    U.S. Life.

#### 1.    Breach of Contract.

"[I]nterpretation of a contract is generally a matter of law," *Powell v. Washburn*, 125 P.3d 373, 375 (Ariz. 2006), but whether a party has breached the contract is a question for the trier of fact, *see Walter v. F.J. Simmons*, 818 P.2d 214, 218-19 (Ariz. Ct. App. 1991); *Shiloh Custom Homes, Inc. v. Drywall*, No. 1 CA-CV 07-0677, 2009 WL 690600, at *7 (Ariz. Ct. App. March 17, 2009). A party breaches a contract when it "fail[s], without legal excuse, to perform any promise which forms the whole or part of a contract." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 210 (Ariz. 1986).

The Policy in this case defines "total disability" as "*the complete inability* of the member *to perform the material duties* of [her] *regular job* to include [her] specialty in the practice of law." Doc. 93-1 at 9 (emphasis added). "'[S]pecialty in the practice of law' means the specialty in the practice of law which the member was *performing on the day before* total disability began." *Id.* (emphasis added).

U.S. Life argues that it did not breach the Policy when it denied benefits because Plaintiff performed some of the material duties of her regular job after her date of disability and, therefore, did not qualify as totally disabled. Doc. 92 at 9. U.S. Life cites the following evidence in support: (1) Plaintiff was not in trial the day before her total disability began; (2) Plaintiff performed litigation tasks in 2006, 2007, and after; (3) Plaintiff had increased income after her date of disability; and (4) Plaintiff's medical providers did not recommend that she stop working as a trial lawyer in 2006 or 2007. *Id.* at 10-12.

Plaintiff's response on this issue is almost entirely devoid of factual citations to the record. Doc. 105 at 11-14. Her breach of contract argument contains only six citations to the record, and even then, the cites are to U.S Life's denial letter, support Plaintiff's health conditions and income, and show that she performed little work after 2007. *Id.*; Doc. 106 at 13, 18-19.[4] Plaintiff compares her pre- and post-disability tasks in general terms, but never clearly applies any evidence to the language of the Policy.

---

[4] Plaintiff's brief and statement of facts cite to a "Milheiro" deposition at Exhibit M. Docs. 105 at 12 n.8; 106 at 18 ¶57. Plaintiff's Exhibit M contains only three pages of

1    Plaintiff does argue that Defendant's reading of the Policy is too narrow, but she

2    bases this argument entirely on case law, not on the language of the Policy.  Doc. 105 at

3    8-11.  She argues that, despite the Policy's definition of "total disability," she is disabled

4    because she cannot perform the substantial and material duties of her job as a trial lawyer.

5    *Id.*  This argument requires the Court to examine relevant case law

6                        **a.      Case Law on the Meaning of "Total Disability."**

7             In *Nystrom v. Massachusetts Casualty Insurance Co.*, 713 P.2d 1266 (Ariz. Ct. App.

8    1986), the insured's policy, like the Policy in this case, defined total disability as the

9    "*complete inability* of the Insured to engage in his regular occupation or profession." *Id* at

10   1267 (emphasis added).  The Arizona Court of Appeals nonetheless adopted a different

11   definition, stating that: "[t]he proper standard for disability . . . [wa]s whether the condition

12   . . . prevent[ed] the insured from performing the substantial and material duties of his

13   occupation in the usual or customary way." *Id.* at 1270.

14            Thirteen years later, the court of appeals endorsed the *Nystrom* standard for recovery

15   under an occupational disability policy: "to recover from an occupational disability policy,

16   the disability need 'be such as to render (the insured) unable to perform the substantial and

17   material acts of his own occupation in the usual or customary way.'" *Radkowsky v.*

18   *Provident Life & Acc. Ins. Co.*, 993 P.2d 1074, 1076 (Ariz. Ct. App. 1999) (quoting

19   *Nystrom*).  The court stated in dicta that other "courts consistently have focused upon the

20   unique and specific tasks of the insured's occupation to determine whether he no longer

21   can engage in his profession in the usual or customary way." *Id.* at 1076 n.1.

22            Since *Radkowsky*, it appears that no Arizona court has cited the *Nystrom* standard

23   for recovery under an occupational disability policy.  *But see Tucker v. Scottsdale Indem.*

24   *Co.*, No. 1 CA-CV 09-0732, 2010 WL 5313753, at *7 (Ariz. Ct. App. Dec. 21, 2010) (citing

25   *Radkowksy* for another proposition).  At least one judge in this district and a Ninth Circuit

26   panel have found that the *Nystrom* and *Radkowsky* rule applies.  *See Knuth v. Paul Revere*

27   ───────────────────
     Steven Plitt's deposition.  The Court has not identified the Milheiro deposition in the record

28   and has no duty to search for it.  *See Carmen*, 237 F.3d at 1031; *Keenan*, 91 F.3d at 1279;
     *Independent Towers of Wash.*, 350 F.3d at 929.

*Life Ins. Co.*, No. CV-14-02387-TUC-RCC (DTF), 2017 WL 8941237, at *5 (D. Ariz. Feb. 6, 2017) (citing *Nystrom* and *Radkowsky* and stating that "[u]nder Arizona law, a holder of an own occupation disability policy is disabled if she cannot perform the important duties of her own occupation in the usual and customary ways"); *Phoenix Home Life Mutual Ins. Co. v. Huggett*, 5 Fed. App'x 792, 794 (9th Cir. 2001) (same, and citing 10A Couch on Insurance § 147:107 (3d. 2018)).

Sometimes called the "substantial performance test," the *Nystrom* rule for interpreting "total disability" within disability insurance policies is not unique to Arizona. Several courts have found that an insured is disabled if she "is substantially unable to engage in [her] usual employment in the customary manner," even under various policy definitions for total disability "which might imply that a tougher standard was contemplated by the parties to the contract." Couch on Insurance § 147.111 (citing cases); *see, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1006-07 (9th Cir. 2004) ("California law *requires* courts to deviate from the explicit policy definition of 'total disability' in the occupational policy context where it is necessary to offer protection to the insured when he is no longer able to carry out the substantial and material functions of *his* occupation." (citation omitted, emphasis added)); *Argenal v. Reassure Am. Life Ins. Co.*, No. C 13-01947 CRB, 2014 WL 1678008, at *3, *5 (N.D. Cal. April. 28, 2014) (California defines total disability using the substantial performance test) (citing cases); *McElgunn v. CUNA Mut. Group*, No. CIV. 06-5061-KES, 2009 WL 632935, at *1 (D. S.D.W.D. Mar. 9, 2009) ("the rule of literal construction does not apply to total disability provisions of insurance policies" under South Dakota law, citing *Robinson v. New York Life Ins. Co.*, 6 N.W.2d 162, 165 (S.D. 1942) (approving of jury instruction with substantial performance language where policy defined disability as "wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit")); *Wabash Life Ins. Co. v. Parchman*, 458 S.W.2d 390, 394-95 (Ark. 1970) (discussing cases applying substantial performance test where policies defined disability as "complete inability of the insured to engage in any gainful occupation for which he is

1    qualified" and similar iterations); *Ross v. Ross*, 126 So.2d 512, 516-17 (Miss. 1961) ("it is

2    not necessary that [a person] be wholly incapacitated" for disability finding).

3           On the basis of *Nystrom* and *Radkowsky*, and the broader embrace of the substantial

4    performance test in many other cases, the Court concludes that the language of the Policy

5    in this case is not to be given its literal meaning.  Instead, the relevant question under a

6    disability policy in Arizona is whether the insured can perform the substantial and material

7    duties of her occupation in the usual or customary way.  *Nystrom*, 713 P.2d at 1270.  Courts

8    may look to the "unique and specific tasks of the insured's occupation" to determine

9    whether she is able to perform those duties.  *Radkowsky*, 993 P.2d at 1076 n.1 (citing cases).

10   *Nystrom* and *Radkowsky* do not require the insured to be totally helpless, even where the

11   policy language, as here, broadly requires a "complete inability" to perform job duties.  *See*

12   1 Couch on Insurance § 147:110 (citing *Nystrom*, 713 P.2d at 1240).  Rather, as the Arizona

13   Court of Appeals has illustrated, disability can exist when a practicing doctor can no longer

14   perform specific tasks of his practice, even if he can still perform more general medical

15   duties.  To be disabled, a surgeon cannot perform surgery but can still work as physician,

16   or a radiologist cannot practice a sub-specialty but can still practice general radiology.  *See*

17   *Radkowksy*, 993 P.2d at 1076 n.1 (citing cases).

18          Defendant cites *Held v. RiverSource Life Insurance Co.*, No. CV 12-1302-PHX-

19   NVW, 2013 WL 4543891, at *6-*8 (D. Ariz. Aug. 28, 2013), to support a plain text reading

20   of "total disability" under the Policy.  But *Held* did not cite or discuss *Nystrom* or

21   *Radkowsky* in its interpretation of the insurance policy, and declined to determine whether

22   "total disability" meant the policy definition or an inability "to perform only the substantial

23   and material duties" because it found that the plaintiff had failed to establish disability

24   under either test.  *Id.* at *8.  U.S. Life cites no other Arizona authority disclaiming the

25   substantial performance test.  The Court concludes, as Plaintiff asserts, that the substantial

26   performance test is the correct measure under Arizona law for determining whether

27   Plaintiff is disabled under the Policy.

28   / / /

#### b. "Regular Job."

The policy defines Plaintiff's "regular job" as "that which [she] was performing on the day before total disability began." Doc. 93-1 at 9. The Policy similarly defines "specialty in the practice of law" on "the day before total disability began." *Id.* Plaintiff does not argue for different definitions. Instead, the parties make various factual arguments about what Plaintiff was doing immediately before her claimed disability date of January 1, 2007. Doc. 93-1 at 40, 154-57. Plaintiff asserts that she was a "trial attorney" and "medical malpractice trial lawyer." Doc. 105 at 2-3, 6, 11. Defendant asserts that she was "working as a part time mediator and attorney." Doc. 108 at 3. The Court must determine whether the parties have presented evidence to create a genuine factual dispute on this issue.

Plaintiff's claim letter refers to her work as a trial and medical malpractice lawyer (Doc. 93-1 at 38), but the undisputed evidence shows that after her last trial in November 2005, Plaintiff stopped trying cases, transitioned her clients to other attorneys, and began working part-time. Docs. 93-2 at 119-24; 93-1 at 44, 66; 94-3 at 16-19. Plaintiff's own brief provides this description of her transition:

> By mid-2005, her treating doctor told her she needed to slow down. Her health was deteriorating, and she was at risk of suffering serious consequences. The fatigue, inability to focus, forgetfulness, and cognitive deficits that are associated with her conditions led to uncharacteristic mistakes. In the fall of 2005 she tried her last trial. The risk manager from the hospital was in attendance and was concerned for Cheney's health. Having seen first-hand her inability to concentrate and extreme fatigue, she recognized that Cheney was not well enough to continue. Cheney was seen confusing one case for another when meeting with clients and even in court and was unable to physically or cognitively continue.
>
> Cheney spent 2006 offloading her clients and cases to other attorneys and stepped down from her position on the [medical malpractice] panel of attorneys. Whereas before the fall of 2005 she was working well over 40-hours a week, by 2006, her hours were 10 or less a week.

Doc. 105 at 4 (record citations omitted).

/ / /

- 11 -

Plaintiff's statement of facts contains these additional facts:

> Cheney was becoming increasingly ill by mid-2005. She tried her last case that fall, in what Cheney described as an "itty bitty" trial—a five-day jury trial done in summary fashion. After struggling through the trial as she had the previous one, Cheney realized she could no longer function at a level necessary for trial. After the verdict, Cheney told her client: "I'm done. I can't do this anymore."

Doc. 106 at 12 (record citations omitted).

Plaintiff spent 2006 "offloading her clients and cases to other attorneys." Doc. 105 at 4. From July to December 2006, Plaintiff billed at a part-time rate of 7.6 and 78.1 hours a month. Doc. 93-2 at 3-4. By 2007, Plaintiff had "decimated [her] book of business." *Id.*

In short, the undisputed facts confirm that Plaintiff was a trial lawyer before her November 2005 trial, but things changed after that trial. Plaintiff and her clients recognized that she could not try cases anymore and she began transitioning her clients to other lawyers. Doc. 105 at 4. Her health condition "prevented her from physically and cognitively trying complex cases." Doc. 93-1 at 38. On the key date for defining her "regular job" and legal "specialty" for purposes of the Policy – December 31, 2006 – the undisputed facts show that Plaintiff no longer was a trial lawyer. More than a year had passed since Plaintiff herself had declared: "I'm done. I can't do this anymore." Doc. 106 at 12. Plaintiff spent that year transitioning her clients to other lawyers and doing a limited amount of general litigation work. Her "regular job" and "specialty in the practice of law" on the day before her claimed disability date – January 1, 2007 – was not trial lawyer, it was part-time litigator. Doc. 93-1 at 9.

#### c. Substantial Performance Test.

Under the substantial performance test, the Court must ask whether Plaintiff was unable to perform the substantial and material duties of a part-time litigator in her usual or customary way after January 1, 2007. Defendant cites Plaintiff's ongoing part-time work through 2008 and after, and the start of Plaintiff's mediation practice in 2007 as evidence

1   that Plaintiff continued to perform the substantial and material duties of her job after her

2   disability date.  Doc. 108 at 4.

3       Plaintiff does not dispute that she continued working (Doc. 105 at 4), nor that her

4   "pre- and post-disability duties involve[d] some tasks that [were] the same in a literal

5   sense" (*id.* at 12).  Plaintiff instead compares her post-disability duties to her work as a trial

6   lawyer, but she was not a trial lawyer on December 31, 2006, the key date under the Policy.

7   *See* Doc. 93-2 at 31-33 (Plaintiff reporting no trial days from January 2006 to December

8   2006).  The undisputed evidence discussed above shows that Plaintiff's "regular job" and

9   legal "specialty" on the day before her disability date was part-time litigator, and Plaintiff

10  clearly continued to perform the substantial and material duties of that job after January 1,

11  2007.  From January to June 2007, Plaintiff billed between 12 and 46.8 hours a month.

12  Doc. 93 2 at 3-4.  Plaintiff also started a mediation practice in 2007 (Docs. 93-2 at 201;

13  105 at 4), conducted six mediations (Doc. 93-2 at 205), and continued working part-time

14  until at least October 2008 (Doc. 94-3 at 16-19).

15      Thus, Plaintiff continued to perform the material and substantial duties of a

16  part-time litigator in the usual and customary way she had done before her disability date.

17  Defining Plaintiff's regular job and specialty as required by the Policy, Plaintiff was not

18  disabled even under the substantial performance test.  As a result, she cannot establish U.S.

19  Life's breach of the contract.  *Celotex*, 477 U.S. at 322.  The Court will grant summary

20  judgment in favor of U.S. Life on Plaintiff's breach of contract claim.

21          **2.     Bad Faith.**

22      Arizona law "implies a covenant of good faith and fair dealing in every

23  contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  The accompanying duty

24  requires "that neither party will act to impair the right of the other to receive the benefits

25  which flow from their . . . contractual relationship." *Id.*  An insurer acts in bad faith where

26  it "intentionally denies, fails to process or pay a claim without a reasonable basis." *Prieto*

27  *v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (quoting *Noble*, 624 P.2d

28  at 868).  The inquiry on summary judgment is "whether there is sufficient evidence from

which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 1010 (quoting *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000)).

U.S. Life argues that it had a reasonable basis for its decision and no evidence shows that it dealt unfairly or dishonestly with Plaintiff or failed to give her claim fair and equal consideration. Doc. 92 at 12-13. U.S. Life points to the information it considered in denying Plaintiff's claim, including her financial and medical records, an interview, evaluation and consideration of her material duties, review of the Department of Labor's Dictionary of Occupational Titles ("DOT") job description, and an independent opinion from a board-certified endocrinologist. *Id.* at 13; Doc. 93-2 at 39.

Plaintiff does not clearly respond to U.S. Life's argument. She argues that "ample evidence" demonstrates U.S. Life's bad faith, but her six citations to the record are unavailing. *See* Doc. 105 at 14-17. Four references miscite a deposition the Court cannot identify in the record. *See id.*; Doc. 106 at 18-19; *supra* note 4. One cites the incorrect deposition and does not support Plaintiff's proposition. Doc. 105 at 15 (citing SSOF ¶ 62). And another cites paragraph 84 of Plaintiff's separate statement of facts, which ends at paragraph 67. *See id.* at 16; Doc. 106 at 19. Plaintiff later seems to argue that U.S. Life improperly defined her "regular job" under the Policy, and impermissibly sought evidence of Plaintiff's position and duties, again without citing evidence. *See id.* at 16-17.

Plaintiff also argues that U.S. Life relied solely on the DOT job description for a lawyer or attorney, without considering her description of her duties or the descriptions provided by her colleague or former clients, and that U.S. Life refused to consult a vocational expert. Doc. 105 at 16. Plaintiff cites no authority requiring U.S. Life to consult a vocational expert. *See id.* And she cites no other evidence that U.S. Life should have considered in determining her job description. Moreover, U.S Life's denial letter indicates that it considered Plaintiff's Employee Statement from January 17, 2014, her April 9, 2014

1    letter, her Trial Attorney Questionnaire, and the declaration of Gary A. Fadell, her

2    colleague.  Doc. 93-2 at 37-38.

3        Plaintiff describes a DOT job description without explaining how it establishes her

4    bad faith claim.  Doc. 105 at 16.  Lastly, Plaintiff cites another case involving U.S. Life

5    from this district as evidence of U.S Life's "company policy" and knowledge of its

6    wrongful denial of benefits.  *Id.* at 17.  But U.S. Life's alleged actions in another case do

7    not establish its bad faith in this case.  Plaintiff again fails to make clear arguments and cite

8    evidence in the record establishing that "there is sufficient evidence from which reasonable

9    jurors could conclude that in the investigation, evaluation, and processing of the claim,

10   [U.S. Life] acted unreasonably and either knew or was conscious of the fact that its conduct

11   was unreasonable."  *Prieto*, 354 F.3d at 1010 (quoting *Zilisch*, 995 P.2d at 280); *see also*

12   *Anderson*, 477 U.S. at 249-52; *Celotex*, 477 U.S. at 322.  To the contrary, the record

13   supports U.S. Life's determination that Plaintiff was not disabled under the Policy, and

14   Plaintiff cites no evidence showing that U.S. Life acted unreasonably, dishonestly, or

15   unfairly.  The Court will grant summary judgment on Plaintiff's bad faith claim.

16       **C.      Punitive Damages.**

17       Because the Court will grant summary judgment in favor of Defendants on

18   Plaintiff's breach of contract and bad faith claims, Plaintiff has no remaining claim to

19   support punitive damages.

20       **D.      Remaining Motions.**

21       The Court will deny Defendants' motions to exclude (Docs. 95, 96, 99) and to strike

22   (Docs. 107, 114, 115) as moot.  The Court has not considered any arguments in Defendant's

23   reply regarding trickery, and therefore will deny Plaintiff's motion for leave to file a

24   surreply.  Doc. 112.

25       **IT IS ORDERED**:

26       1.      Defendants' motion for summary judgment (Doc. 92) is **granted**.

27       2.      All other outstanding motions (Docs. 95, 107, 112) are **denied**.

28

1      3.      The Clerk is directed to enter judgment in Defendants' favor and terminate

2   this case.

3          Dated this 30th day of January, 2019.

4

5

6   *David G. Campbell*

7                          David G. Campbell
8                          Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28